**SMITH CORRELL, LLP**
MARK SMITH – California SBN 213829
   msmith@smithcorrell.com
JACOB FONNESBECK – California SBN 304954
   jfonnesbeck@smithcorrell.com
11766 Wilshire Blvd., Suite 1670
Los Angeles, CA 90025
Tel: (213) 443-6222
Fax:   (877) 730-5910

Attorneys for Plaintiff
REFLEX MEDIA, INC.

# UNITED STATES DISTRICT COURT

# DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MARIA DEL MAR MARTINEZ SANCHEZ, an individual, FDS SOLUTIONS LIMITED d/b/a fndrtsmt.com, a United Kingdom company; and Does 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:17-cv-491<br><br>**JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL**<br><br>**(DISCOVERY MATTER)**<br><br>[Fed.R.Civ.P. 37; C.D. Civ. Rule 37]<br><br>Date:　　　　October 12, 2017<br>Time:　　　　10:00 a.m.<br>Ctrm.:　　　　690[1]<br><br>Hon. Jean P. Rosenbluth<br><br>Discovery Cutoff: October 16, 2017<br>Pretrial Conf.　 March 28, 2018<br>Trial Date:　　April 10, 2018 |

////

////

////

////

---

[1] Roybal Federal Building, 255 E. Temple Street, Los Angeles, California, 90012, Courtroom 690, 6th Floor.

{00035582 1 }

**JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL
CASE NO. 2:17-CV-491**

# TABLE OF CONTENTS

**PLAINTIFF REFLEX MEDIA'S INTRODUCTION** ......................................................4

**DEFENDANTS' INTRODUCTION** ................................................................6

**DISCOVERY REQUESTS RELATING TO DEFENDANTS' KNOWLEDGE OF
THE CREATION AND DISSEMINATION OF THE PHISHING EMAILS**.............8

  **Plaintiff's Interrogatory No. 2:**.........................................................8

    Defendants' Answer to Interrogatory No. 2:...........................................8

      *Plaintiff's Position on Interrogatory No. 2:*.......................................8

      *Defendants' Position on Interrogatory No. 2:* ....................................9

  **Plaintiff's Interrogatory No. 3:**.......................................................10

    Defendants' Answer to Interrogatory No. 3:........................................10

      *Plaintiff's Position on Interrogatory No. 3:*.....................................10

      *Defendants' Position on Interrogatory No. 3:* ..................................11

  **Plaintiff's Interrogatory No. 8:**.......................................................12

    Defendants' Answer to Interrogatory No. 8:........................................12

      *Plaintiff's Position on Interrogatory No. 8:*.....................................12

      *Defendants' Position on Interrogatory No. 8:* ..................................13

  **Plaintiff's Interrogatory No. 9:**.......................................................13

    Defendants' Answer to Interrogatory No. 9:........................................13

      *Plaintiff's Position on Interrogatory No. 9:*.....................................14

      *Defendants' Position on Interrogatory No. 9:* ..................................15

  **Plaintiff's Interrogatory No. 12:**......................................................16

    Defendants' Answer to Interrogatory No. 12:.......................................16

      *Plaintiff's Position on Interrogatory No. 12:*....................................16

      *Defendants' Position on Interrogatory No. 12:* .................................17

  **Plaintiff's Interrogatory No. 17:**......................................................19

    Defendants' Answer to Interrogatory No. 17:.......................................19

      *Plaintiff's Position on Interrogatory No. 17:*....................................19

*Defendants' Position on Interrogatory No. 17:* ................................................ 20

**Plaintiffs' Interrogatory No. 21:** ............................................................... **21**

Defendants' Answer to Interrogatory No. 21: ................................................. 21

*Plaintiff's Position on Interrogatory No. 21:* .............................................. 21

*Defendants' Position on Interrogatory No. 21:* ........................................... 22

**Request to Produce No. 9:** ....................................................................... **23**

Response to Request No. 9: ............................................................................ 23

*Plaintiff's Position on Request No. 9:* ........................................................ 23

*Defendants' Response to Request No. 9:* ..................................................... 25

**Request to Produce No. 11:** ..................................................................... **25**

Response to Request No. 11: .......................................................................... 25

*Plaintiff's Position to Request No. 11:* ...................................................... 25

*Defendants' Response to Request No. 11:* ................................................... 27

**DISCOVERY REQUESTS RELATING TO DEFENDANTS' KNOWLEDGE OF
PLAINTIFFS' TRADEMARK** .................................................................... **28**

**Plaintiff's Request to Produce No. 8:** ..................................................... **28**

Defendants' Response to Request No. 8: ........................................................ 28

*Plaintiff's Position on Request No. 8:* ........................................................ 28

*Defendants' Position on Request No. 8:* ..................................................... 30

**DISCOVERY REQUESTS RELATING TO DAMAGES** ............................ **30**

**Plaintiffs' Request to Produce No. 3:** .................................................... **30**

Defendants' Response to Request No. 3: ........................................................ 30

*Plaintiff's Position on Request No. 3:* ........................................................ 30

*Defendants' Position on Request No. 3:* ..................................................... 32

**Plaintiff's Request to Produce No. 4:** ..................................................... **35**

Defendants' Response to Request No. 4: ........................................................ 35

*Plaintiff's Position on Request No. 4:* ........................................................ 35

*Defendants' Position on Request No. 4:* ..................................................... 35

**Plaintiff's Request to Produce No. 6:** ..................................................... **38**

{00035582 1 }

**JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL
CASE NO. 2:17-CV-491**

Defendants' Response to Request No. 6: ..................................................... 38

*Plaintiff's Position on Request No. 6:* ...................................................... 39

*Defendants' Position on Request No. 6:* ................................................... 39

**Plaintiff's Request to Produce No. 7:** ....................................................... **42**

Defendants' Response to Request No. 7: ..................................................... 42

*Plaintiff's Position on Request No. 7:* ...................................................... 42

*Defendants' Position on Request No. 7:* ................................................... 43

## PLAINTIFF REFLEX MEDIA'S INTRODUCTION

This case relates to the creation and dissemination of certain phishing emails that purported to be from Brandon Wade, the Chief Executive Officer of www.SeekingArrangement.com ("Seeking Arrangement"). (Complaint, Dkt. 1 at ¶ 9.) Seeking Arrangement is an online dating website operated by Plaintiff Reflex Media, Inc. ("Plaintiff" or "Reflex Media"). (*Id.* at ¶ 2.) As the Federal Trade Commission explains, "Phishing is when a scammer uses fraudulent emails or texts, or copycat websites to get you to share valuable personal information—such as account numbers, Social Security numbers, or your login IDs and passwords. Scammers use your information to steal your money or your identity or both." *See* https://www.consumer.ftc.gov/articles/0003-phishing (last visited Sep. 11, 2017).

In this case, the phishing emails falsely stated that the recipient—presumably a Seeking Arrangement customer—had been subject to "repeat charges" by Seeking Arrangement and, in order to stop those recurring charges, the email recipient needed to provide certain personal information to a Seeking Arrangement "affiliate site." (Complaint, Dkt. 1 at ¶ 36 and Ex. 1.) If the email recipient clicked on the "Verify Here" hyperlink (or its equivalent) found in the phishing email, they would be taken to another website where they would be asked to provide an email address and create a password. (*See e.g.*, Exhibits 1–2 attached hereto.) Then, the email recipient would be taken to a subsequent webpage where they were asked for more personal identifying information, including their credit card details. (*See e.g.*, Exhibit 3 attached hereto). By providing their credit card

{00035582 1 }

information, the email recipient was subscribed to other, third-party dating websites, some of which are pornographic in nature. (*Id*.) No recurring charges were corrected as the phishing email claims because no such charges ever existed.

As noted above, the subject phishing emails purport to be from Seeking Arrangement and its Chief Executive Officer, Brandon Wade. In addition, the phishing emails use Reflex Media's SEEKING ARRANGEMENT trademark. (Dkt. 1, ¶¶ 2, 6, 12.) This was all done in an apparent effort to dupe the recipient into believing that they had in fact been contacted by Seeking Arrangement.

Defendants have been named as a party to this action because their online dating website, www.fndrtsmt.com (believed to be an acronym for "find your true soul mate"), was identified as one of the websites a person may be subscribed to if they provided their credit card information in response to the phishing emails. (*Id*. at ¶ 10.) Through discovery, Reflex Media has learned that the website(s) a victim of this phishing email may be subscribed to upon providing their credit card information varies nearly each time a person clicks on the "Verify Here" hyperlink. The websites and associated companies identified in Reflex Media's Interrogatory Nos. 8 and 17 (listed below) are just some of the websites a person may be subscribed to if they click on the link in the subject phishing emails and provide their credit card details.

