```
 1
 2
 3                    UNITED STATES DISTRICT COURT
 4                   CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
 5
 6   REFLEX MEDIA, INC.,              )
                                      )
 7                                    )
               PLAINTIFF,             )
 8                                    )
            V.                        )  CV 17-00491-FMO(JPR)
 9                                    )
                                      )  LOS ANGELES, CALIFORNIA
10   MARIA DEL MAR MARTINEZ SANCHEZ,  )
     ET AL.,                          )
11                                    )  NOVEMBER 15, 2017
                                      )  (3:56 P.M. TO 4:14 P.M.)
12             DEFENDANTS.            )
                                      )
13   _____)
14                   TELEPHONIC DISCOVERY HEARING
15            BEFORE THE HONORABLE JEAN P. ROSENBLUTH
                  UNITED STATES MAGISTRATE JUDGE
16
17   APPEARANCES:              SEE NEXT PAGE
18   COURT REPORTER:           RECORDED; COURT SMART
19   COURTROOM DEPUTY:         BEA MARTINEZ
20   TRANSCRIBER:              DOROTHY BABYKIN
                               COURTHOUSE SERVICES
21                             1218 VALEBROOK PLACE
                               GLENDORA, CALIFORNIA  91740
22                             (626) 963-0566
23
24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF REFLEX MEDIA, INC.:

 3            SMITH CORRELL LLP
              BY:  JACOB LEX FONNESBECK
 4                 ATTORNEY AT LAW
              SUITE 1670
 5            11766 WILSHIRE BOULEVARD
              LOS ANGELES, CALIFORNIA   90025
 6

 7   FOR THE DEFENDANT MARIA DEL MAR MARTINEZ SANCHEZ:

 8            GRODSKY & OLECKI LLP
              BY:  JOHN METZIDIS-DRENNAN
 9                 ATTORNEY AT LAW
              2001 WILSHIRE BOULEVARD
10            SUITE 210
              SANTA MONICA, CALIFORNIA   90403
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                           I N D E X
    CV 17-00491-FMO(JPR)                          NOVEMBER 15, 2017
2
    PROCEEDINGS:   TELEPHONIC DISCOVERY HEARING
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1         LOS ANGELES, CALIFORNIA; NOVEMBER 15, 2017; 3:56 P.M.
 2              THE CLERK:  THIS UNITED STATES DISTRICT COURT IS NOW
 3    IN SESSION.  THE HONORABLE JEAN P. ROSENBLUTH, UNITED STATES
 4    MAGISTRATE JUDGE, PRESIDING.
 5              CALLING CASE NUMBER CV 17-0491-FMO(JPRX), REFLEX
 6    MEDIA, INC. VERSUS MARIA DEL MAR MARTINEZ SANCHEZ, ET AL.
 7              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE
 8    RECORD.
 9              MR. FONNESBECK:  THIS IS JAKE FONNESBECK ON BEHALF OF
10    PLAINTIFFS.
11              THE COURT:  ALL RIGHT.  HELLO.
12              MR. METZIDIS-DRENNAN:  GOOD AFTERNOON, YOUR HONOR.
13              THIS IS JOHN METZIDIS-DRENNAN ON BEHALF OF DEFENDANTS
14    FDS AND SANCHEZ.
15              THE COURT:  ALL RIGHT.  HELLO TO YOU TOO.
16              SO, I RECALL OUR LAST HEARING, AND I HAVE REVIEWED
17    THE PORTIONS OF THE MOTION RELEVANT TO RFPS -- I THINK IT'S 3,
18    4, 6 AND 7 OR SOMETHING LIKE THAT.  BUT I HAVE REVIEWED THEM.
19              SO, WHY DOESN'T SOMEBODY TELL ME WHAT THE PROBLEM IS.
20              MR. FONNESBECK:  YOUR HONOR, THIS IS JAKE FONNESBECK
21    FOR PLAINTIFFS.
22              I THINK THE PROBLEM WE'RE HAVING IS JUST FRANKLY
23    GETTING ENOUGH INFORMATION, SPECIFIC INFORMATION, THAT WE'RE
24    NOT GOING TO HAVE AN EVIDENTIARY PROBLEM.
25              THE PARTIES DID MEET AND CONFER ON THIS, AND THE
```

```
 1   DEFENDANTS DID OFFER TO PROVIDE US WITH A GENERAL PROFIT AND
 2   LOSS STATEMENT.  BUT THAT WOULDN'T HAVE GIVEN US ANY INDICATION
 3   ABOUT WHAT THE SOURCES OF THE REVENUE REFLECTED IN THAT
 4   STATEMENT WHAT THEY WERE FROM.
 5            AND, SO, WE TRIED TO RESOLVE THAT ISSUE BY THEN
 6   ASKING IF THEY WOULD JUST AGREE THAT ALL OF THE REVENUE
 7   REFLECTED ON THAT PROFIT AND LOSS STATEMENT WERE -- WAS REVENUE
 8   DERIVED FROM THE WEBSITES THAT ARE AT ISSUE.  AND THEY DECLINED
 9   THAT REQUEST.
10            AND, SO, NOW WE'RE BACK BEFORE YOU I THINK TO NARROW
11   THE REQUESTS AS THEY WERE ORIGINALLY DRAFTED AND ASK THAT YOU
12   COMPEL THE DEFENDANTS TO PRODUCE FINANCIAL INFORMATION FOR THE
13   WEBSITES THAT THEY IDENTIFY IN THEIR SUPPLEMENTAL INTERROGATORY
14   RESPONSES FOLLOWING THE LAST HEARING.
15            THE COURT:  WELL, SO, I REMEMBER WE HAD SOME
16   DISCUSSION ABOUT THIS.  AND I DO THINK THAT IN GENERAL AS TO
17   ALL THE THINGS WE DISCUSSED LAST TIME IN GENERAL I WOULD SAY
18   THAT PLAINTIFF IS ENTITLED ONLY TO THE INFORMATION PERTAINING
19   TO, YOU KNOW, PROFITS, LOSS, COSTS THAT COULD BE FAIRLY
20   ATTRIBUTED TO PEOPLE, YOU KNOW, BEING LED ASTRAY BY THIS -- I
21   THINK IT WAS AN EMAIL, A PHISHING EMAILING THING, AND SAYING
22   THAT THEY NEVER SIGNED UP FOR THE SERVICE.
23            BUT I RECOGNIZE THAT, YOU KNOW, THERE MAY WELL BE
24   DISPUTES AS TO, YOU KNOW -- THAT THAT'S EASIER SAID THAN DONE.
25   BECAUSE, YOU KNOW, SOME PEOPLE MIGHT JUST HAVE CANCELLED THE
```