Defendants deny having knowledge about the subject phishing emails but also disclaim having knowledge about what actions their employees may have taken. (Response to Plaintiff's Interrogatory No. 10 reads: "Responding Parties have no information concerning the origin of the PHISHING EMAIL. To the extent 'DEFENDANTS" is defined to mean former employees, agents, and attorneys of [Defendants], Responding Parties have no knowledge of what information, if any, those persons possess regarding the origin of the PHISHING EMAIL.") Accordingly, nearly all of the discovery requests that are in dispute and the subject of this Joint Stipulation are directed at discovering Defendants' knowledge of and/or participation in the dissemination and creation of the phishing emails. Because Defendants' involvement in the subject phishing scam is the

{00035582 1 }

central issue of this case, Defendants should be compelled to provide full responses to the discovery requests identified below, which are relevant and narrowly tailored.

## DEFENDANTS' INTRODUCTION

In sworn and verified interrogatory responses, Defendants FDS and Sanchez have already confirmed that:

- they did not send or draft the alleged phishing email;
- the alleged phishing email was not sent at their direction;
- they have no information concerning the use or ownership of the email accounts that sent the alleged phishing email; and
- they have no information concerning the origin of the alleged phishing email.

*See* Defendants' Resps. to Plaintiff's Special Interrogatory Nos. 7, 10, and 22 (Ex. 6, pp. 5, 6, and 11).

Where Plaintiff Reflex has propounded interrogatories and document requests that are properly within the scope of the claims and allegations raised by the Complaint, Defendants FDS and Sanchez have responded forthrightly.

But the interrogatories and document requests at issue in this motion go far afield of the claims and allegations raised by Reflex's Complaint. Instead, it has become clear that Reflex is using the pendency of this trademark infringement lawsuit as a vehicle to conduct a broad fishing expedition of its own into Defendants' business activities. This is an improper abuse of the discovery process. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) (parties

may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up").

Reflex's Special Interrogatory Nos. 2, 3, 9, 12, and 21, and Document Request No. 11 are such requests. They inappropriately seek broad information about matters like every time Defendants have been "accused of fraudulent billing," every time Defendants have issued a credit card chargeback to one of FDS's customers, and other websites with which Defendants have been "affiliated."

Reflex's Document Request Nos. 3, 4, 6, and 7 also continue the fishing expedition, but focus inappropriately on Defendant's financial information. Rather than crafting document requests tailored to the claims and allegations at issue in the Complaint, these document requests broadly ask for documents to identify *all* revenue or income of FDS or Sanchez (who is a natural person), and all "costs and expenses" associated with that revenue/income. Case law in the intellectual property context is clear that a plaintiff alleging infringement of its IP does not have free rein to rummage around the accused infringer's financial matters.

Finally, Defendants FDS and Sanchez do not believe Reflex has satisfied its meet-and-confer obligations under Local Rule 37-1. Counsel conferred by telephone on Monday, September 11, 2017. Metzidis-Drennan Decl. ¶ 5. During the conference, Defendants' counsel identified a number of requests to which he believed Defendants could indeed provide further responses, subject to some clarification. *Id.*[2] Reflex's counsel welcomed the opportunity to resolve these issues, but indicated that he needed to serve his joint stipulation that same day in order to comply with the timing requirements. *Id.* ¶ 6. Reflex's counsel served his portion of the joint stipulation later that evening, shortly after 7:00 p.m. *Id.* ¶ 7.

For all these reasons, and the reasons discussed below with regard to each particular request, the Court should deny Reflex's motion in its entirety and order that no further

---

[2]    As indicated below, Defendants FDS and Sanchez believe they have resolved the disputes over Special Interrogatory Nos. 8 and 17, and Document Request Nos. 8 and 9.

responses are required.

## DISCOVERY REQUESTS RELATING TO DEFENDANTS' KNOWLEDGE OF THE CREATION AND DISSEMINATION OF THE PHISHING EMAILS

**Plaintiff's Interrogatory No. 2:**

List every home and work address (physical address) used by SANCHEZ for the past five years.

**Defendants' Answer to Interrogatory No. 2:**

Responding Parties object to Interrogatory No. 2 as overbroad, not calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 2:**

*(1) Response to Defendants' Objections:*

Under the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and within the Central District of California, "it is well-settled that all grounds for objections must be stated with specificity." *Ramirez v. County of Los Angeles,* 231 F.R.D. 407, 409 (C.D. Cal. 2005). Here, Defendants' boilerplate objections fail to meet this basic requirement. *See id.* at 409 ("Most defendants' objections are too general to merit consideration and are therefore waived."); *see also Allianz Ins. Co. v. Surface Specialties, Inc.*, 2005 WL 44534, at *2 (D. Kan. 2005) ("The familiar litany of general objections, including overly broad, burdensome, or oppressive, will not alone constitute a successful objection to an interrogatory, nor will a general objection fulfil the objecting party's burden to explain its objections.").

Defendants' objections fail to state their basis with specificity; indeed, they fail to state any supporting basis whatsoever. Accordingly, Reflex Media respectfully asks the Court to find that Defendants' objections are waived. And, having failed to raise any viable objections, Defendants should be compelled to answer Reflex Media's request.

////

{00035582 1 }

JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL
CASE NO. 2:17-CV-491

*(2) Reason Why Defendants Should Be Compelled to Respond:*

In an effort to establish Defendants' involvement in the creation and dissemination of the phishing emails at issue, Reflex Media served a subpoena on Google pursuant to which it requested information about the identity of the person who created the two email accounts used to disseminate the phishing emails. Google responded and provided Reflex Media with, among other things, a list of IP addresses associated with those email accounts.

An Internet Protocol address, or IP address, is a unique identifying number assigned to a computer connected to the Internet. Much like a physical address, an IP address can be used to identity a person's geographical location. The IP address can also be traced to an internet service provider (*e.g.* Cox Communications), who can then identify the customer associated with that particular IP address.

Here, the list of IP addresses obtained from Google can be used to identify the geographical location of the person(s) who used the email accounts at issue to disseminate the phishing emails. If the geographical location of those IP addresses aligns with Defendants' geographical location, that information would be valuable circumstantial evidence of Defendants' involvement. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

During the meet and confer process, Reflex Media agreed to limit the scope of this request to Defendant Sanchez's addresses from January 1, 2016, to the present.

**Defendants' Position on Interrogatory No. 2:**

The Court should not order Defendants to provide any further responses, for the following reasons:

This interrogatory inappropriately seeks information regarding Defendant Sanchez's personal residence addresses for the past five years. That information cannot possibly be relevant to Reflex's case against Sanchez. Reflex argues it has obtained a list of IP addresses as a result of a subpoena to Google, and that Reflex somehow hopes to match up the IP addresses with Ms. Sanchez's the personal residence address information to prove a connection between the two. But this makes no sense: the IP address is simply a series of numbers, and not a physical location address, like one's residence. Reflex thus fails to show how obtaining Ms. Sanchez's personal residence address information for the past five years is possibly relevant to Reflex's claims, let alone that compelling this disclosure is a warranted intrusion into Ms. Sanchez's privacy.

**Plaintiff's Interrogatory No. 3:**

Identify every time DEFENDANTS have been accused of fraudulent billing.

**Defendants' Answer to Interrogatory No. 3:**

Responding Parties object to Interrogatory No. 3 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 3:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

The phishing emails at issue in this case asked the recipient to provide personal identifying information, including their credit card information. In fact, by providing this information, the recipient was subscribing, albeit unknowingly, to receive access to other websites and services (*e.g.* www.LocalSexFriends.com). Reflex Media anticipates Defendants' response to Interrogatory No. 3 will show that at least some victims of the subject phishing scam complained and accused Defendants of fraudulent billing after they

discovered that their credit card had been used to purchase services from other third parties and not to correct some "recurring" charges related to the Seeking Arrangement account.

In other words, this request is directly relevant to showing Defendants' knowledge and participation in the creation and/or dissemination of the phishing emails and associated scam at issue. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

During the meet and confer process, Reflex Media agreed to limit the scope of this to assertions of fraudulent billing received by Defendants between January 1, 2016, and the present.

**Defendants' Position on Interrogatory No. 3:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.      On its face, this interrogatory is overbroad in that it seeks to have Defendants "identify" *all* instances in which they have been accused of fraudulent billing. This is far afield from what is alleged in the Complaint. The Complaint alleges Defendants FDS and Sanchez were somehow responsible for sending out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and that as a result of receiving these phishing emails, customers were duped into signing up for FDS's competing "Find Your True Soulmate" dating website (the "FDS Website"). Compl. ¶ 34-40 (Ex. 7 at 7). *Even if* these facts were proved true, this would not entitle Reflex to know *every* instance FDS was accused of fraudulent billing. At most, Reflex would be entitled only to an identification of those instances in which a customer accused FDS of fraudulent billing in response to having received one of the alleged "phishing" emails.