1    SERVICE WITHOUT SAYING WHY AND ALL OF THAT.

2            SO, I SUPPOSE MR. METZIDIS-DRENNAN, I UNDERSTAND YOUR

3    POINT ABOUT THAT THEY'RE -- PLAINTIFF IS ONLY ENTITLED TO A

4    LIMITED RANGE OF INFORMATION ON PROFITS, LOSSES AND COSTS.  BUT

5    HOW EFFECTIVELY CAN WE NARROW THAT WHEN I WOULD IMAGINE THAT

6    AROUND THE MARGINS IT'S NOT AT THIS POINT AT LEAST KNOWN

7    EXACTLY WHAT COULD BE ATTRIBUTED TO THE CONDUCT THAT'S ALLEGED

8    IN THE COMPLAINT.  AND THAT'S PROBABLY NOT GOING TO BE SORTED

9    OUT UNTIL MUCH LATER IN THIS CASE.

10           MR. METZIDIS-DRENNAN:  RIGHT.

11           YOUR HONOR, I DON'T BELIEVE IT'S POSSIBLE TO NARROW

12   THIS FURTHER.  WE'VE -- YOU KNOW, SINCE THE LAST HEARING ON

13   OCTOBER 12TH WE'VE PROVIDED SUPPLEMENTAL DISCOVERY RESPONSES TO

14   OTHER INTERROGATORIES.  BUT WE'VE MADE CLEAR THAT IT'S NOT

15   POSSIBLE FOR US TO ISOLATE THOSE CUSTOMERS OF OUR PARTICULAR

16   WEBSITE WHO SIGNED UP FOR THE WEBSITE AS A RESULT OF RECEIVING

17   A PHISHING EMAIL AND DID SO IN ERROR.

18           THE COURT:  I'M SORRY.  YOU DROPPED OUT AT THE LAST

19   -- RESULT OF PROCEEDING WHAT?