2.     The interrogatory is also vague and ambiguous.  The interrogatory does not specify what it means to "identify" those times (if any) when Defendants have been accused of fraudulent billing.  Similarly, while "accused of fraudulent billing" presumably means accusations made by FDS's customers, the interrogatory does not clearly define what could rise to the level of an accusation.  (E.g., does there need to be a written complaint?  Does there need to be a filed legal action?)

**Plaintiff's Interrogatory No. 8:**

Identify any relationship DEFENDANTS have, or have had, with respect to any of the following companies:

- Handle Marketing Limited

- Ixion Creations Limited

**Defendants' Answer to Interrogatory No. 8:**

Responding Parties objection to Request No. 8 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 8:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

The two companies identified in this request, namely, Handle Marketing Limited and Ixion Creations Limited, are companies that Reflex Media identified as being associated with the phishing emails in question. Specifically, after clicking a link found in one of the phishing emails at issue, Reflex Media was taken to another website where it was prompted to provide its credit card and other personal identifying information. The "fine print" of this page identified these two entities as companies related to websites and services that the user would be subscribed to upon providing their personal information. In

other words, these two companies were identified as two beneficiaries of the phishing scam at issue. Thus, whether Defendants are related to these entities is highly relevant and could provide direct and/or circumstantial evidence of Defendants' involvement in the scam and/or help Reflex Media identify *how* Defendants may have benefitted from the phishing scam. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

**Defendants' Position on Interrogatory No. 8:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.     This interrogatory is overly broad due to the definition of "DEFENDANTS." "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and former* employees, agents, representatives, attorneys, and any other PERSONS acting on its [*sic*] behalf." Ex. A at 2 (emphasis added). Defendants FDS and Sanchez cannot be compelled to answer on behalf of former employees and agents no longer under their control.

2.     In any event, as a result of the meet and confer process, Defendants FDS and Sanchez have agreed to respond to this interrogatory. The response will be that neither FDS nor Sanchez has had any relationship with any of the companies identified in Interrogatory No. 8.

**Plaintiff's Interrogatory No. 9:**

Identify all other websites owned/operated by DEFENDANTS from 2016 to the present.

////

////

{00035582 1 }

**Defendants' Answer to Interrogatory No. 9:**

Responding Parties object to Request No. 9 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 9:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

As indicated in Reflex Media's Introduction, the phishing emails at issue contained hyperlinks that the email recipients were asked to click on in order to "verify" their account and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through discovery, Reflex Media has learned that clicking on those links will take the user to another website where they are prompted to provide their credit card details. The "fine print" on that website indicates that by providing their credit card information, the email recipient will not be ending some alleged recurring charges associated with their subscription to Reflex Media's Seeking Arrangement, but instead, subscribed to services provided by other companies and websites (*e.g.* www.LocalSexFriends.com), including those operated by Defendants.

A list of the websites owned/operated by Defendants from 2016 to the present could be compared to other websites associated with the phishing scam and thereby provide direct and/or circumstantial evidence of Defendants' knowledge and/or participation in the scam. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for

1  discovery should be allowed unless it is clear that the information sought can have no

2  possible bearing on the claim or defense of a party.") (internal citation omitted).

3  **Defendants' Position on Interrogatory No. 9:**

4       The Court should not order Defendants to provide any further responses, for the

5  following reasons:

6       1.    This action concerns *one* website alleged to be owned or operated by

7  Defendants Sanchez and FDS.   Reflex alleges Defendants FDS and Sanchez were

8  somehow responsible for sending out "phishing" emails that used Reflex's SEEKING

9  ARRANGEMENT trademark, and that as a result of receiving these phishing emails,

10 customers were duped into signing up for FDS's competing "Find Your True Soulmate"

11 dating website (the "FDS Website").  Compl. ¶ 34-40 (Ex. 7 at 7).  To the extent that FDS

12 or Sanchez own or operate other websites (whether in the "online dating" sphere or not),

13 that is simply irrelevant to the claims and allegations at issue in this action.  Reflex is not

14 entitled to use the pendency of this trademark lawsuit as an excuse to conduct its own

15 fishing expedition into Defendants' general business activities.  *Food Lion, Inc. v. United*

16 *Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)

17 ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to

18 allow a party to roam in shadow zones of relevancy and to explore matter which does not

19 presently appear germane on the theory that it might conceivably become so.") (internal

20 quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179,

21 187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the

22 particular exigencies of the litigation.  They ought not to be permitted to use broadswords

23 where scalpels will suffice, nor to undertake wholly exploratory operations in the vague

24 hope that something helpful will turn up.  And above all, the [trial court] must be accorded

25 considerable latitude in gauging the extent of a party's compliance with these precepts.").

26      2.    This interrogatory is also overly broad due to the definition of

27 "DEFENDANTS."  "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and*

28 *former* employees, agents, representatives, attorneys, and any other PERSONS acting on

{00035582 1 }

its [*sic*] behalf." Ex. A at 2 (emphasis added). Defendants FDS and Sanchez cannot be compelled to answer on behalf of former employees and agents no longer under their control.

3.     Defendants have already agreed to answer Reflex's Special Interrogatory No. 17 (discussed below), which identifies nine specific websites by domain name. If Reflex has reason to believe that a particular website or domain name is somehow connected to the alleged phishing scam, Reflex is free to propound such targeted discovery. But Reflex is not entitled to fish around for an identification of *all* websites or domain names owned or operated by Defendants.

**Plaintiff's Interrogatory No. 12:**

Identify every other online website affiliated with DEFENDANTS.

**Defendants' Answer to Interrogatory No. 12:**

Responding Parties object to Interrogatory No. 12 as vague, ambiguous, overbroad, not calculated to lead to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 12:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

As indicated in Reflex Media's Introduction, the phishing emails at issue contained hyperlinks that the email recipients were asked to click on in order to "verify" their account and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through discovery, Reflex Media has learned that clicking on those links will take the user to another website where they are prompted to provide their credit card details. The "fine print" on that website indicates that by providing their credit card information, the email recipient will not be ending some alleged recurring charges associated with their

1  subscription to Reflex Media's Seeking Arrangement, but instead, subscribed to services

2  provided by other companies and websites (*e.g.* www.LocalSexFriends.com), including

3  those operated by Defendants.

4      Thus, a list of the websites affiliated with Defendants could be compared to other

5  websites associated with the phishing scam, and thereby, provide direct and/or

6  circumstantial evidence of Defendants' knowledge and/or participation in the scam.

7  Accordingly, the information sought pursuant to this interrogatory is highly relevant and

8  should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence,*

9  *Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a

10  request for discovery should be considered relevant if there is any possibility that the

11  information sought may be relevant to the claim or defense of any party. A request for

12  discovery should be allowed unless it is clear that the information sought can have no

13  possible bearing on the claim or defense of a party.") (internal citation omitted).

14      Through the meet and confer process, Reflex Media agreed to limit the scope of this

15  request to websites Defendants were affiliated with between January 1, 2016, and the

16  present.

17  **Defendants' Position on Interrogatory No. 12:**

18      The Court should not order Defendants to provide any further responses, for the

19  following reasons:

20      1.    This action concerns *one* website alleged to be owned or operated by

21  Defendants Sanchez and FDS.  Reflex alleges Defendants FDS and Sanchez were

22  somehow responsible for sending out "phishing" emails that used Reflex's SEEKING

23  ARRANGEMENT trademark, and that as a result of receiving these phishing emails,

24  customers were duped into signing up for FDS's competing "Find Your True Soulmate"

25  dating website (the "FDS Website").  Compl. ¶ 34-40 (Ex. 7 at 7).  To the extent that FDS

26  or Sanchez own, operate, or are "affiliated" with other websites (whether in the "online

27  dating" sphere or not), that is simply irrelevant to the claims and allegations at issue in this

28  action.  Reflex is not entitled to use the pendency of this trademark lawsuit as an excuse to

conduct its own fishing expedition into Defendants' general business activities. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up. And above all, the [trial court] must be accorded considerable latitude in gauging the extent of a party's compliance with these precepts.").

2.    This interrogatory is also overly broad due to the definition of "DEFENDANTS." "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and former* employees, agents, representatives, attorneys, and any other PERSONS acting on its [*sic*] behalf." Ex. A at 2 (emphasis added). Defendants FDS and Sanchez cannot be compelled to answer on behalf of former employees and agents no longer under their control.