20           MR. METZIDIS-DRENNAN:  OH, EXCUSE ME.

21           IT'S NOT POSSIBLE FOR US TO IDENTIFY THOSE CUSTOMERS

22   OF OUR WEBSITE WHO SIGNED UP FOR THE WEBSITE AS A RESULT OF

23   RECEIVING THIS PHISHING EMAIL.

24           THE COURT:  BUT, SO, THEN -- THEN DOESN'T THAT --

25   COUNSEL, TOWARD GIVING PLAINTIFF, YOU KNOW, REALLY A BROADER

```
 1   SCOPE, ESSENTIALLY, YOU KNOW, WHAT THEY WANT, WHICH IS
 2   EVERYTHING FOR 2016.
 3           MR. METZIDIS-DRENNAN:  NO, IT REALLY DOESN'T.
 4           I MEAN, WHAT I DID OFFER TO PRODUCE WAS A SIMPLE P&L
 5   THAT SHOWS THE ENTIRE COMPANY'S REVENUES FOR THAT YEAR OF
 6   2016.  BUT NONE OF THAT IS GOING TO BE IDENTIFIABLE AS
 7   CONNECTED TO THE ALLEGEDLY INFRINGING ACTIVITY.
 8           THE COURT:  WELL, BUT AT SOME POINT, AND THIS IS FOR
 9   LATER DOWN THE ROAD I WOULD IMAGINE, IF -- YOU KNOW, IF THIS
10   CASE WERE TO GO TO TRIAL, SOMEBODY IS GOING TO HAVE TO SHOW
11   SOMETHING TO PROVE DAMAGES.  AND, SO, THEY NEED THIS
12   INFORMATION.  AND THEN YOU -- YOU, I WOULD IMAGINE, WILL MAKE
13   ARGUMENTS THAT A CERTAIN PORTION IS NOT ATTRIBUTABLE TO THAT
14   CONDUCT.
15           I MEAN, I THINK THERE WAS SOME -- I KNOW THAT WITH
16   THE OTHER DISCOVERY RESPONSES THAT WE DISCUSSED BEFORE WE
17   LIMITED EVERYTHING TO 2016.  BUT I DO BELIEVE -- I THINK -- AND
18   MR. FONNESBECK CAN CORRECT ME IF I'M WRONG, BUT I THINK THAT
19   THE FIRST ALLEGATION CONCERNING WHEN THESE EMAILS WENT OUT WAS
20   LIKE IN JULY OF 2016 OR SOMETHING.  SO, MAYBE THE ANSWER IS
21   JUST TO LIMIT IT TO HALF THE YEAR.  I DON'T KNOW.
22           BUT I JUST -- I DO -- I MEAN, THEY'RE CLEARLY
23   ENTITLED TO TRY TO PROVE DAMAGES.  AND, SO, THEY NEED THE
24   INFORMATION TO DO THAT.  AND I JUST -- I DON'T -- I MEAN, I
25   WOULD BE INCLINED TO SAY THAT THEY'RE ENTITLED TO WHAT THEY'RE
```