3.    This interrogatory is also vague and ambiguous due to the use of the word "affiliated." Reflex does not define or clarify what it means for Defendants FDS or Sanchez to be "affiliated" with other websites. Indeed, Reflex appears to take the position that if a "phishing" email or some other online advertisement lists the FDS Website in conjunction with some other website, then the two websites are somehow "affiliated" within the intended meaning of the interrogatory. There is no basis for this apparent intended meaning, and Defendants should not be forced to guess at what is meant by "affiliated."

4.    Defendants have already agreed to answer Reflex's Special Interrogatory No. 17 (discussed below), which identifies nine specific websites by domain name. If

Reflex has reason to believe that a particular website or domain name is somehow connected to the alleged phishing scam, Reflex is free to propound such targeted discovery. But Reflex is not entitled to fish around for an identification of *all* websites or domain names that are "affiliated" with Defendants.

**Plaintiff's Interrogatory No. 17:**

Identify any relationship DEFENDANTS have, or have had, with respect to any of the following websites:

- www.campleasures.com
- www.joincheckout.com
- www.localsexfriends.com
- www.safedatingcafe.com
- www.oversinglelife.com
- www.uberhorny.com
- www.LSTFL.com
- www.SFEGAF.com
- www.VESGFE.com

**Defendants' Answer to Interrogatory No. 17:**

Responding Parties object to Interrogatory No. 17 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 17:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

As indicated in Reflex Media's Introduction, the phishing emails at issue contained hyperlinks that the recipients were asked to click on in order to "verify" their account and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through discovery, Reflex Media has learned that clicking on those links will take the user to

another website where they are prompted to provide their credit card information. The "fine print" on that website indicates that by providing their credit card information, the email recipient will not be ending some alleged recurring charges associated with their subscription to Reflex Media's Seeking Arrangement, but instead, subscribed to services provided by other companies and websites (*e.g.* www.LocalSexFriends.com), including those operated by Defendants.

The list of websites identified in Interrogatory No. 17 is a partial list of websites Reflex Media has identified after clicking on the links contained in the phishing emails at issue. Reflex Media anticipates that Defendants' response to this interrogatory will identify that a relationship exists between these websites and Defendants (*e.g.* Defendants own and/or operate these websites). In other words, the information sought by this request may provide direct and/or circumstantial evidence of Defendants' involvement in and/or knowledge of the phishing scam at issue. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

**Defendants' Position on Interrogatory No. 17:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.    This interrogatory is overly broad due to the definition of "DEFENDANTS." "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and former* employees, agents, representatives, attorneys, and any other PERSONS acting on its [*sic*] behalf." Ex. A at 2 (emphasis added). Defendants FDS and Sanchez cannot be compelled to answer on behalf of former employees and agents no longer under their control.

2.      In any event, as a result of the meet and confer process, Defendants FDS and Sanchez have agreed to respond to this interrogatory.  The response will be that neither FDS nor Sanchez has had any relationship with any of the websites identified in Interrogatory No. 17.

**Plaintiffs' Interrogatory No. 21:**

Identify every Internet domain name owned by DEFENDANTS from January 1, 2016, to the present.

**Defendants' Answer to Interrogatory No. 21:**

Responding Parties object to Interrogatory No. 21 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, and violative of the right to privacy.

**Plaintiff's Position on Interrogatory No. 21:**

(1) *Response to Defendants' Objections*:

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond*:

As indicated in Reflex Media's Introduction, the phishing emails at issue contained hyperlinks that the email recipients were asked to click on in order to "verify" their account and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through discovery, Reflex Media has learned that clicking on those links will take the user to another website where they are prompted to provide their credit card details. The "fine print" on that website indicates that by providing their credit card information, the email recipient will not be ending some alleged recurring charges associated with their subscription to Reflex Media's Seeking Arrangement, but instead, subscribed to services provided by other companies and websites (*e.g.* www.LocalSexFriends.com), including those operated by Defendants.

A list of Internet domain names owned by Defendants from January 1, 2016, to the present could be compared to other domain names associated with the phishing scam and thereby provide direct and/or circumstantial evidence of Defendants' knowledge and/or participation in the scam. Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

**Defendants' Position on Interrogatory No. 21:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.     This action concerns *one* website alleged to be owned or operated by Defendants Sanchez and FDS.   Reflex alleges Defendants FDS and Sanchez were somehow responsible for sending out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and that as a result of receiving these phishing emails, customers were duped into signing up for FDS's competing "Find Your True Soulmate" dating website (the "FDS Website").  Compl. ¶ 34-40 (Ex. 7 at 7).  To the extent that FDS or Sanchez own other internet domain names (whether in the "online dating" sphere or not), that is simply irrelevant to the claims and allegations at issue in this action.  Reflex is not entitled to use the pendency of this trademark lawsuit as an excuse to conduct its own fishing expedition into Defendants' general business activities.  *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal

1  quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179,

2  187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the

3  particular exigencies of the litigation.  They ought not to be permitted to use broadswords

4  where scalpels will suffice, nor to undertake wholly exploratory operations in the vague

5  hope that something helpful will turn up.  And above all, the [trial court] must be accorded

6  considerable latitude in gauging the extent of a party's compliance with these precepts.").

7      2.    This interrogatory is also overly broad due to the definition of

8  "DEFENDANTS."  "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and*

9  *former* employees, agents, representatives, attorneys, and any other PERSONS acting on

10  its [*sic*] behalf."  Ex. A at 2 (emphasis added).  Defendants FDS and Sanchez cannot be

11  compelled to answer on behalf of former employees and agents no longer under their

12  control.

13      3.    Defendants have already agreed to answer Reflex's Special Interrogatory

14  No. 17 (discussed above), which identifies nine specific websites by domain name.  If

15  Reflex has reason to believe that a particular website or domain name is somehow

16  connected to the alleged phishing scam, Reflex is free to propound such targeted discovery.

17  But Reflex is not entitled to fish around for an identification of *all* websites or domain

18  names owned or operated by Defendants.

19  **Request to Produce No. 9:**

20      Produce copies of all customer complaints received by DEFENDANTS in 2016.

21  **Response to Request No. 9:**

22      Responding Parties object to Request No. 9 as overbroad, not calculated to lead to

23  the discovery of relevant and admissible evidence, not proportional to the needs of the case,

24  violative of the right to privacy, and calling for confidential and proprietary information.

25  **Plaintiff's Position on Request No. 9:**

26      *(1)Response to Defendants' Objections:*

27      Reflex Media incorporates by reference its statement concerning the inadequacy of

28  Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's

1  Interrogatory No. 2, *supra*.

2       (2) <u>Reason Why Defendants Should Be Compelled to Respond</u>:

3       As indicated in Reflex Media's Introduction, the phishing emails at issue contained

4  hyperlinks that the email recipients were asked to click on in order to "verify" their account

5  and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through

6  discovery, Reflex Media has learned that clicking on those links will take the user to

7  another website where they are prompted to provide their credit card details. The "fine

8  print" on that website indicates that by providing their credit card information the email

9  recipient will not be ending some alleged recurring charges associated with their

10  subscription to Reflex Media's Seeking Arrangement, but instead, will be subscribed to

11  services provided by other companies and websites (*e.g.* www.LocalSexFriends.com),

12  including those operated by Defendants.

13       Reflex Media anticipates that recipients of the phishing emails, upon learning that

14  they had been scammed, complained to Defendants (and perhaps others involved) about

15  charges they incurred for a subscription they unknowingly obtained to Defendants'

16  website. Thus, Reflex Media believes the documents responsive to this request will: (1)

17  demonstrate Defendants' knowledge, ratification and/or involvement in creating and

18  disseminating the phishing emails by identifying customers who complained after their

19  personal identifying information was used for purposes of subscribing them to competing

20  website(s), including those owned, operated or affiliated with Defendants; (2) demonstrate

21  that customers were actually confused by the unauthorized use of Reflex Media's

22  trademark in the phishing emails and/or by the false representation that those emails were

23  authorized or sent by Reflex Media; and (3) be helpful in establishing damages insofar as

24  the relevant customer complaints can be used to help quantify the number of persons who

25  received and/or were duped by the phishing emails. *See Levi Strauss & Co. v. Blue Bell,*

26  *Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (explaining the significance of proving a

27  likelihood of confusion in a trademark action); *see also* 15 U.S.C. 1117(a) (explaining the

28  factors a court may consider when awarding damages in a federal trademark and/or unfair

{00035582 1 }

competition case).  Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided.  *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

**Defendants' Response to Request No. 9:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.     This document request is overbroad because it seeks *all* "customer complaints" over the course of a year, regardless of whether they relate to the alleged "phishing scam" that is the subject of this lawsuit.  The request also violates the privacy expectations of non-party consumers and exposes them to undue harassment, in light of the sexually explicit nature of both Plaintiff Reflex's and Defendant FDS's businesses.