8

1  SEEKING, MAYBE AT LEAST AS TO FDS. I DON'T KNOW ABOUT SANCHEZ.
2  BUT I MEAN, HOW ELSE ARE THEY SUPPOSED TO PROVE DAMAGES.
3           MR. METZIDIS-DRENNAN: RIGHT.
4           YOUR HONOR, MAY I BE HEARD A LITTLE FURTHER ON THAT?
5           THE COURT: AND WHO IS THIS?
6           MR. METZIDIS-DRENNAN: THIS IS JOHN METZIDIS-DRENNAN.
7           THE COURT: OKAY. SURE.
8           MR. METZIDIS-DRENNAN: THIS IS A -- THIS IS A
9  TRADEMARK INFRINGEMENT CASE. AND THERE ARE TWO FORMS OF
10 MONETARY RECOVERY THAT THEY CAN SEEK. ONE IS STATUTORY
11 DAMAGES, AND ONE IS AN ALLEGED INFRINGER'S PROFITS.
12          THE COURT: RIGHT, RIGHT.
13          MR. METZIDIS-DRENNAN: THE REQUEST AT ISSUE HERE
14 CONCERNED THAT LATTER FORM OF MONETARY RECOVERY ON ALLEGED
15 INFRINGER'S PROFITS.
16          AND I DO WANT TO JUST STEP BACK AND SAY THIS IS NOT A
17 CASE WHERE A PLAINTIFF IF HE WERE TO ESTABLISH LIABILITY, AND
18 THEY ARE NOT, BUT IF THEY WERE TO ESTABLISH LIABILITY THIS IS
19 NOT A CASE FOR PROFITS. THIS IS A CASE FOR STATUTORY DAMAGES.
20          THE COURT: BUT HERE'S THE PROBLEM. I DON'T MAKE
21 THAT DECISION. THE DISTRICT JUDGE DOES. AND, SO, RIGHT NOW
22 WE'RE TALKING JUST ABOUT DISCOVERY. AND IT SEEMS TO ME THAT I
23 HAVE TO ASSUME THAT THEY WILL BE ENTITLED TO SHOW EITHER TYPE
24 OF DAMAGES. BECAUSE THAT'S A DECISION FOR JUDGE OLGUIN.
25          MR. METZIDIS-DRENNAN: RIGHT. RIGHT.

1    IT -- OKAY. SO, NONETHELESS, IF THEY'RE ENTITLED TO
2    PURSUE AN AWARD OF OUR PROFITS AS THEIR MONETARY RECOVERY, IT
3    STILL REMAINS THEIR BURDEN TO SHOW REVENUE THAT IS ATTRIBUTABLE
4    TO THE INFRINGING ACTIVITY.
5         THE COURT: WELL, THAT I AGREE WITH.
6         MR. METZIDIS-DRENNAN: AND THEY HAVE NOT BEEN ABLE TO
7    DRAFT A REQUEST THAT TARGETS THAT KIND OF REVENUE. THEY'VE
8    JUST DRAFTED BROAD REQUESTS --
9         THE COURT: BUT YOU'VE TOLD ME YOU CAN'T --
10        MR. METZIDIS-DRENNAN: -- BROAD REQUESTS. AND
11   CONVERSELY THOUGH --
12        THE COURT: YOU TOLD ME YOU CAN'T MAKE THAT
13   DETERMINATION ANYWAY.
14        MR. METZIDIS-DRENNAN: YES. THAT IS THE HARDER PART.
15   CONVERSELY IT IS I CAN'T MAKE THAT DETERMINATION. I CAN'T GO
16   TO MY CLIENT AND SAY, LET'S FIND THE REVENUE THAT RESULTED FROM
17   THE ALLEGEDLY INFRINGING ACTIVITY BECAUSE THERE'S NO WAY TO
18   ISOLATE THAT.
19        SO, THE BEST THAT I CAN COMPROMISE -- OFFER AS A
20   COMPROMISE DURING OUR MEET AND CONFER WAS TO PRODUCE A SIMPLE
21   P&L THAT SHOWS ALL THE COMPANY'S REVENUE, NOT JUST REVENUE
22   COMING FROM THIS WEBSITE, AND NOT JUST THE REVENUE COMING FROM
23   THIS ALLEGEDLY INFRINGING ACTIVITY.
24        THE COURT: BUT SO YOU CAN'T --
25        MR. METZIDIS-DRENNAN: BUT ALL OF THE COMPANY'S