2.     In any event, as a result of the meet and confer process, Defendants FDS and Sanchez have agreed to provide a further response to this document request.  The response will confirm there are no such responsive customer complaints within the possession, custody, or control of Defendants FDS or Sanchez.

**Request to Produce No. 11:**

Produce documents sufficient to identify every credit card chargeback incurred by DEFENDANTS between January 1, 2016, and the present.

**Response to Request No. 11:**

Responding Parties object to Request No. 11 as vague, ambiguous, overbroad, not calculated to lead to the discovery of relevant and admissible evidence, not proportional to the needs of the case, violative of the rights to privacy, and calling for confidential and proprietary documents.

////

{00035582 1 }

**Plaintiff's Position to Request No. 11:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

As indicated in Reflex Media's Introduction, the phishing emails at issue contained hyperlinks that the email recipients were asked to click on in order to "verify" their account and thereby end recurring charges from Plaintiff's website, Seeking Arrangement. Through discovery, Reflex Media has learned that clicking on those links will take the user to another website where they are prompted to provide their credit card details. The "fine print" on that website indicates that by providing their credit card information the email recipient will not be ending some alleged recurring charges associated with their subscription to Reflex Media's Seeking Arrangement, but instead, will be subscribed to services provided by other companies and websites (*e.g.* www.LocalSexFriends.com), including those operated by Defendants.

Reflex Media anticipates that recipients of the phishing emails, upon learning that they had been scammed, complained to Defendants (and perhaps others involved) about charges they incurred for a subscription they unknowingly obtained to Defendants' website. Thus, Reflex Media believes the documents responsive to this request will: (1) demonstrate Defendants' knowledge, ratification and/or involvement in creating and disseminating the phishing emails by identifying customers who initiated credit card chargebacks after their personal identifying information was used for purposes of subscribing them to competing website(s), including those owned, operated or affiliated with Defendants; (2) demonstrate that customers were actually confused by the unauthorized use of Reflex Media's trademark in the phishing emails and/or by the false representation that those emails were authorized or sent by Reflex Media; and (3) be helpful in establishing damages insofar as the number of chargebacks can be used to help

{00035582 1 }

quantify the number of persons who received and/or were duped by the phishing emails. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (explaining the significance of proving a likelihood of confusion in a trademark action); *see also* 15 U.S.C. 1117(a) (explaining the factors a court may consider when awarding damages in a federal trademark and/or unfair competition case). Accordingly, the information sought pursuant to this interrogatory is highly relevant and should be provided. *See* Fed. R. Civ. P. 26(b); *see also McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (internal citation omitted).

**Defendants' Response to Request No. 11:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.    On its face, this document request is overbroad in that it seeks to have Defendants produce documents concerning *all* credit card chargebacks incurred from January 1, 2016 to date.  This is far afield from what is alleged in the Complaint.  The Complaint alleges Defendants FDS and Sanchez were somehow responsible for sending out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and that as a result of receiving these phishing emails, customers were duped into signing up for FDS's competing "Find Your True Soulmate" dating website (the "FDS Website"). Compl. ¶ 34-40 (Ex. 7 at 7).  *Even if* these facts were proved true, this would not entitle Reflex to know *every* instance in which FDS issued a credit card chargeback.  At most, Reflex would be entitled only to an identification of those instances in which a chargeback was issued in response to a customer claiming he was duped into signing up for the FDS Website after having received one of the alleged "phishing" emails.

2.      But more important, Reflex fails to carry its burden of explaining *how* this information will assist in prosecution of its claims.  The document request is vague and ambiguous in that it fails to define what it means to "identify" a credit card chargeback.  But to the extent that "identifying" a chargeback means disclosing the name, credit card number, or other personal identifying information of the customer who received the chargeback, this is a problem.  Such a disclosure would violate the privacy expectations of non-party consumers and expose them to undue harassment and embarrassment, in light of the sexually explicit nature of both Plaintiff Reflex's and Defendant FDS's businesses.  Simply put, this is an inappropriate method for Reflex to search for customers who were potentially confused as a result of receiving the phishing email.

3.      This document request is also overly broad due to the definition of "DEFENDANTS."  "DEFENDANTS" is defined as FDS, Sanchez, and "their present *and former* employees, agents, representatives, attorneys, and any other PERSONS acting on its [*sic*] behalf."  Ex. A at 2 (emphasis added).  Defendants FDS and Sanchez cannot be compelled to answer on behalf of former employees and agents no longer under their control.

4.      The document request is also overbroad as to time.  Reflex alleges Defendants began disseminating the phishing emails "[o]n or about July 30, 2016."  Compl. ¶ 34 (Ex. 7 at 7).  Yet this request seeks documents that identify all chargebacks from January 1, 2016 to the present, far beyond the time period of the alleged phishing scam.

## DISCOVERY REQUESTS RELATING TO DEFENDANTS' KNOWLEDGE OF PLAINTIFFS' TRADEMARK

**Plaintiff's Request to Produce No. 8:** Produce all DOCUMENTS related to the TRADEMARK mark.

**Defendants' Response to Request No. 8:** Responding Parties object to Request No. 8 as vague, ambiguous, overbroad, not proportional to the needs of the case, and not calculated to lead to the discovery of relevant and admissible evidence.

////

{00035582 1 }

**Plaintiff's Position on Request No. 8:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

As noted above, Reflex Media contends that, without authorization, Defendants used Reflex Media's federally-registered trademark, SEEKING ARRANGEMENT, in connection with certain phishing emails that purported to be sent from Reflex Media's chief executive officer and requested the recipients' personal identifying and credit card information. *See e.g.* Dkt. 1, ¶¶ 44–46, 50–54. As a result of this conduct, which is further described in the Complaint, Reflex Media has brought claims against Defendants for trademark infringement (15 U.S.C. § 1114) and unfair competition (15 U.S.C. § 1125).

The documents sought by this request seek information in Defendants' possession concerning Reflex Media's trademark, SEEKING ARRANGEMENT. To prevail under either of these two theories, Reflex Media must prove that Defendants' use of its trademark was likely to cause consumer confusion. *See e.g. Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). To that end, evidence of "[a]n intent to copy is strong evidence of likelihood of confusion." *CytoSport, Inc. v. Vital Pharm., Inc.* 617 F. Supp. 2d 1051, 1072 (E.D. Cal.), *aff'd* 348 F. App'x 288 (9th Cir. 2009) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979).

Under Fed. R. Civ. P. 26(b)(1), a party is entitled to discover any nonprivileged information that is relevant to the claims or defenses of any other party. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) (internal citation omitted).

Here, the information sought may be used to prove both Defendants' involvement in the creation and dissemination of the phishing emails, as well as an intent to specifically target and use Reflex Media's SEEKING ARRANGEMENT mark. Accordingly, the information sought is directly relevant to the core issues involved in this case.

**Defendants' Position on Request No. 8:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.     A document request in a trademark infringement lawsuit that seeks "all documents relating to the trademark" is patently overbroad on its face.  Fed. R. Civ. P. 34(b)(1)(A) ("reasonable particularity" requirement); *cf. Reinsdorf v. Sketchers U.S.A. Inc.*, 296 F.R.D. 604, 616-17 (C.D. Cal. 2013) ("Requests should be reasonably specific, allowing the respondent to readily identify what is wanted.  Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not.")

2.     In any event, as a result of the meet and confer process, Defendants FDS and Sanchez have agreed to provide a further response to this document request.  The response will confirm there are no such responsive documents within the possession, custody, or control of Defendants FDS or Sanchez (other than attorney-client privileged communications with Defendants' counsel since the initiation of this lawsuit).

## DISCOVERY REQUESTS RELATING TO DAMAGES

**Plaintiffs' Request to Produce No. 3:**

Produce documents identifying all sources and amounts of income received by SANCHEZ in 2016.

**Defendants' Response to Request No. 3:**

Responding Parties object to Request No. 3 as overbroad, not calculated to the discovery of relevant and admissible evidence, not proportional to the needs of the case, violative of the rights to privacy, and calling for confidential and proprietary information.

////

{00035582 1 }

**JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL**
**CASE NO. 2:17-CV-491**

**Plaintiff's Position on Request No. 3:**

    *(1)Response to Defendants' Objections:*

    Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

    *(2)Reason Why Defendants Should Be Compelled to Respond:*

    Reflex Media's Complaint sets forth four causes of action. The first cause of action is for federal trademark infringement (15 U.S.C. § 1114) and the second is for federal unfair competition (15 U.S.C. § 1125). The damages recoverable under both claims is governed by 15 U.S.C. § 1117(a), which provides that a plaintiff who is successful under either statute is entitled to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Moreover, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id*.