1  REVENUE.  BUT THERE'S NOT MUCH THAT THAT'S GOING TO BE USEFUL

2  FOR THE PLAINTIFFS IN RECEIVING IT.

3          THE COURT:  BUT, SO, YOU CAN'T EVEN ISOLATE OUT WHAT

4  COMES FROM THE WEBSITE?

5          MR. METZIDIS-DRENNAN:  THAT IS SOMETHING I WOULD HAVE

6  TO TALK TO MY CLIENT ABOUT.  I DON'T KNOW ONE WAY OR ANOTHER IF

7  THAT'S -- IF THAT'S POSSIBLE.

8          THE COURT:  AND WHAT ABOUT --

9          MR. FONNESBECK:  BUT -- BUT --

10         THE COURT:  SO, LET ME ASK PLAINTIFF'S COUNSEL.

11         DO YOU HAVE ANY REASON TO BELIEVE THAT -- WHAT'S THE

12 EARLIEST POSSIBLE DATE THAT THESE PHISHING EMAILS COULD HAVE

13 GONE OUT?

14         MR. FONNESBECK:  I BELIEVE THAT IT MAY HAVE BEEN IN

15 JUNE.  IT WOULD TAKE ME JUST A MINUTE TO --

16         THE COURT:  OKAY.  THAT'S WHAT I THOUGHT.  I THOUGHT

17 IT WAS JULY, BUT.

18         MR. FONNESBECK:  IT'S JUNE OR JULY.

19         NOW, I WOULD -- LET ME POINT OUT -- AND REALLY I

20 DON'T ACTUALLY KNOW HOW THIS WOULD PLAY OUT.  SO, I MAY BE

21 ARGUING AGAINST MYSELF HERE A LITTLE BIT.

22         BUT ASKING TO GO BACK TO JANUARY, ONE OF THE ISSUES

23 THAT WE'RE DISCUSSING, THE ISSUE WE'RE DISCUSSING RIGHT NOW, IS

24 HOW DO YOU IDENTIFY THAT THERE'S ACTIVITY ATTRIBUTABLE TO THESE

25 PHISHING EMAILS.

1    AND ONE WAY THAT YOU WOULD DO THAT IS TO SHOW THAT
2    THERE'S AN UPTICK AT THE SAME TIME THAT THESE EMAILS GO OUT IN
3    REVENUE.  AND, THEN, YOU'VE GOT A CORRELATION THERE.
4    AND, I MEAN, I DON'T KNOW WHAT THE NUMBERS ARE GOING
5    TO SHOW.  AND THAT MIGHT ACTUALLY -- THAT ARGUMENT MIGHT
6    BACKFIRE ON US.  I DON'T KNOW THAT.  BUT THAT'S WHY I THINK IF
7    THEY WERE TO GIVE US THE INFORMATION FOR THE ENTIRE YEAR OF
8    2016, THAT'S, YOU KNOW, PRETTY NARROW IN TIME BUT THEN ALSO
9    GIVES US HOPEFULLY ENOUGH SPACE ON BOTH ENDS OF THE YEAR WHERE
10   THIS CONDUCT HAPPENED TO BE ABLE TO MAYBE GLEAN SOME
11   INFORMATION FROM THE TRENDS THAT MIGHT EXIST.
12   THE COURT:  ALL RIGHT.  WELL, THAT IS A GOOD
13   ARGUMENT.
14   WHAT ABOUT -- I THINK I ASKED THIS LAST TIME, AND YOU
15   GAVE ME AN ANSWER, AND I'M SORRY I CAN'T RECALL.  BUT WHY DO
16   YOU -- WHY DO YOU HAVE THESE QUESTIONS FRAMED IN TERMS OF
17   SANCHEZ AS WELL AS FDS?
18   MR. FONNESBECK:  SO, THE -- HONESTLY THE ISSUE IS
19   THAT WE JUST DON'T KNOW WHO'S DOING WHAT AND WHERE THE MONEY
20   FLOWS.  MY UNDERSTANDING IS THAT FDS IS A SINGLE MEMBER LLC.
21   THE COURT:  UH-HUH.
22   MR. FONNESBECK:  AND, SO, YOU KNOW, IF SHE'S AN
23   INDIVIDUAL MAYBE THE COMPANY CAN'T GET A MERCHANT PROCESSOR.
24   AND, SO, IF WE WERE TO JUST ASK FOR DOCUMENTS RELATED TO FDS,
25   YOU KNOW, SOME LAWYERS MIGHT ARGUE THEN THAT WE'RE NOT ENTITLED

1  TO THAT INFORMATION BECAUSE MAYBE THE MERCHANT PROCESSING

2  ACCOUNT IS IN MS. SANCHEZ'S NAME INDIVIDUALLY.  AND, SO, THAT'S

3  -- THAT'S REALLY THE ISSUE THERE.