    Each of the requests listed in this subsection (Requests for Production Nos. 3, 4, 6, and 7) seek information concerning Defendants' profits. Or more specifically, Request Nos. 3 and 6 seek information about the sources and amounts of Defendants' income, and Request Nos. 4 and 7 seek information concerning the costs incurred to generate that income. In other words, the information sought pursuant to these requests is directly relevant to proving the damage allowed by statute.

    Under Fed. R. Civ. P. 26(b)(1), a party is entitled to discover any nonprivileged information that is relevant to the claims or defenses of any other party. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *McCormick v. City of Lawrence, Kansas*, 2005 WL 1606595, at *5 (D. Kan. 2005) (internal citation omitted).

Based on the foregoing, the information sought by the following requests are clearly relevant to Reflex Media's claims and should be produced.

**Defendants' Position on Request No. 3:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.      Reflex's document request seeking "documents identifying *all sources and amounts* of income received by SANCHEZ in 2016" is vastly overbroad. Reflex's position essentially boils down to this: whenever a plaintiff sues for trademark infringement, *every* conceivable revenue received by the defendant is fair game for discovery – and the parties can just fight later about whether the revenue is properly attributable to the alleged infringement. This is wrong.

Reflex alleges Defendants FDS and Sanchez were somehow responsible for sending out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and that as a result of receiving these phishing emails, customers signed up for FDS's competing "Find Your True Soulmate" dating website (the "FDS Website"). Compl. ¶ 34-40 (Ex. 7 at 7). *Even if* these facts were proved true, this would not entitle Reflex to recover *all* of FDS's and Sanchez's revenues received in 2016. If any revenues are relevant, its revenues attributable to the FDS Website – and more specifically, revenues attributable to *customers who joined the FDS Website as a result of receiving the alleged phishing emails*. Yet if FDS or Sanchez received ordinary website-related income in 2016 that had nothing to do with the alleged phishing scam, Reflex's position is that such income is discoverable. Indeed, if FDS or Sanchez received revenue or income in 2016 that was *unrelated* to the FDS Website, Reflex's position is that even this revenue is still discoverable.

Reflex is not entitled to use the pendency of a trademark infringement lawsuit as an excuse to take discovery of *all* of FDS's and Sanchez's revenues in a given calendar year. Numerous district courts in intellectual property cases have denied overly broad discovery requests that seek a trademark or copyright defendant's financial information where the information sought in discovery lacks a plausible causal connection to the alleged

infringement.  *See, e.g.*, *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309-10 (S.D. Ga. 2012) (denying discovery of trademark defendant's financials and tax returns because plaintiff failed to show how such information will assist in proving profit-based damages, and "sifting the flecks of 'counterfeit income' from [defendant's income] stream would be, on its face, at best a speculative mirage"); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003) (denying plaintiff's request for "broad discovery into all of the defendants' business activities" where plaintiff "made no attempt to limit the scope of discovery to the activities relating to the alleged infringement"); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL 34104827, at *2-3 (S.D. Tex. June 27, 2001) (in action alleging computer company's user guide violated copyrighted ergonomics book, court denied discovery of company's "gross revenues related to the number of computers sold during the relevant time period"); *Burgin v. Nat'l Football League*, 2014 WL 521576, at *2 (S.D.N.Y. Feb. 6, 2014) (in action alleging infringing use of plaintiff's photograph on NFL's website, denying "wide-ranging discovery into financial matters that go beyond what is directly related to, or reasonably attributable to, the Website"); *Bell v. Taylor*, 2014 WL 2581175, at *1 (S.D. Ind. June 9, 2014) (discovery of defendant's "tax returns and business receipts" to determine defendant's overall gross revenues was not permitted where defendant was alleged to have used plaintiff's photograph on defendant's "websites intended to advertise and increase business").

At bottom, Reflex should not be entitled to enforce a document request that is patently overbroad.  This Court "wide latitude" in controlling Reflex from engaging in such overbroad discovery.  *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416-17 (9th Cir. 1987); *accord Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. &*

*Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up. And above all, the [trial court] must be accorded considerable latitude in gauging the extent of a party's compliance with these precepts.").

2.    The document request is also overbroad as to time. Where an accounting of profits is proper, the accounting period should be "co-extensive with the period of infringement." *Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959). Reflex alleges Defendants began disseminating the phishing emails "[o]n or about July 30, 2016." Compl. ¶ 34 (Ex. 7 at 7). Yet this document requests seeks revenues for the entirety of 2016, and not just the period of alleged infringement.

3.    Finally, it is not even clear that Reflex would be entitled an accounting of Defendants' profits if Reflex prevailed. *Cf. Coach*, 911 F. Supp. 2d at 1309 (plaintiff failed "to show how it can recover profit-based damages, and thus how [defendant's] tax returns will yield it information to that end"). Awarding a trademark infringer's profits as monetary recovery is never automatic and never a matter of right. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984) ("An accounting [of profits], however, is not automatic, and may be denied at the discretion of the district court, where there has been no showing of fraud and defendant's innocent use stands unrefuted, or where as here 'careful examination of the record fails to reveal any specific evidence to the effect that [plaintiff] has lost substantial business and profits as a result of [defendant's] unfair competition.'"); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:59, pp. 30-171 to -172 (4th ed. 2016). Rather, whether to award an infringer's profits as monetary recovery is an *equitable* decision committed to the sound discretion of the trial judge. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) (identifying six factors the trial judge is to consider in determining whether to award

defendant's profits as monetary recovery).  Reflex has done nothing to show that it can satisfy the traditional equitable factors that would entitle Reflex to an award of Defendants' profits as monetary recovery.  As such, Reflex is attempting to pursue discovery in support of a theory of monetary recovery that is wholly speculative.

**Plaintiff's Request to Produce No. 4:**

Produce all documents identifying all sources and amounts of costs incurred by SANCHEZ to generate the income identified in response to Request No. 3, above.

**Defendants' Response to Request No. 4:**

Responding Parties object to Request No. 4 as overbroad, not calculated to the discovery of relevant and admissible evidence, not proportional to the needs of the case, violative of the right to privacy, and calling for confidential and proprietary information.

**Plaintiff's Position on Request No. 4:**

(1) *Response to Defendants' Objections*:

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond*:

Reflex Media incorporates by reference its statement concerning the reasons why information pursuant to this request should be provided, as set forth in response to Defendants' Answer to Plaintiff's Request to Produce No. 3, *supra*.

**Defendants' Position on Request No. 4:**

The Court should not order Defendants to provide any further responses to this document request or its related request (RFP No. 3), for the following reasons:

1.    Reflex's document request seeking "documents identifying *all sources and amounts* of costs incurred by SANCHEZ" is vastly overbroad.  Reflex's position essentially boils down to this:  whenever a plaintiff sues for trademark infringement, *every* conceivable revenue received by the defendant is fair game for discovery – and the parties

1    can just fight later about whether the revenue is properly attributable to the alleged
2    infringement.  This is wrong.

3         Reflex alleges Defendants FDS and Sanchez were somehow responsible for sending
4    out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and
5    that as a result of receiving these phishing emails, customers signed up for FDS's
6    competing "Find Your True Soulmate" dating website (the "FDS Website").  Compl. ¶ 34-
7    40 (Ex. 7 at 7).  *Even if* these facts were proved true, this would not entitle Reflex to recover
8    *all* of FDS's and Sanchez's revenues received in 2016.  If any revenues are relevant, its
9    revenues attributable to the FDS Website – and more specifically, revenues attributable to
10   *customers who joined the FDS Website as a result of receiving the alleged phishing emails*.
11   Yet if FDS or Sanchez received ordinary website-related income in 2016 that had nothing
12   to do with the alleged phishing scam, Reflex's position is that such income is discoverable.
13   Indeed, if FDS or Sanchez received revenue or income in 2016 that was *unrelated* to the
14   FDS Website, Reflex's position is that even this revenue is still discoverable.

15        Reflex is not entitled to use the pendency of a trademark infringement lawsuit as an
16   excuse to take discovery of *all* of FDS's and Sanchez's revenues in a given calendar year.
17   Numerous district courts in intellectual property cases have denied overly broad discovery
18   requests that seek a trademark or copyright defendant's financial information where the
19   information sought in discovery lacks a plausible causal connection to the alleged
20   infringement.  *See, e.g.*, *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309-10
21   (S.D. Ga. 2012) (denying discovery of trademark defendant's financials and tax returns
22   because plaintiff failed to show how such information will assist in proving profit-based
23   damages, and "sifting the flecks of 'counterfeit income' from [defendant's income] stream
24   would be, on its face, at best a speculative mirage"); *Ocean Atlantic Woodland Corp. v.*
25   *DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003) (denying
26   plaintiff's request for "broad discovery into all of the defendants' business activities"
27   where plaintiff "made no attempt to limit the scope of discovery to the activities relating to
28   the alleged infringement"); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL

34104827, at *2-3 (S.D. Tex. June 27, 2001) (in action alleging computer company's user guide violated copyrighted ergonomics book, court denied discovery of company's "gross revenues related to the number of computers sold during the relevant time period"); *Burgin v. Nat'l Football League*, 2014 WL 521576, at *2 (S.D.N.Y. Feb. 6, 2014) (in action alleging infringing use of plaintiff's photograph on NFL's website, denying "wide-ranging discovery into financial matters that go beyond what is directly related to, or reasonably attributable to, the Website"); *Bell v. Taylor*, 2014 WL 2581175, at *1 (S.D. Ind. June 9, 2014) (discovery of defendant's "tax returns and business receipts" to determine defendant's overall gross revenues was not permitted where defendant was alleged to have used plaintiff's photograph on defendant's "websites intended to advertise and increase business").