4           BECAUSE I DON'T KNOW HOW THE MONEY FLOWS FROM

5  WEBSITES THROUGH TO THE ENTITY AND THEN TO, LIKE I SAID, ITS

6  SOLE MEMBER MS. SANCHEZ.  SO, THAT'S WHY THEY'RE BOTH THERE.

7           THE COURT:  WELL, IT SEEMS TO ME,

8  MR. METZIDIS-DRENNAN, THAT I'M A LITTLE SURPRISED THAT YOU

9  HAVEN'T ALREADY FOUND OUT FROM YOUR CLIENT WHETHER YOU CAN

10 SEPARATE OUT THE REVENUE FROM THE WEBSITE.  BECAUSE YOU'RE SORT

11 OF IT SEEMS TO ME AND I -- TRYING TO HAVE IT BOTH WAYS.

12 BECAUSE YOU'RE SAYING, OKAY, WELL, I'LL GIVE YOU SOMETHING THAT

13 SHOWS ALL OF OUR PROFITS, LOSS, COSTS EVEN THOUGH YOU'RE NOT

14 ENTITLED TO IT, BUT THAT'S NOT GOING TO DO YOU ANY GOOD BECAUSE

15 IT'S NOT SEPARATED OUT IN ANY WAY SO I MAY AS WELL NOT GIVE IT

16 TO YOU.

17          I MEAN, THEY HAVE TO GET SOMETHING.  AND, YOU KNOW,

18 I'D RATHER -- I THINK AT THE DISCOVERY STAGE -- AND I RECOGNIZE

19 THAT THE RULES WERE AMENDED A YEAR AGO OR SO, BUT I STILL THINK

20 THAT AT THE DISCOVERY STAGE IT'S MORE APPROPRIATE TO ERR ON THE

21 SIDE OF BEING A LITTLE TOO BROAD THAN A LITTLE TOO

22 UNDERINCLUSIVE.

23          SO, I MEAN --

24          MR. METZIDIS-DRENNAN:  I UNDERSTAND, YOUR HONOR.

25          YOU KNOW, I APOLOGIZE THAT I WASN'T PREPARED FOR THAT

1  EARLIER.  THIS UPTICK THEORY THAT MR. FONNESBECK MENTIONED IS I
2  THINK A CLEVER IDEA AND IT HADN'T BEEN MENTIONED BEFORE BUT IT
3  MAKES SENSE.
4          AND, SO, I THINK IF MY CLIENT IS ABLE TO ON A
5  MONTH-BY-MONTH BASIS PERHAPS FOR CALENDAR YEAR 2016 ISOLATE
6  REVENUE THAT CAME IN FROM THIS WEBSITE, THE "FIND YOUR TRUE
7  SOULMATE WEBSITE."  AND THEN WE'RE ABLE TO COMPARE ON A MONTHLY
8  BASIS BOTH BEFORE AND AFTER THIS PHISHING EMAIL WENT OUT.
9          THAT'S -- IF THAT'S INFORMATION THAT WE CAN GATHER,
10 THEN, I THINK THAT WOULD BE A FAIR RESULT.
11         THE COURT:  SO, WHY DON'T I ASSUME THAT THAT IS
12 SOMETHING YOU CAN PROVIDE, AND I ORDER THAT YOU PROVIDE IT.
13 AND, THEN, IF THERE'S SOME PROBLEM OR SOMETHING, YOU KNOW, I
14 GUESS YOU CAN AGAIN COME BACK.
15         SO, THAT TAKES CARE OF --
16         WELL, I'LL HEAR FROM YOU MR. FONNESBECK.
17         -- BUT THAT WOULD TAKE CARE OF FDS, BUT THEN WE STILL
18 HAVE SANCHEZ TO DEAL WITH.
19         SO, MR. FONNESBECK, AT LEAST AS TO FDS, IS THAT AN
20 APPROPRIATE RESOLUTION FOR YOU?
21         MR. FONNESBECK:  IT IS.
22         THE ONLY THING I WOULD CLARIFY -- AND I DON'T KNOW IF
23 IT WAS INTENTIONAL OR NOT, BUT JOHN ONLY MENTIONED ONE WEBSITE,
24 "FIND YOUR TRUE SOULMATES," IN HIM SPEAKING JUST A MOMENT AGO.
25 AND WE WOULD LIKE THE FINANCIAL DATA FOR ALL OF THE WEBSITES.