At bottom, Reflex should not be entitled to enforce a document request that is patently overbroad. This Court "wide latitude" in controlling Reflex from engaging in such overbroad discovery. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416-17 (9th Cir. 1987); *accord Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up. And above all, the [trial court] must be accorded considerable latitude in gauging the extent of a party's compliance with these precepts.").

2.    The document request is also overbroad as to time. Where an accounting of profits is proper, the accounting period should be "co-extensive with the period of infringement." *Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959). Reflex alleges

Defendants began disseminating the phishing emails "[o]n or about July 30, 2016." Compl. ¶ 34 (Ex. 7 at 7). Yet this document requests seeks revenues for the entirety of 2016, and not just the period of alleged infringement.

3.    Finally, it is not even clear that Reflex would be entitled an accounting of Defendants' profits if Reflex prevailed. *Cf. Coach*, 911 F. Supp. 2d at 1309 (plaintiff failed "to show how it can recover profit-based damages, and thus how [defendant's] tax returns will yield it information to that end"). Awarding a trademark infringer's profits as monetary recovery is never automatic and never a matter of right. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984) ("An accounting [of profits], however, is not automatic, and may be denied at the discretion of the district court, where there has been no showing of fraud and defendant's innocent use stands unrefuted, or where as here 'careful examination of the record fails to reveal any specific evidence to the effect that [plaintiff] has lost substantial business and profits as a result of [defendant's] unfair competition.'"); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:59, pp. 30-171 to -172 (4th ed. 2016). Rather, whether to award an infringer's profits as monetary recovery is an *equitable* decision committed to the sound discretion of the trial judge. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) (identifying six factors the trial judge is to consider in determining whether to award defendant's profits as monetary recovery). Reflex has done nothing to show that it can satisfy the traditional equitable factors that would entitle Reflex to an award of Defendants' profits as monetary recovery. As such, Reflex is attempting to pursue discovery in support of a theory of monetary recovery that is wholly speculative.

**Plaintiff's Request to Produce No. 6:**

Produce all documents identifying all sources and amounts of income received by FDS SOLUTIONS in 2016.

////

////

{00035582 1 }

**JOINT STIPULATION REGARDING PLAINTIFF REFLEX MEDIA, INC.'S MOTION TO COMPEL
CASE NO. 2:17-CV-491**

**Defendants' Response to Request No. 6:**

Responding Parties object to Request No. 6 as overbroad, not calculated to the discovery of relevant and admissible evidence, not proportional to the needs of the case, violative of the right to privacy, and calling for confidential and proprietary information.

**Plaintiff's Position on Request No. 6:**

(1) *Response to Defendants' Objections:*

Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

(2) *Reason Why Defendants Should Be Compelled to Respond:*

Reflex Media incorporates by reference its statement concerning the reasons why information pursuant to this request should be provided, as set forth in response to Defendants' Answer to Plaintiff's Request to Produce No. 3, *supra*.

**Defendants' Position on Request No. 6:**

The Court should not order Defendants to provide any further responses, for the following reasons:

1.    Reflex's document request seeking "documents identifying *all sources and amounts* of income received by FDS SOLUTIONS in 2016" is vastly overbroad. Reflex's position essentially boils down to this:  whenever a plaintiff sues for trademark infringement, *every* conceivable revenue received by the defendant is fair game for discovery – and the parties can just fight later about whether the revenue is properly attributable to the alleged infringement. This is wrong.

Reflex alleges Defendants FDS and Sanchez were somehow responsible for sending out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and that as a result of receiving these phishing emails, customers signed up for FDS's competing "Find Your True Soulmate" dating website (the "FDS Website"). Compl. ¶ 34-40 (Ex. 7 at 7). *Even if* these facts were proved true, this would not entitle Reflex to recover *all* of FDS's and Sanchez's revenues received in 2016. If any revenues are relevant, its

1  revenues attributable to the FDS Website – and more specifically, revenues attributable to

2  *customers who joined the FDS Website as a result of receiving the alleged phishing emails*.

3  Yet if FDS or Sanchez received ordinary website-related income in 2016 that had nothing

4  to do with the alleged phishing scam, Reflex's position is that such income is discoverable.

5  Indeed, if FDS or Sanchez received revenue or income in 2016 that was *unrelated* to the

6  FDS Website, Reflex's position is that even this revenue is still discoverable.

7       Reflex is not entitled to use the pendency of a trademark infringement lawsuit as an

8  excuse to take discovery of *all* of FDS's and Sanchez's revenues in a given calendar year.

9  Numerous district courts in intellectual property cases have denied overly broad discovery

10  requests that seek a trademark or copyright defendant's financial information where the

11  information sought in discovery lacks a plausible causal connection to the alleged

12  infringement.  *See, e.g.*, *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309-10

13  (S.D. Ga. 2012) (denying discovery of trademark defendant's financials and tax returns

14  because plaintiff failed to show how such information will assist in proving profit-based

15  damages, and "sifting the flecks of 'counterfeit income' from [defendant's income] stream

16  would be, on its face, at best a speculative mirage"); *Ocean Atlantic Woodland Corp. v.*

17  *DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003) (denying

18  plaintiff's request for "broad discovery into all of the defendants' business activities"

19  where plaintiff "made no attempt to limit the scope of discovery to the activities relating to

20  the alleged infringement"); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL

21  34104827, at *2-3 (S.D. Tex. June 27, 2001) (in action alleging computer company's user

22  guide violated copyrighted ergonomics book, court denied discovery of company's "gross

23  revenues related to the number of computers sold during the relevant time period"); *Burgin*

24  *v. Nat'l Football League*, 2014 WL 521576, at *2 (S.D.N.Y. Feb. 6, 2014) (in action

25  alleging infringing use of plaintiff's photograph on NFL's website, denying "wide-ranging

26  discovery into financial matters that go beyond what is directly related to, or reasonably

27  attributable to, the Website"); *Bell v. Taylor*, 2014 WL 2581175, at *1 (S.D. Ind. June 9,

28  2014) (discovery of defendant's "tax returns and business receipts" to determine

{00035582 1 }

defendant's overall gross revenues was not permitted where defendant was alleged to have used plaintiff's photograph on defendant's "websites intended to advertise and increase business").

At bottom, Reflex should not be entitled to enforce a document request that is patently overbroad. This Court "wide latitude" in controlling Reflex from engaging in such overbroad discovery. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416-17 (9th Cir. 1987); *accord Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("[P]arties have a correlative obligation to tailor [discovery] to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up. And above all, the [trial court] must be accorded considerable latitude in gauging the extent of a party's compliance with these precepts.").

2.    The document request is also overbroad as to time. Where an accounting of profits is proper, the accounting period should be "co-extensive with the period of infringement." *Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959). Reflex alleges Defendants began disseminating the phishing emails "[o]n or about July 30, 2016." Compl. ¶ 34 (Ex. 7 at 7). Yet this document requests seeks revenues for the entirety of 2016, and not just the period of alleged infringement.

3.    Finally, it is not even clear that Reflex would be entitled an accounting of Defendants' profits if Reflex prevailed. *Cf. Coach*, 911 F. Supp. 2d at 1309 (plaintiff failed "to show how it can recover profit-based damages, and thus how [defendant's] tax returns will yield it information to that end"). Awarding a trademark infringer's profits as monetary recovery is never automatic and never a matter of right. *Bandag, Inc. v. Al*

*Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984) ("An accounting [of profits], however, is not automatic, and may be denied at the discretion of the district court, where there has been no showing of fraud and defendant's innocent use stands unrefuted, or where as here 'careful examination of the record fails to reveal any specific evidence to the effect that [plaintiff] has lost substantial business and profits as a result of [defendant's] unfair competition.'"); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:59, pp. 30-171 to -172 (4th ed. 2016). Rather, whether to award an infringer's profits as monetary recovery is an *equitable* decision committed to the sound discretion of the trial judge. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) (identifying six factors the trial judge is to consider in determining whether to award defendant's profits as monetary recovery). Reflex has done nothing to show that it can satisfy the traditional equitable factors that would entitle Reflex to an award of Defendants' profits as monetary recovery. As such, Reflex is attempting to pursue discovery in support of a theory of monetary recovery that is wholly speculative.