1   THERE ARE 31 OF THEM THAT WERE IDENTIFIED IN RESPONSE TO THEIR
2   INTERROGATORY NUMBER 21.
3            THE COURT:  AND THAT'S BECAUSE YOU -- AT THIS POINT
4   YOU DON'T KNOW IF SOME OF THEM WENT OUT THROUGH THOSE WEBSITES
5    -- OR THERE WERE LINKS; IS THAT CORRECT? --
6            MR. FONNESBECK:  THAT'S CORRECT.
7            THE COURT:  ALL RIGHT.  SO, DO YOU HAVE AN OBJECTION
8   TO THAT, MR. METZIDIS-DRENNAN?
9            MR. METZIDIS-DRENNAN:  I AM A BIT CONCERNED BECAUSE
10  THE SCOPE OF THE COMPLAINT AS I UNDERSTOOD IT WAS THAT THE
11  PHISHING SCHEME WAS USED TO ATTRACT MEMBERS JUST TO THE ONE
12  WEBSITE, THE "FIND YOUR TRUE SOULMATE" WEBSITE AND NOT OTHER
13  WEBSITES THAT ARE OWNED BY MY CLIENT.
14           THE COURT:  WELL, BUT THEN WEREN'T THEY SENT EMAILS
15  THAT HAD LINKS TO THOSE OTHER WEBSITES?
16           MR. METZIDIS-DRENNAN:  THAT APPEARS TO BE WHAT HAS
17  BEEN INDICATED IN DISCOVERY.
18           THE COURT:  WELL, I THINK THAT'S APPROPRIATE THEN.
19           SO, TO THE EXTENT YOU'RE ABLE, I WILL ORDER THAT YOU
20  PROVIDE A STATEMENT MONTH BY MONTH OF PROFITS AND LOSSES.  AND
21  I THINK YOU ALSO ARE OBLIGED TO TURN OVER COSTS AS WELL FOR
22  EACH OF THE WEBSITES FOR THE YEAR 2016 FOR FDS.
23           BUT WHAT DO WE DO ABOUT SANCHEZ?
24           MR. FONNESBECK:  YOUR HONOR, THIS IS MR. FONNESBECK
25  AGAIN.