**Plaintiff's Request to Produce No. 7:** Produce all documents identifying all sources and amounts of costs incurred by FDS SOLUTIONS to generate the income identified in response to Request No. 6, above.

**Defendants' Response to Request No. 7:** Responding Parties object to Request No. 7 as overbroad, not calculated to the discovery of relevant and admissible evidence, not proportional to the needs of the case, violative of the right to privacy, and calling for confidential and proprietary information.

**Plaintiff's Position on Request No. 7:**

    (1) *Response to Defendants' Objections:*

    Reflex Media incorporates by reference its statement concerning the inadequacy of Defendants' objections, as set forth in response to Defendants' Answer to Plaintiff's Interrogatory No. 2, *supra*.

    (2) *Reason Why Defendants Should Be Compelled to Respond:*

1      Reflex Media incorporates by reference its statement concerning the reasons why

2  information pursuant to this request should be provided, as set forth in response to

3  Defendants' Answer to Plaintiff's Request to Produce No. 3, *supra*.

4  **Defendants' Position on Request No. 7:**

5      The Court should not order Defendants to provide any further responses to this

6  document request or its related request (RFP No. 6), for the following reasons:

7      1.    Reflex's document request seeking "documents identifying *all sources and*

8  *amounts* of costs incurred by FDS SOLUTIONS" is vastly overbroad.  Reflex's position

9  essentially boils down to this:  whenever a plaintiff sues for trademark infringement, *every*

10  conceivable revenue received by the defendant is fair game for discovery – and the parties

11  can just fight later about whether the revenue is properly attributable to the alleged

12  infringement.  This is wrong.

13      Reflex alleges Defendants FDS and Sanchez were somehow responsible for sending

14  out "phishing" emails that used Reflex's SEEKING ARRANGEMENT trademark, and

15  that as a result of receiving these phishing emails, customers signed up for FDS's

16  competing "Find Your True Soulmate" dating website (the "FDS Website").  Compl. ¶ 34-

17  40 (Ex. 7 at 7).  *Even if* these facts were proved true, this would not entitle Reflex to recover

18  *all* of FDS's and Sanchez's revenues received in 2016.  If any revenues are relevant, its

19  revenues attributable to the FDS Website – and more specifically, revenues attributable to

20  *customers who joined the FDS Website as a result of receiving the alleged phishing emails*.

21  Yet if FDS or Sanchez received ordinary website-related income in 2016 that had nothing

22  to do with the alleged phishing scam, Reflex's position is that such income is discoverable.

23  Indeed, if FDS or Sanchez received revenue or income in 2016 that was *unrelated* to the

24  FDS Website, Reflex's position is that even this revenue is still discoverable.

25      Reflex is not entitled to use the pendency of a trademark infringement lawsuit as an

26  excuse to take discovery of *all* of FDS's and Sanchez's revenues in a given calendar year.

27  Numerous district courts in intellectual property cases have denied overly broad discovery

28  requests that seek a trademark or copyright defendant's financial information where the

1  information sought in discovery lacks a plausible causal connection to the alleged

2  infringement. *See, e.g.*, *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309-10

3  (S.D. Ga. 2012) (denying discovery of trademark defendant's financials and tax returns

4  because plaintiff failed to show how such information will assist in proving profit-based

5  damages, and "sifting the flecks of 'counterfeit income' from [defendant's income] stream

6  would be, on its face, at best a speculative mirage"); *Ocean Atlantic Woodland Corp. v.*

7  *DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003) (denying

8  plaintiff's request for "broad discovery into all of the defendants' business activities"

9  where plaintiff "made no attempt to limit the scope of discovery to the activities relating to

10 the alleged infringement"); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL

11 34104827, at *2-3 (S.D. Tex. June 27, 2001) (in action alleging computer company's user

12 guide violated copyrighted ergonomics book, court denied discovery of company's "gross

13 revenues related to the number of computers sold during the relevant time period"); *Burgin*

14 *v. Nat'l Football League*, 2014 WL 521576, at *2 (S.D.N.Y. Feb. 6, 2014) (in action

15 alleging infringing use of plaintiff's photograph on NFL's website, denying "wide-ranging

16 discovery into financial matters that go beyond what is directly related to, or reasonably

17 attributable to, the Website"); *Bell v. Taylor*, 2014 WL 2581175, at *1 (S.D. Ind. June 9,

18 2014) (discovery of defendant's "tax returns and business receipts" to determine

19 defendant's overall gross revenues was not permitted where defendant was alleged to have

20 used plaintiff's photograph on defendant's "websites intended to advertise and increase

21 business").

22      At bottom, Reflex should not be entitled to enforce a document request that is

23 patently overbroad. This Court "wide latitude" in controlling Reflex from engaging in such

24 overbroad discovery. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416-17 (9th Cir.

25 1987); *accord Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103

26 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("While the standard of relevancy [in discovery] is a

27 liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and

28 to explore matter which does not presently appear germane on the theory that it might

conceivably become so.") (internal quotations and citations omitted); *Mack v. Great Atl. &*
*Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("[P]arties have a correlative
obligation to tailor [discovery] to suit the particular exigencies of the litigation.  They ought
not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly
exploratory operations in the vague hope that something helpful will turn up.  And above
all, the [trial court] must be accorded considerable latitude in gauging the extent of a party's
compliance with these precepts.").

2.      The document request is also overbroad as to time.  Where an accounting of
profits is proper, the accounting period should be "co-extensive with the period of
infringement."  *Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959).  Reflex alleges
Defendants began disseminating the phishing emails "[o]n or about July 30, 2016."
Compl. ¶ 34 (Ex. 7 at 7).  Yet this document requests seeks revenues for the entirety of
2016, and not just the period of alleged infringement.

3.      Finally, it is not even clear that Reflex would be entitled an accounting of
Defendants' profits if Reflex prevailed.  *Cf. Coach*, 911 F. Supp. 2d at 1309 (plaintiff failed
"to show how it can recover profit-based damages, and thus how [defendant's] tax returns
will yield it information to that end").  Awarding a trademark infringer's profits as
monetary recovery is never automatic and never a matter of right.  *Bandag, Inc. v. Al*
*Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984) ("An accounting [of profits],
however, is not automatic, and may be denied at the discretion of the district court, where
there has been no showing of fraud and defendant's innocent use stands unrefuted, or where
as here 'careful examination of the record fails to reveal any specific evidence to the effect
that [plaintiff] has lost substantial business and profits as a result of [defendant's] unfair
competition.'"); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 30:59, pp. 30-171 to -172 (4th ed. 2016).  Rather, whether to award an infringer's profits
as monetary recovery is an *equitable* decision committed to the sound discretion of the trial
judge.  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th
Cir. 2015); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)

(identifying six factors the trial judge is to consider in determining whether to award defendant's profits as monetary recovery).  Reflex has done nothing to show that it can satisfy the traditional equitable factors that would entitle Reflex to an award of Defendants' profits as monetary recovery.  As such, Reflex is attempting to pursue discovery in support of a theory of monetary recovery that is wholly speculative.

RESPECTFULLY SUBMITTED BY:

Dated: September 20, 2017          **SMITH CORRELL, LLP**


By:   /s/ Mark L. Smith
Mark L. Smith
msmith@smithcorrell.com
Jacob L. Fonnesbeck
jfonnesbeck@smithcorrell.com
11766 Wilshire Blvd. Suite 1670
Los Angeles, CA 90025

*Attorneys for Plaintiff*

Dated: September 20, 2017          **GRODSKY & OLECKI LLP**


By:   /s/ John Metzidis-Drennan
Allen B. Grodsky
allen@grodsky-olecki.com
John Metzidis-Drennan
john@grodsky-olecki.com
2001 Wilshire Blvd., Suite 210
Santa Monica, CA 90403

*Attorneys for Defendants*

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that counsel for Defendants, John Metzidis-Drennan has authorized me to file this document.

Dated: September 20, 2017          **SMITH CORRELL, LLP**


By:   /s/ Mark L. Smith
Mark L. Smith
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 20, 2017, a true and correct copy of the foregoing Joint Stipulation Regarding Plaintiff Reflex Media, Inc.'s Motion to Compel was served upon the following via the Court's e-filing system:

Allen B. Grodsky
allen@grodsky-olecki.com
John Metzidis-Drennan
john@grodsky-olecki.com
2001 Wilshire Blvd., Suite 210
Santa Monica, CA 90403

*Attorneys for Defendants*

/s/ Melina Hernandez
Melina Hernandez