1    IF I CAN, I THINK ALL WE REALLY CARE ABOUT IS WHERE
2    THE REVENUE AND COSTS ARE COMING FROM THAT ARE ATTRIBUTABLE TO
3    THE WEBSITES.  SO, IF IT'S FLOWING THROUGH MS. SANCHEZ HAVE
4    MS. SANCHEZ PRODUCE IT.  IF IT'S JUST FLOWING THROUGH FDS, HAVE
5    FDS PRODUCE IT.
6            THE COURT:  SO, IT'S JUST -- WE WANT TO FOCUS ON THE
7    -- THE MONEY RELATED TO THE WEBSITES.  AND THEN WHEREVER IT
8    WINDS UP IS SORT OF --
9            MR. METZIDIS-DRENNAN:  YOUR HONOR, THIS IS JOHN
10   METZIDIS.
11           THAT'S FINE WITH ME AS WELL.
12           THE COURT:  ALL RIGHT.
13           MR. METZIDIS-DRENNAN:  I -- I DON'T EXPECT IT TO BE A
14   PROBLEM.  I WAS JUST CONCERNED ABOUT OVERARCHING INQUIRIES INTO
15   ALL INCOME THAT MS. SANCHEZ, AN INDIVIDUAL, RECEIVED.
16           THE COURT:  ALL RIGHT.
17           ALL RIGHT.  SO, I THINK THEN THAT WHAT I WILL ORDER
18   IS I WILL GRANT THE MOTION TO COMPEL AS TO THOSE FOUR REQUESTS
19   FOR PRODUCTION BUT LIMITED TO A MONTH-BY-MONTH ACCOUNTING OF
20   THE PROFITS, LOSS, AND COSTS RELATED TO THE 31 WEBSITES FOR
21   JUNE -- I'M SORRY, FOR THE CALENDAR YEAR 2016.
22           IS THAT RIGHT?
23           MR. FONNESBECK:  YES.
24           THE COURT:  OKAY.
25           ALL RIGHT.  IS THERE ANYTHING FURTHER?

```
 1             MR. METZIDIS-DRENNAN:  I --
 2             MR. FONNESBECK:  I HAVE NOTHING FROM THE PLAINTIFFS.
 3             MR. METZIDIS-DRENNAN:  IS THERE A TIME LIMIT FOR THE
 4   --
 5             THE COURT:  OH --
 6             MR. METZIDIS-DRENNAN:  -- PRODUCTION?
 7             THE COURT:  -- THANK YOU.  YES.
 8             BY WHEN DO YOU THINK YOU CAN DO THAT, MR.
 9   METZIDIS-DRENNAN?
10             MR. METZIDIS-DRENNAN:  IF I COULD HAVE 14 DAYS, I
11   WOULD APPRECIATE IT.  NEXT WEEK IS THE THANKSGIVING HOLIDAY.
12             THE COURT:  IS THAT ALL RIGHT WITH YOU, MR.
13   FONNESBECK?
14             MR. FONNESBECK:  THE ONLY GLITCH THERE -- LET ME JUST
15   LOOK AT THE NUMBERS -- I DON'T WANT TO JAM ANYBODY UP OVER THE
16   HOLIDAY, BUT WE DO HAVE A DISPOSITIVE MOTION DEADLINE THAT'S
17   COMING UP.
18             THE COURT:  SO, THE DISCOVERY CUTOFF IS NOW PAST; IS
19   THAT CORRECT?
20             MR. METZIDIS-DRENNAN:  YES.
21             THE COURT:  OKAY.
22             MR. FONNESBECK:  THAT'S CORRECT.
23             MR. METZIDIS-DRENNAN:  MR. FONNESBECK -- AND I'LL
24   JUST JUMP IN -- THE DISPOSITIVE -- DISPOSITIVE MOTION DEADLINE
25   IS DECEMBER 7TH IS THE LAST DAY TO MEET AND CONFER ON SUMMARY
```

```
 1   JUDGMENT MOTIONS.
 2              AND THEN PER JUDGE OLGUIN'S STANDING ORDER, THAT --
 3   THAT TRIGGERS THE FILING DEADLINES.  BUT THAT'S THE DEADLINE
 4   THAT WE'RE WORKING UP AGAINST -- DECEMBER 7TH.
 5              THE COURT:  SO, TODAY IS THE 15TH --
 6              MR. FONNESBECK:  YES --
 7              THE COURT:  -- IS THAT CORRECT?
 8              SO -- SO, IF HE TURNED THEM OVER IN TWO WEEKS THAT
 9   WOULD BE BEFORE THE DEADLINE FOR THE MEET AND CONFER.  SO, THAT
10   SEEMS ALL RIGHT.
11              IS THAT ALL RIGHT WITH YOU, MR. FONNESBECK?
12              MR. FONNESBECK:  YES, IT IS.
13              THE COURT:  ALL RIGHT.  SO, WE'LL SAY 14 DAYS FROM
14   TODAY.
15              SO, THAT WOULD BE THE 29TH.
16              IS THAT CORRECT?
17              YES.  SO -- SO, MR. METZIDIS-DRENNAN, YOU ARE TO HAND
18   OVER THE INFORMATION TO MR. FONNESBECK BY NO LATER THAN THE
19   29TH.
20              MR. METZIDIS-DRENNAN:  VERY WELL.
21              THE COURT:  ALL RIGHT.  WELL, THANK YOU.
22              AND I HOPE YOU BOTH HAVE A NICE THANKSGIVING.
23              MR. METZIDIS-DRENNAN:  THANK YOU, YOUR HONOR.
24              MR. FONNESBECK:  THANK YOU, YOUR HONOR.
25              SAME TO YOU.
```

18

1        THE COURT:  ALL RIGHTY.

2        THE CLERK:  THIS COURT IS NOW ADJOURNED.

3        (PROCEEDINGS ADJOURNED AT 4:14 P.M.)

19

C E R T I F I C A T E

    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

/S/ DOROTHY BABYKIN                                              12/3/17
_____                           _____
FEDERALLY CERTIFIED TRANSCRIBER                              DATED
DOROTHY BABYKIN