1  GRODSKY & OLECKI LLP
   Allen B. Grodsky (SBN 111064)
2  *allen@grodsky-olecki.com*
   John Metzidis-Drennan (SBN 259464)
3  *john@grodsky-olecki.com*
   2001 Wilshire Boulevard, Suite 210
4  Santa Monica, California 90403
   Telephone:  (310) 315-3009
5  Facsimile:  (310) 315-1557

6  Attorneys for Defendants
   Maria Del Mar Martinez Sanchez and
7  FDS Solutions Limited

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  REFLEX MEDIA, INC., a Nevada          Case No. 2:17-cv-00491-FMO (JPRx)
    corporation,
13                                        Before the Hon. Fernando M. Olguin
                Plaintiff,
14                                        _____
         vs.
15                                        **JOINT BRIEF RE: PLAINTIFF'S**
    MARIA DEL MAR MARTINEZ               **AND DEFENDANTS' MOTIONS**
16  SANCHEZ, an individual; FDS          **FOR SUMMARY JUDGMENT**
    SOLUTIONS LIMITED d/b/a
17  fndrtsmt.com, a United Kingdom        Hearing:
    company; and Does 1-10, inclusive,   Date:        February 1, 2018
18                                        Time:        10:00 a.m.
                Defendants.               Courtroom:   6D
19  _____
                                          Action filed:   January 20, 2017
20                                        Motion Cutoff:  January 11, 2018
                                          FPTC:           March 23, 2018
21                                        Trial:          April 10, 2018

22

23

24       Pursuant to Section 1 of this Court's "Order Re: Summary Judgment

25  Motions" entered April 10, 2017 (Dkt. 19), Plaintiff Reflex Media, Inc. and

26  Defendants Maria Del Mar Martinez Sanchez and FDS Solutions Limited submit

27  the following joint brief in connection with their respective motions for summary

28  judgment:

   _____

# **TABLE OF CONTENTS**

I.    PLAINTIFF REFLEX'S MOTION FOR SUMMARY JUDGMENT. .......... 1

A.    Introductions ..................................................................... 1

1.    Plaintiff's Introduction.................................................. 1

2.    Defendants' Response to Plaintiff's Introduction ...................... 2

B.    Argument.......................................................................... 4

1.    Reflex is Entitled to Summary Judgment on its Trademark Infringement Claim. ................................... 4

a.    Reflex has Ownership of a Valid Trademark.................. 4

b.    Defendants' Response to Plaintiff's Section I.B.1.a and Objections to Evidence................................ 5

c.    Defendants used the SEEKING ARRANGEMENT Trademark Without Consent. ............................ 5

d.    Defendants' Response to Plaintiff's Section I.B.1.c and Objections to Evidence................................ 9

e.    Use of the Counterfeit SEEKING ARRANGEMENT Trademark is Likely to Cause Confusion...................... 10

f.    Defendants' Response to Plaintiff's Section I.B.1.e...... 11

g.    Defendants Can Also Be Held Liable Under Claims of Contributory and Vicarious Trademark Infringement. ................................ 13

(i)    Contributory Trademark Infringement. ............... 13

(ii)    Vicarious Liability for Trademark Infringement. ....................................... 14

h.    Defendants' Response to Plaintiff's Section I.B.1.g and Objections to Evidence........................... 15

# TABLE OF CONTENTS

## (continued)

|   |   |   |   |
|---|---|---|---|
| | 2. | Reflex is Entitled to Summary Judgment on its False Designation of Origin Claim. | 19 |
| | 3. | Defendants' Response to Plaintiff's Section I.B.2. | 20 |
| | 4. | Reflex is Entitled to Summary Judgment on its Unfair Competition Claim under Cal. Bus. & Prof. Code § 17200 et seq. | 20 |
| | 5. | Defendants' Response to Plaintiff's Section I.B.4. | 21 |
| | 6. | Defendant Sanchez is Personally Liable for the Conduct of FDS Solutions. | 21 |
| | 7. | Defendants' Response to Plaintiff's Section I.B.6. | 22 |
| | 8. | Plaintiff's Requested Relief. | 22 |
| | 9. | Defendants' Response to Plaintiff's Section I.B.8. | 23 |
| C. | | Conclusion | 25 |
| II. | | DEFENDANTS FDS SOLUTIONS' AND SANCHEZ'S MOTION FOR SUMMARY JUDGMENT. | 25 |
| | A. | Introductions | 25 |
| | | 1. Defendants' Introduction | 25 |
| | | 2. Plaintiff's Response to Defendants' Introduction | 27 |
| | B. | Statements of Facts | 29 |
| | | 1. Defendants' Statement of Undisputed Facts | 29 |
| | | a. The Parties | 29 |
| | | b. Plaintiff Alleges A Massive Phishing Scheme, But Produced Evidence Of Only Five E-mails Sent To A Single E-mail Address. | 30 |

JOINT BRIEF RE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

### (continued)

c. Defendants Do Not Own Or Control The E-mail Addresses From Where The Five E-mails Were Sent. ..31

d. Defendants Had No Involvement In, or Knowledge Of, The Dissemination Of The E-Mails At Issue...........31

e. Defendants Did Not Authorize Anybody To Use FDS's Name Or The Name of Any Of Its Websites In Connection With These E-mails. ...............32

f. Plaintiff Has No Facts Showing That Sanchez Had Any Involvement In The E-mails It Claims To Be Part of A Phishing Scheme...............................34

2. Plaintiff's Statement of Undisputed Facts................................35

3. Plaintiff's Evidentiary Objections to Defendants' Statement of Uncontroverted Facts ..........................................35

a. Objection to Declaration of Defendant Sanchez............35

b. Objections to Characterization of "Hearsay" Evidence ................................36

C. Argument........................................................................37

1. Defendant Sanchez is Entitled To Summary Judgment. ..........37

a. On The Undisputed Facts, Sanchez Is Not Liable for Trademark Infringement............................................37

b. Plaintiff's Response to Defendants' Section II.C.1.a: The Standards for Infringement Based on Secondary Liability for Defendant Sanchez is the same as Corporate Defendant FDS.............................................39

# TABLE OF CONTENTS

## (continued)

|   |   |   |
|---|---|---|
| c. | For The Same Reasons She Is Not Liable for Trademark Infringement, Sanchez is Not, On the Undisputed Facts, Liable for False Designation of Origin. | 43 |
| d. | Plaintiff's Response to Defendants' Section II.C.1.c: Defendants knowingly and willfully allowed Defendants to infringe on Plaintiff's Trademark, Therefore Defendants Are Also Liable for False Designation of Origin. | 43 |
| e. | On the Undisputed Facts, Sanchez Is Not Liable Under California Business & Professions Code § 17200. | 44 |
| f. | Plaintiffs' Response to Defendants' Section II.C.1.e: Because Defendants Knowingly and Willfully Allowed its Agents to Infringe on Plaintiff's Trademark, Defendants are Liable for Unfair Competition. | 44 |
| g. | On The Undisputed Facts, Sanchez is Not Liable for Negligent Interference with Economic Advantage. | 45 |
| h. | Plaintiff's Response to Defendants' Section II.C.1.g: Plaintiff Will Move for Statutory Damages Rather than Pursue Its Claim for Negligent Interference. | 46 |
| 2. | Defendant FDS is Entitled To Summary Judgment. | 46 |
| a. | On The Undisputed Facts, FDS Is Not Liable for Trademark Infringement. | 46 |

1

## <u>TABLE OF CONTENTS</u>

2

### (continued)

3

4      b.    Plaintiff's Response to Defendants' Section II.C.2.a.....47

5      c.    On the Undisputed Facts, FDS Is Not Liable for

6           False Designation of Origin. ..........................................47

7      d.    Plaintiff's Response to Defendants' Section II.C.2.c.....47

8      e.    On the Undisputed Facts, FDS Is Not Liable Under

9           California Business & Professions Code § 17200. ........47

10      f.    Plaintiff's Response to Defendants' Section II.C.2.e:

11           Plaintiff Had to Spend Time and Resources to Investigate

12           Defendants Actions and Therefore Has Standing to

13           Pursue its Unfair Competition Claim Under Section

14           17200. ..........................................................................48

15      g.    On The Undisputed Facts, FDS is Not Liable for

16           Negligent Interference with Prospective Economic

17           Advantage. ..................................................................49

18      h.    Plaintiff's Response to Defendants' Section II.C.2.g:

19           Plaintiff Will Move for Statutory Damages Rather

20           than Pursue Its Claim for Negligent Interference. .........50

21

22

23

24

25

26

27

28

JOINT BRIEF RE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Pages:**

*1-800 Contacts, Inc. v. Lens.com, Inc.,*
722 F.2d 1229 (10th Cir. 2013) ................................3, 13, 15, 17, 18, 19, 40

*Acmet, Inc. v. Wet Seal, Inc.,*
2015 WL 11670161 (C.D. Cal. 2015)........................................ 24

*Adobe Sys. Inc. v. Childers,*
2011 WL 566812 (N.D. Cal. Feb. 14, 2011)................................. 40

*Advertise.com, Inc. v. AOL Advertising, Inc.,*
616 F.3d 974 (9th Cir. 2010) ........................................... 10

*AMC, Inc. v. Sleekcraft Boats,*
599 F. 2d 341 (9th Cir. 1979) ......................................... 12

*Animal Legal Def. Fund v. LT Napa Partners LLC,*
234 Cal. App. 4th 1270 (June 10, 2015) ................................. 48

*Babbit Electronics v. Dynascan Corp.,*
38 F.3d 1161 (11th Cir.1994) ......................................... 40

*Binder v. Disability Grp., Inc.,*
772 F. Supp. 2d 1172 (C.D. Cal. 2011) .................................. 21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .................................................. 2

*Century 21 Real Estate Corp. v. Magee,*
1991 WL 318797 (C.D. Cal. 1991) ..................................... 20

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.,* LLC,
748 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................. 21

*Coach, Inc. v. Sac a Main,*
2012 WL 5464347 (E.D. Cal. 2012) .................................... 11

*Coach, Inc. v. Sapatis,*
27 F. Supp. 3d 239 (D. N.H. 2014) .................................... 39

*Coach Servs., Inc. v. YNM, Inc.,*
2011 WL 1752091 (C.D. Cal. May 6, 2011) ............................. 41

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) ........................................ 11

*Equal Rights Center. v. Post Properties, Inc.,*
633 F.3d 1136 (D.C.Cir. 2011) ........................................ 48

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
76 F.3d 259 (9th Cir. 1996) ....................................... 13, 40

JOINT BRIEF RE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>Cases:</u>                                                                                      <u>Pages:</u>

*Francis T. v. Village Green Owners Ass'n*,
    42 Cal.3d 490 (1986) ................................................................................. 45

*Geo M. Martin Co. v. Alliance Machine Sys. Int'l, LLC*,
    2008 WL 1946925 (N.D. Cal. 2008) ......................................................... 5

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
    443 F.2d 1159 (2d Cir.1971) .................................................................... 13

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) ................................................................. 23

*Gryphon Mobile Elecs., LLC v. Brookstone, Inc.*,
    2016 WL 7637987 (C.D. Cal. July 12, 2016) ...................................... 19, 43

*Gutowitz v. Transamerica Life Ins. Co.*,
    126 F. Supp. 3d 1128 (C.D. Cal. 2015) ................................................ 11, 16

*Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*,
    WL 1956997 (N.D. Cal. May 11, 2017) ................................................... 4

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
    955 F.2d 1143 (7th Cir.1992) .......................................................... 14, 39, 45

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
    2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) ........................................ 48

*Int'l Mfg. Co. v. Landon, Inc.*,
    336 F.2d 723 (9th Cir. 1964) .............................................................. 21, 22

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982) .......................................................................... 13, 39

*JL Audio Inc. v. Kazi*,
    2017 WL 4179875 (C.D. Cal. Sept. 18, 2017) ......................................... 4

*Kelly-Brown v. Winfrey*,
    717 F. 3d 295 (2d Cir. 2013) .................................................................. 12

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ............................................................................ 48

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
    998 F. Supp. 2d 890 (C.D. Cal. 2014) ............................................... 43, 47

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (2013) ................................................................. 47

*Lee Myles Auto Group, LLC v. Fiorillo*,
    2010 WL 3466687 (S.D.N.Y. 2010) ...................................................... 38

# TABLE OF AUTHORITIES
### (continued)

**Cases:**                                                                                          **Pages:**

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.,*
  601 F. App'x 469 (9th Cir. 2015) ................................................................. 41, 42

*LimeCoral, Ltd. v. Careerbuilder, LLC,*
  2017 WL 961879, (N.D. Ill. 2017) ...................................................................... 5

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
  194 F.3d 980 (9th Cir.1999) ............................................................................ 17

*Louis Vuitton S.A. v. Lee,*
  875 F.2d 584 (7th Cir.1989) ............................................................................ 45

*Mfg. Automation & Software Sys., Inc. v. Hughes,*
  2017 WL 1960633 (C.D. Cal. May 8, 2017) .................................................. 21

*Microsoft Corp. v. Suncrest Enter.,*
  2006 WL 1329881 (N.D. Cal. 2006) ............................................................... 38

*Midas Int'l Corp. v. Poulah Inv'rs, LLC,*
  2016 WL 4532033 (D. Md. 2016) ................................................................... 38

*Minka Lighting, Inc. v. Bath Kitchen Décor, LLC,*
  2015 WL 12743863 (C.D. Cal. 2015) ............................................................. 38

*mophie, Inc. v. Shah,*
  2014 WL 10988347 (C.D. Cal. Nov. 12, 2014) ............................................. 41

*NTD Architects v. Baker,*
  950 F. Supp. 2d 1151 (S.D. Cal. 2013) .......................................................... 44

*Operation Tech., Inc. v. Cyme Int'l T & D Inc.,*
  2016 WL 6246806 (C.D. Cal. Mar. 31, 2016) ............................................... 15

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
  WL 11514767 (E.D. Wash. Aug. 1, 2014) ..................................................... 39

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) ................................................................. 13, 17

*Perfect 10, Inc. v. Cybernet Ventures, Inc.,*
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) ................................................... 13, 17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n.,*
  494 F.3d 788 (9th Cir. 2007) ............................................ 13, 15, 16, 17, 42

*Philip Morris USA Inc. v. Liu,*
  489 F. Supp. 2d 1119 (C.D. Cal. 2007) ........................................... 41, 45, 48

*Phillip Morris USA Inc. v. Shalabi,*
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................... 10, 13, 15, 19, 20

JOINT BRIEF RE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
(continued)

**Cases:**                                                                        **Pages:**

*Playvision Labs, Inc. v. Nintendo of Am., Inc.,*
  2015 WL 12941892,  (N.D. Cal. May 18, 2015) ................................... 10, 12

*S. California Darts Ass'n v. Zaffina,*
  762 F.3d 921 (9th Cir. 2014) ............................................................... 4

*Sara Lee Corp. v. Am. Leather Prod., Inc.,*
  1998 WL 433764 (N.D. Ill. 1998) ...................................................... 38

*Shapiro, Bernstein & Co. v. H. L. Green Co.,*
  316 F.2d 304 (2d Cir. 1963) ........................................................... 40, 43

*SpyOptic, Inc. v. Alibaba.Com, Inc.,*
  163 F. Supp. 3d 755 (C.D. Cal. 2015) ............................................... 16

*Surfvivor Media, Inc. v. Survivor Prods.,*
  406 F.3d 625 (9th Cir. 2005) ........................................................ 37, 46

*Taylor v. Quall,*
  471 F. Supp. 2d 1053 (C.D. Cal. 2007) ............................................ 11

*TI Beverage Grp. Ltd. v. S.C. Cramele Recas SA,*
  2014 WL 12013438 (C.D. Cal. 2014) ................................................ 38

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d 1001 (9th Cir. 1985) ...................................................... 21, 22

*U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.,*
  1 Cal.3d 586 (1970) ......................................................................... 45

*Venhaus v. Shultz,*
  155 Cal. App. 4th 1072 (2007) ......................................................... 49

*Wine Grp., LLC v. USA California Fengshiya Wine Grp., Ltd.,*
  2011 WL 3189361 (C.D. Cal. 2011) .................................................. 24

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
  259 F.3d 1101 (9th Cir. 2001) .......................................................... 36

**Statutes:**

Cal. Bus. & Prof. Code § 17200 ...................................................... passim

15 U.S.C. § 1114 ................................................................................ passim

15 U.S.C. § 1117 .............................................................. 23, 24, 46, 50

15 U.S.C. § 1125 ................................................................................ passim

1

## TABLE OF AUTHORITIES
### (continued)

2

**Rules:**                                                                 **Pages:**

3    Fed. R. Civ. P. 26 ................................................... 35

4    Fed. R. Civ. P. 37 .............................................. 35, 36

5    Fed. R. Evid. 801 ................................................... 37

6    **Other:**

7    *McCarthy on Trademarks & Unfair Competition* § 25:10 ..................... 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT BRIEF RE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

# I.   PLAINTIFF REFLEX'S MOTION FOR SUMMARY JUDGMENT.

## A.   Introductions

### 1.   Plaintiff's Introduction

This case stems from the creation and dissemination of several phishing emails that were targeted at members of Plaintiff Reflex Media Inc.'s ("Plaintiff" or "Reflex") dating website, www.SeekingArrangement.com. The phishing emails state that there is a problem with the recipient's SeekingArrangement.com membership account that requires them to "verify" their account by clicking on an embedded hyperlink that will supposedly take then to an "affiliate site." The emails falsely purport to be from SeekingArrangement.com's founder and Chief Executive Officer, Brandon Wade, and uses Reflex's federally-registered SEEKING ARRANGEMENT trademark.

As explained below, if the recipient attempts to "verify" their account by clicking on the hyperlink and providing the requested personal information, they are actually registered for a "free" trial membership on one of Defendants' competing, dating websites.

The phishing emails are false in every sense: they are not from Reflex, SeekingArrangement.com, or Brandon Wade; there is nothing wrong with the recipient's SeekingArrangement.com account; and the embedded hyperlink does not take the recipient to an "affiliate site" of SeekingArrangement.com. Instead, the entire scheme is merely a ruse to dupe unwitting recipients into subscribing to the services of a competitor. This is precisely the type of harm that trademark and unfair competition law are designed to prevent and remedy.

The facts are undisputed—and in fact cannot be disputed because defendants refused to participate in discovery, including refusing to appear for depositions—and the law provides Reflex relief for Defendants' unlawful conduct. On these bases, Reflex respectfully requests that the Court enter summary judgment in its favor on its claims arising under the Lanham Act for trademark infringement and

-1-

false designation of origin and its claim that Defendants have violated California's Cal. Bus. & Prof. Code § 17200, which prohibits unfair competition.

## 2.   Defendants' Response to Plaintiff's Introduction

It is hornbook law that the function of a summary judgment motion is to pierce the allegations in the pleadings and test the sufficiency of the *evidence* that is proffered to support them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses"). The irony here is that Plaintiff Reflex's own summary judgment motion reveals that Reflex has *no evidence* to support a number of essential elements of the claims alleged in the Complaint. Nor does Reflex have any evidence to support the *new* claims and theories that Reflex now raises for the first time in its motion, but failed to allege in its Complaint. The Court must not only deny Plaintiff Reflex's motion, but also grant Defendants' motion, for the following reasons:

1.     Plaintiff alleges a mass phishing scheme directed at members of its "sugar daddy" dating website, but there is *no evidence* that Defendants FDS and Sanchez had anything to do with this alleged scheme. Indeed, the undisputed evidence is to the contrary. (D72, D73, D68, D84, D77; D71, D74, D75, D69, D70, D85, D86; Sanchez Decl. ¶¶ 4-8, 12.)

2.     Faced with this reality, Plaintiff now tries to proceed on theories of vicarious and contributory infringement. That these distinct claims were not pleaded in Plaintiff's Complaint is reason alone to deny Plaintiff summary judgment; but more important, there is *no evidence* to support them. Plaintiff has proffered no evidence that Defendants FDS and Sanchez had the right and ability to supervise the infringing conduct, sufficient to support a theory of vicarious infringement. And Plaintiff has proffered no evidence that Defendants FDS and Sanchez intentionally induced a third party to infringe, or otherwise exerted control over a third party infringer, sufficient to support a theory of contributory

1   infringement.  The principal case Plaintiff cites in support of its contributory

2   infringement theory, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.2d 1229 (10th

3   Cir. 2013), involved different facts where there was evidence to support these

4   essential elements.

5        3.    Plaintiff also fails to establish the essential element of likelihood of

6   confusion.  Given the unsophisticated nature of the alleged phishing emails, it is

7   unsurprising that Plaintiff has failed to identify *a single consumer* who was actually

8   confused, let alone duped into providing his credit card information.  Instead,

9   Plaintiff wrongly asserts that confusion is presumed because this is a case of

10  trademark "counterfeiting."  Not so.  *Trademark counterfeiting* is a distinct claim

11  from traditional trademark infringement.  It was not alleged in the Complaint, and

12  Plaintiff's evidence is insufficient to satisfy the stricter evidentiary standard

13  required to support a claim for trademark counterfeiting.

14       4.    Plaintiff also fails to establish the other essential elements of its

15  ownership of the mark and Defendants' use – elements for which Reflex

16  indisputably has the burden of proof, as a plaintiff.

17       The simple truth is that after having had a year to use the discovery process

18  to procure evidence in support of its allegations, Plaintiff has come up short.

19  Instead, Plaintiff now resorts to making misleading claims that Defendants "refused

20  to participate in discovery."  These claims are false (*see* Supp. Metzidis-Drennan

21  Decl. ¶¶ 10-38); but more important, they are immaterial to the summary judgment

22  motions before the Court.

23       Plaintiff also misleads this Court about the nature of the evidence it has

24  procured.  While Plaintiff's motion attaches examples of "Verification Pages" that

25  refer to Defendant FDS's "Find Your True Soulmate" website and four other FDS

26  websites (Plaintiff's Exs. 7-15), Plaintiff says nothing about the scope of documents

27  it produced in discovery:  hundreds upon hundreds of "Verification Pages" that

28  refer to websites *other* than FDS's websites.  Of the 311 websites referred to in

-3-

Plaintiffs' document production, only 5 are FDS websites. (Sanchez Decl. ¶ 10; Defs.' Ex. 4; Supp. Metzidis-Drennan Decl. ¶¶ 7-9.) Yet this is not at all the impression created by the facts presented in Plaintiff's motion.

For all these reasons, *Defendants'* motion for summary judgment should be granted, and Plaintiff Reflex's motion must be denied.

## B. Argument

### 1. Reflex is Entitled to Summary Judgment on its Trademark Infringement Claim.

A plaintiff must prove three elements to prevail on a trademark infringement cause of action under the Lanham Act, 15 U.S.C. § 1114: "(1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion." *JL Audio Inc. v. Kazi*, No. 516CV00785CASJEM, 2017 WL 4179875, at *4 (C.D. Cal. Sept. 18, 2017); *see also S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014).

#### a. Reflex has Ownership of a Valid Trademark.

The SEEKING ARRANGEMENT trademark was registered with the United States Patent and Trademark Office ("USPTO") on February 5, 2008, and assigned Registration No. 3,377,772. (Ex. 1; Wey Declaration at ¶ 2; *see also* Plaintiff's Undisputed Fact (hereinafter, "P") 1.) Reflex holds an exclusive, worldwide license to use the SEEKING ARRANGEMENT trademark, which includes the right to sue to enforce its rights in the trademark. (Wey Declaration at ¶ 3; P 2-3). Accordingly, Reflex has ownership over the SEEKING ARRANGEMENT trademark and standing to enforce its rights in the mark. *See Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC*, No. 17-CV-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) ("[M]ost district courts in [the Ninth] [C]ircuit have concluded that an exclusive licensee of a federal trademark can have standing to sue for trademark infringement under Section 32 of the Lanham Act.").

1

2

**b.** **Defendants' Response to Plaintiff's Section I.B.1.a and**

**Objections to Evidence.**

3   Plaintiff Reflex does *not* own the trademark SEEKING ARRANGMENT.

4   That trademark is owned by Clover8 Investments PTE, Ltd.  (Plaintiff's Ex. 1.)

5   Reflex claims that it is the exclusive licensee of that trademark but offers no

6   admissible evidence to that effect.  Reflex's sole evidence is the testimony of its

7   owner that Clover8 "has granted Plaintiff Reflex Media an exclusive, worldwide

8   license to use the SEEKING ARRANGEMENT mark including the right to sue to

9   enforce and defend its rights in the trademark."  (Wey Decl., ¶ 3.)

10   Wey's testimony is inadmissible.  To the extent this supposed exclusive

11   licensing agreement was in writing, his testimony is inadmissible under FRE 1002;

12   the written agreement is not an exhibit to this motion nor disclosed with Reflex's

13   Rule 26 disclosures.  (Supp. Metzidis-Drennan Decl. ¶¶ 5-6.)

14   To the extent this supposed agreement was made orally, Wey's testimony

15   lacks foundation, is conclusory, and constitutes inadmissible hearsay.  Wey did not

16   provide any foundation that he negotiated the contract or was present when it was

17   formed, nor has he testified to the terms (other than in conclusory fashion).  *See,*

18   *e.g.*, *Geo M. Martin Co. v. Alliance Machine Sys. Int'l, LLC*, 2008 WL 1946925, at

19   *3 (N.D. Cal. 2008) (holding that testimony of oral exclusive license is

20   inadmissible without evidence that witness was present at the contract's creation);

21   *LimeCoral, Ltd. v. Careerbuilder, LLC*, 2017 WL 961879, at *4 (N.D. Ill. 2017)

22   (party cannot create dispute of material fact as to existence of oral contract with

23   "vague assertions . . . without any specificity as to when or where or the precise

24   terms of the alleged agreements").

25

26

**c.** **Defendants used the SEEKING ARRANGEMENT**

**Trademark Without Consent.**

27   As described above, this case arises from the creation and dissemination of at

28   least five phishing emails that were targeted at customers of Reflex's website,

-5-

www.SeekingArrangement.com. (Ex. 2-6; P4-5). The phishing emails purport to be from SeekingArrangement.com's founder and Chief Executive Officer, Brandon Wade, and repeatedly use the SEEKING ARRANGEMENT trademark (the "Phishing Emails"). (Ex. 2–6; P6-P9.) For example, the Phishing Email depicted below in Figure 1 appears as if originates from "Brandon Wade." This is reinforced through the subject line, which reads: "Personal Message from CEO, Seeking Arrangement Brandon Wade."

*Figure 1. FDS Solutions Phishing Email*



The Phishing Emails demand the recipient to respond and create a sense of urgency by representing that the recipient needs to "verify" their

JOINT BRIEF RE: PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SeekingArrangement.com account by clicking on a hyperlink contained in the Phishing Emails. (Ex. 2-5; P10). As the image above shows, this email begins: "**THIS IS A MUST FOR YOUR SUBSCRIPTION TO AVOID UNWANTED CHARGES AND REPEAT BILLING**." The other Phishing Emails are similarly scripted to create a sense of urgency and demand a call to action. For example, a Phishing Email includes statements like: "We still haven't found any update in your account," and "Are you working on it?" (Ex. 4; see Ex. 2-3; 5-6 P11-13). In each case, the Phishing Emails provide a hyperlink where the recipient can supposedly "verify" their SeekingArrangement.com account or claim a free SA (short for Seeking Arrangement) ID card. (Ex. 2-6; P14-15). Clicking on the "VERIFY HERE" or "VERIFY YOUR ACCOUNT" hyperlinks will direct the recipient to a website bearing the title, "VERIFICATION PROCESS" where they are asked for personal identifying and credit card information. (Ex. 2, 5; Schaeffer Decl. at ¶¶ 16-17; P16-17). An example of this "verification" page is depicted below in Figure 2.

*Figure 2. Redirect "Verification" Page*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   In very fine print—and in a hard-to-read gray font printed on a gray

19   background—this webpage reveals that the recipient's personal information will not

20   be used to "verify" their SeekingArrangement.com account, but rather, will be used

21   to register them for a dating website owned by Defendants. (Ex. 9 (copy of figure

22   2); Ex. 17 (Response to Interrogatory No. 9), 18 (identifies FDS Solutions Limited

23   at bottom of website); P16-20). In this example, the recipient will be registered for

24   a "free trial" of Find Your True Soulmate—a website owned and operated by

25   Defendants and available at www.findyourtruesoulmate.com. (Ex. 9; Ex. 17; *see*

26   Ex. 18 (Response to Interrogatory No. 9); P16-20). In other instances, the recipient

27   can be registered for one of Defendants' other websites, including:

28

1  •    www.kinkymatchdating.com    •    www.traditionaldatingsite.com,

2  •    www.infinitelovematches.com   •    www.findtherightoneforyou.com.

3  (Ex. 7-8, 10-15, 17 (Response to Interrogatory 9), 19-22; P21-29). Together with

4  www.findyourtruesoulmate.com, these websites are referred to herein as the

5  "Websites" or "Defendants' Websites."

6      Simply stated, the Phishing Emails are false in every sense: they are not from

7  or in any way affiliated with SEEKING ARRANGEMENT or Reflex, and the

8  recipient's SeekingArrangement.com account does not need to be verified. Reflex

9  did not give Defendants, or anyone else, permission to use its SEEKING

10  ARRANGEMENT mark for this or any other purpose, especially where—as here—

11  the (mis)use of the mark serves to cause SeekingArrangement.com's members to

12  register and subscribe to the services of a competitor, i.e., Defendants. (Wey Decl.

13  at ¶ 9; P30).

14  **d.    Defendants' Response to Plaintiff's Section I.B.1.c and**

15  **Objections to Evidence.**

16      As set forth in Sections II.C.1.a and II.C.2.a of Defendants' motion for

17  summary judgment, Plaintiffs have not only failed to prove that Defendants ever

18  used the SEEKING ARRANGEMENT trademark, but, to the contrary, the evidence

19  is undisputed that Defendants did not.  (D72, D73, D68, D84, D77; D71, D74,

20  D75, D69, D70, D85, D86; Sanchez Decl., ¶¶ 4-8, 12.)

21      In addition, Defendants object to Plaintiff's Exhibits 2 through 6, the five e-

22  mails on which Plaintiff basis its claims, as unauthenticated.  Plaintiff offers no

23  testimony from any person who claims to have received the e-mails (let alone

24  anybody who sent the e-mails).  There is no evidence that the e-mails are what

25  Plaintiff purports them to be.  FRE 901.

26

27

28

e.    **Use of the Counterfeit SEEKING ARRANGEMENT Trademark is Likely to Cause Confusion.**

In the Ninth Circuit, counterfeit trademarks are deemed to be inherently confusing. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004). A counterfeit mark under the Lanham Act is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."15 U.S.C. § 1127; *Playvision Labs, Inc. v. Nintendo of Am., Inc.*, No. C14-05365 CRB, 2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015).

Here, the Phishing Emails use spurious marks that are identical to, or substantially indistinguishable[1] from Reflex's SEEKING ARRANGEMENT trademark. Indeed, each Phishing Email purports to be from "CEO **Seeking Arrangement** Brandon Wade," "Brandon Wade Founder & CEO, **SeekingArrangement.com**" or "Brandon Wade CEO, **SeekingArrangement**." (Ex. 2-6; P4-P9 (emphasis added)). Accordingly, Defendants' counterfeit use of Reflex's SEEKING ARRANGEMENT trademark is likely to cause confusion.

Based on the foregoing, Reflex is entitled to summary judgment on its trademark infringement claim because: (1) it is the owner of a valid copyright, (2) it did not authorize Defendants to use its SEEKING ARRANGEMENT mark for any purpose, and (3) Defendants' use of counterfeit SEEKING ARRANGEMENT marks in the Phishing Emails is likely to cause confusion, especially where the counterfeit emails purport to be from SeekingArrangement.com's founder and Chief Executive Officer, identify Defendants' Websites as "affiliates" of Reflex's SeekingArrangement.com website, and where Defendants offer competing services (*i.e.* dating/matchmaking) through their websites.

---

[1]    In the context of federal trademark law, the "dot-com" suffix is generally disregarded. *See Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974 (9th Cir. 2010).

### f.     Defendants' Response to Plaintiff's Section I.B.1.e.

Reflex argues that it need not prove likelihood of confusion through the usual analysis because, it claims, this is a case of trademark counterfeiting and confusion is presumed.  But Reflex's Complaint does not allege a claim of trademark counterfeiting or allege that the mark supposedly used by Defendants was a "counterfeit."

Trademark counterfeiting is a separate cause of action from trademark infringement.  *See, e.g.*, *Coach, Inc. v. Sac a Main*, 2012 WL 5464347, at *2-*4 (E.D. Cal. 2012) (separately analyzing trademark infringement and trademark counterfeiting claim).  Reflex cannot raise this claim for the first time on a motion for summary judgment.  *See Gutowitz v. Transamerica Life Ins. Co.*, 126 F. Supp. 3d 1128, 1152 n.78 (C.D. Cal. 2015) (refusing to allow Plaintiff to raise new theory of bad faith to support breach of implied covenant claim, noting "plaintiffs cannot raise the theory for the first time in their [summary judgment] opposition"); *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1058 n.3 (C.D. Cal. 2007) (holding that Plaintiff could not support Fair Debt Collection Practices Act claim with evidence of false representations not alleged in the complaint as such claims are "not appropriately raised for the first time in opposition to a motion for summary judgment"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-94 (9th Cir. 2000) (affirming trial court decision refusing to allow Plaintiff to proceed on disparate impact theory for ADA claim on summary judgment motion having not alleged that theory in its complaint).

In any event, Reflex has not proven, and cannot prove, that the use of the phrase "SEEKING ARRANGEMENT" in the five phishing e-mails on which it bases its claim is a "counterfeit" use.  The Lanham Act defines a counterfeit mark as one which "is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  This "requires a closer degree of similarity than is

1    required for traditional trademark infringement or unfair competition."

2    T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:10 at 25-33.

3        Courts have held that even if the wording of the marks were identical, the

4    marks are *not* "substantially indistinguishable" if the font, color, and capitalization

5    differs. *See Kelly-Brown v. Winfrey*, 717 F. 3d 295, 314-15 (2d Cir. 2013)

6    (dismissing Lanham Act counterfeiting claim because font and color of marks are

7    different though words as the same); *Playvision Labs, Inc. v. Nintendo of Am., Inc.*,

8    2015 WL 12941892, at *1 (N.D. Cal. 2015) (dismissing trademark counterfeiting

9    claim because, among other things, marks that use different colors and lettering are

10   not virtually identical or substantially indistinguishable).

11       Plaintiff does not submit any evidence of how it uses the SEEKING

12   ARRANGEMENT mark in commerce, and so there is no way the Court could

13   analyze whether the use in the alleged phishing e-mails is a *counterfeit* use.

14   Defendants, however, provide a printout of Plaintiff's website, and it's easy to see

15   why Plaintiff didn't want the Court to see how it uses the mark in commerce.

16   Plaintiff uses a very particular font and red and white coloring.  (Defs.' Ex. 13 to

17   Supp. Metzidis-Drennan Decl.)  That is completely different than the way in which

18   the mark is used on the five alleged phishing e-mails proffered by Plaintiff:  in

19   those e-mails, the mark is used in connection with other words (.com and CEO), in

20   a different font, and without the red and white color.  (Plaintiff's Exs. 2-6.)

21       Therefore, confusion is not presumed in this case and Plaintiff must show

22   likelihood of confusion through the usual analysis of the *Sleekcraft* factors.  *AMC,*

23   *Inc. v. Sleekcraft Boats*, 599 F. 2d 341 (9th Cir. 1979).  Plaintiff doesn't analyze

24   these factors at all, and offers no evidence on a number of them, including actual

25   confusion, strength of mark, marketing channels, type of goods and degree of care,

26   etc.  Therefore, Plaintiff has failed to present any evidence of likelihood of

27   confusion and for that reason alone, its motion must fail.

28

g.    **Defendants Can Also Be Held Liable Under Claims of Contributory and Vicarious Trademark Infringement.**

*(i)    Contributory Trademark Infringement.*

Even if Defendants seek to avoid liability by denying that they individually typed and sent the Phishing Emails, trademark infringement is a strict liability offense and Defendants can be held contributorily liable. *Phillip Morris USA*, 352 F.Supp.2d at 1073–74 (collecting cases explaining that strict liability is imposed for violations of the Lanham Act and Cal. Bus. & Prof. Code § 17200).

Under Ninth Circuit law, a person who, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer," and knowledge of infringement will be found where a defendant is willfully blind. *See Perfect 10, Inc. v. Amazon.com, Inc.* (hereinafter, *"Amazon"*), 508 F.3d 1146, 1171 (9th Cir. 2007)(citing *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971); *see Perfect 10, Inc. v. Cybernet Ventures, Inc.* (hereinafter, *"Cybernet"*), 213 F. Supp. 2d 1146, 1189 (C.D. Cal. 2002) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996); *see Perfect 10, Inc. v. Visa Int'l Serv. Ass'n* (hereinafter, *"Visa"*), 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)); *see 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013).

Moreover, courts do not require a showing that a principal has monitored the instrumentality of infringement where they are put on notice that an agent or subagent is infringing on a trademark, even where the principal is not reasonably sure which agent or subagent is infringing on a trademark. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252 (10th Cir. 2013). Once the principal becomes aware that one of its agents is infringing upon a trademark, it is incumbent upon them to investigate and stop such infringement. *Id*. (holding that a reasonable jury could find contributory infringement where principal was served with a

-13-

1   complaint and screenshot of an infringing ad and did not take corrective action to

2   stop the infringement, including sending an "email blast to its affiliates" informing

3   them to stop).

4       Here, Defendants were served with the Complaint on February 1, 2017,

5   including a copy of one of the Phishing Emails. (*See* Ex. 23-28; P 31-35). Copies of

6   the four other phishing emails were provided to Defendants on September 5, 2017.

7   (*See* Ex. 2-6 (copies of Phishing Emails) and 29 (Reflex Media's First Supplemental

8   Rule 26 Disclosures on September 5, 2017); P36). More than a month later, in

9   October 2017, at least one of the Phishing Emails still contained active hyperlinks

10  that would lead the recipient to register for Defendants' Websites.  (*See* Ex. 5 (copy

11  of Phishing Email), 9-15 (copies of "verification" webpages); Schaeffer Decl. at ¶ ¶

12  10-16; P39-45). In fact, there is no evidence Defendants have taken any corrective

13  action in this case by, for example, sending notice to their affiliates and/or

14  attempting to terminate the websites tied to the Phishing Emails. (*See* Ex. 30; P46).

15  Moreover, Defendants refused to participate in the discovery process by sitting for

16  depositions. (Ex. 31; P47). Accordingly, even where Defendants may disclaim

17  responsibility for personally creating the Phishing Emails and deny knowing the

18  actions of their agents[2], by failing to take any corrective measures, Defendants are

19  contributorily liable for infringing Reflex's SEEKING ARRANGEMENT

20  trademark because Defendants cannot claim they were unaware of the conduct.

21              ***(ii)    Vicarious Liability for Trademark Infringement.***

22      To prevail on a claim of "[v]icarious liability for trademark infringement

23  requires a finding that the defendant and the infringer have an apparent or actual

24  partnership, have authority to bind one another in transactions with third parties or

25  exercise joint ownership or control over the infringing product. *Visa*, 494 F.3d at

26  807 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d

27  1143, 1150 (7th Cir.1992)) (internal quotations omitted). "It is well established that

28  [2]      *See* discussion in Section I.B.1.g(*ii*), *infra*.

-14-

traditional vicarious liability rules ordinarily make principals or employers

vicariously liable for acts of their agents" *Operation Tech., Inc. v. Cyme Int'l T & D Inc.*, No. SACV1400999JVSDFMX, 2016 WL 6246806, at *4 (C.D. Cal. Mar. 31, 2016) (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013)).

Here, the infringing product is a combination of the Phishing Emails and Defendants' Websites. When asked about the "origin" of the Phishing Emails, Defendants responded, in part: "To the extent "DEFENDANTS" is defined to mean former employees, agents, and attorneys for FDS and Sanchez, [Defendants] have no knowledge of what information, if any, those persons possess regarding the origin of the PHISHING EMAIL." (Ex. 28 (Response to Interrogatory No. 10); P48). Claiming ignorance of your employees and agents' actions, however, is no defense. As cited above, trademark infringement is a strict liability offense and the Phishing Emails were clearly created to benefit Defendants' Websites by targeting known consumers of dating website services (*i.e.*, SeekingArrangement.com's customers) for the purpose of unknowingly registering them to become members of Defendants' Websites. *Phillip Morris USA*, 352 F.Supp.2d at 1073–74. Accordingly, Defendants cannot escape liability by throwing their hands in the air and saying they are unsure which of their agents or employees may have typed the Phishing Emails and pressed "send" on their keyboard. As the employer, Defendants are vicariously liable for the actions of their agents and employees. *See Visa*, 494 F.3d at 807.

### h.      **Defendants' Response to Plaintiff's Section I.B.1.g and Objections to Evidence**.

Reflex argues that the facts support claims for vicarious and contributory trademark infringement.  But that argument fails for multiple reasons.

First, Reflex's Complaint fails to allege claims for vicarious or contributory infringement, nor does the Complaint allege any of the facts underlying these

-15-

claims.  As noted, Reflex cannot raise claims for the first time on a motion for
summary judgment.  *See Gutowitz*, 126 F. Supp. 3d at 1152 n.78.

Here, the Complaint alleges only a claim of direct trademark infringement
and not a claim for vicarious or contributory trademark infringement.  *See, e.g.*,
*SpyOptic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 764-66 (C.D. Cal. 2015)
(treating contributory infringement claim as separate claim from direct
infringement).  Moreover, the Complaint alleges none of the facts that Reflex now
claims constitute vicarious or contributory trademark infringement.

Second, even if those claims were properly alleged, there are not any facts –
let alone undisputed facts – to support those theories.

To establish a claim for vicarious copyright infringement, Reflex must prove
that Defendants have (1) the right and ability to supervise the infringing conduct
and (2) a direct financial interest in the infringing activity.  *Perfect 10, Inc. v. Visa
Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  Reflex has no facts
whatsoever to establish either prong.

There is *no* evidence that either FDS or Sanchez had the right and ability to
supervise the infringing conduct.  FDS and Sanchez indisputably have no idea who
engaged in the infringing conduct, and it's fairly clear that Reflex doesn't know
either!  (D72, D73, D68, D84, D77; D71, D74, D75, D69, D70, D85, D86; Sanchez
Decl. ¶¶ 4-8, 12.)  So, clearly, FDS and Sanchez can't have the right and ability to
supervise the conduct of somebody they do not know.

Nor is there any evidence that FDS or Sanchez has any direct financial
interest in the infringing activity.  Reflex submits a few screenshots of "Verification
Pages" that include FDS's name and state that, on filling out the form, a consumer
will subscribe to FDS's website and that his or her credit card will be processed by
FDS.  *But there is no evidence that any of the statements on these Verification
Pages is true!*  Reflex has produced *not a shred of evidence* that filling in credit
card information would result in subscribing to an FDS website or any monies ever

-16-

1    ending up at FDS.  And, indeed, Defendants did not authorize anybody to put

2    FDS's name or website on these Verification Pages and has no knowledge that any

3    consumer has subscribed to its websites from these pages.  (Sanchez Decl., ¶¶ 7-8.)

4    Therefore, on the undisputed facts, Defendants are not liable for vicarious

5    trademark infringement.

6        Nor can Plaintiff prove contributory trademark infringement.  To prove such

7    a claim, Reflex must prove that Defendants (1) "intentionally induced" the primary

8    infringer to infringe, or (2) continued to supply an infringing product to an infringer

9    with knowledge that the infringer is mislabeling the particular product supplied.

10   *Perfect 10, Inc.*, 494 F.3d at 807.  "When the alleged direct infringer supplies a

11   service rather than a product, under the second prong of this test, the court must

12   'consider the extent of control exercised by the defendant over the third party's

13   means of infringement.'"  *Id.* (quoting *Lockheed Martin Corp. v. Network Solutions,*

14   *Inc.*, 194 F.3d 980, 984 (9th Cir.1999)).  To establish liability under this second

15   prong, there must be "[d]irect control and monitoring of the instrumentality used by

16   a third party to infringe the plaintiff's mark."  *Id.*

17       Reflex obviously cannot prove liability under the first prong of the *Perfect 10*

18   test because it has no evidence whatsoever that either of the Defendants

19   intentionally induced anybody to send the phishing e-mails at issue.  So it focuses

20   on the second prong and relies upon a Tenth Circuit case that, in reality, makes

21   clear why Reflex's motion should be denied and Defendants' motion granted.

22       Reflex relies on *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.2d 1229 (10th

23   Cir. 2013), a trademark infringement dispute between competitors involving use of

24   Google "AdWords."  The evidence in this case showed that Defendant Lens.com

25   entered into contracts through which affiliates (in this case, more than 10,000

26   affiliates) were signed up to promote Lens.com.  *Id*. at 1236.  Discovery in the case

27   further identified two specific affiliates of Lens.com who had bid on the keyword

28   "1800Contacts" (Plaintiff's trademark), used that keyword to advertise Lens.com,

-17-

and purchased ads for Lens.com containing Plaintiff's mark. *Id*. at 1237. Discovery also revealed that Lens.com had effectively communicated with its affiliates in the past to stop other infringing conduct. *Id*. at 1252.

Having learned this information in discovery, plaintiff 1-800-Contacts amended its complaint – which previously alleged only direct infringement – to add claims for vicarious and contributory infringement. *Id*. at 1237. The infringement continued for three months after the amended complaint was filed, until Lens.com contacted its affiliates and asked them to stop. *Id*. at 1252.

The Tenth Circuit reversed the district court's summary judgment on contributory infringement, finding that "a rational juror could find that Lens.com knew that at least one of its affiliates was using 1-800's service mark in its ads yet did not make reasonable efforts to halt the affiliate's practice." *Id*. at 1252.

That *1-800-Contacts* is distinguishable from this case cannot reasonably be disputed for at least the following reasons:

- In *1-800-Contacts*, discovery showed exactly who the direct infringer was and that the infringer had a contractual relationship with the Defendant. *Reflex has no idea who the infringer is here and there is no evidence of any relationship between the infringer and FDS (let alone Sanchez)*.

- There was evidence in *1-800-Contacts* that Lens.com had the ability to contact its affiliates and cause them to stop any infringing conduct. Plaintiff offers no evidence that FDS has affiliates or that, if it did, it has any ability to contact or control them.

- While the infringing activity in *1-800 Contacts* continued for months after the complaint (and amended complaint) were filed, there is no evidence that any phishing e-mails were sent after the five e-mails that Reflex has identified here, all of which are dated in June or July 2016. Therefore, Reflex cannot argue, as 1-800-Contacts argued in its case, that Defendants "failed to stop" the infringing activity. Based on the evidence Reflex has

-18-

1  presented, the infringing activity stopped long before Reflex filed its
2  Complaint.

3  • *1-800-Contacts* (which, like Reflex here, had filed a complaint alleging
4  only *direct* trademark infringement), upon learning in discovery the
5  identity of the infringers and their relationship to Lens.com, *amended its*
6  *complaint to allege expressly vicarious and contributory infringement,*
7  *and further allege the facts that supported those theories*.   Reflex here
8  has never amended its complaint to allege these new claims or the theories
9  underlying them.

10  There is no evidence, then, sufficient to show that either of the Defendants is
11  liable for contributory trademark infringement.

12  **2.   Reflex is Entitled to Summary Judgment on its False**
13  **Designation of Origin Claim.**

14  "To prevail on a claim for false designation of origin under 15 U.S.C. §
15  1125(a), a plaintiff must allege the defendant's use of its mark is likely to cause
16  confusion, deception or mistake as to 'the affiliation, connection, or association of
17  such person with another person, or as to the origin, sponsorship, or approval of his
18  or her goods, services, or commercial activities by another person.'" *Gryphon*
19  *Mobile Elecs., LLC v. Brookstone, Inc.*, No. SACV152056DOCJCGX, 2016 WL
20  7637987, at *4 (C.D. Cal. July 12, 2016) (quoting 15 U.S.C. § 1125(a)(1)(A)).
21  Liability is established under § 1125(a)(1) where a plaintiff shows "(1) it owns a
22  valid and protectable interest/trademark . . . . [and] (2) [that the] Defendants
23  subsequently and without authorization used a similar mark likely to cause
24  consumer confusion, deception or mistake." *Phillip Morris USA Inc.*, 352
25  F.Supp.2d at 1072 (citations omitted).

26  As described above in Section I.B.1.a, *supra*, Reflex owns a valid and
27  protectable interest in the SEEKING ARRANGEMENT trademark and Defendants
28  subsequently and without authorization used a counterfeit SEEKING

-19-

1   ARRANGEMENT trademark in the Phishing Emails. The use of counterfeit

2   trademarks—as in this case—is per se confusing. *Phillip Morris USA Inc.*, 352

3   F.Supp.2d at 1073 (stating that "counterfeit marks are inherently confusing")

4   (citations omitted). This is especially true where the counterfeit mark is used in

5   phishing emails that purport to be from SeekingArrangement.com's founder and

6   Chief Executive Officer and hold Defendants' Websites out as "affiliate sites" to

7   Reflex's SeekingArrangement.com. Accordingly, Reflex is entitled to summary

8   judgment on its false designation of origin claim under 15 U.S.C. § 1125(a).

9            **3.      Defendants' Response to Plaintiff's Section I.B.2.**

10          As set forth in Sections II.C.1.c and II.C.2.c of Defendants' motion, for the

11  same reasons Plaintiff cannot prove trademark infringement, it cannot prove false

12  designation of origin.

13          **4.      Reflex is Entitled to Summary Judgment on its Unfair**

14                  **Competition Claim under Cal. Bus. & Prof. Code § 17200 et**

15                  **seq.**

16          To prevail on a claim of unfair competition under California law, a plaintiff

17  must show that the defendant has engaged in any "unlawful, unfair or fraudulent

18  business act or practice [or] unfair, deceptive, untrue or misleading advertising."

19  Cal. Bus. & Prof. Code § 17200. It is well-settled that a defendant will be liable

20  under § 17200 if a plaintiff demonstrates that the defendant is also liable for federal

21  trademark infringement (15 U.S.C. § 1114) or unfair competition (15 U.S.C. §

22  1125) under the Lanham Act. *See Phillip Morris USA Inc.*, 352 F.Supp.2d at 1072–

23  73 (noting that once liability is established under 15 U.S.C. §§ 1114 or 1125(a), the

24  plaintiff will also be entitled to summary judgment on § 17200 claims) (citing

25  *Century 21 Real Estate Corp. v. Magee*, 1991 WL 318797, 1991 U.S. Dist. LEXIS

26  14611, at *7–8 (C.D. Cal. 1991).

27          As explained above in Sections I.B.1 and I.B.2, *supra*, Defendants' conduct

28  is unlawful under the §§ 1114 and 1125 of the Lanham Act. Accordingly, Reflex is

also entitled to summary judgment on its unfair competition claim under Cal. Bus.
& Prof. Code § 17200.

### 5.    Defendants' Response to Plaintiff's Section I.B.4.

As set forth in Sections II.C.1.e and II.C.2.e of Defendants' motion, Plaintiff
lacks standing to bring a claim under Section 17200 and has failed to prove, and
cannot prove, a violation of that statute.

### 6.    Defendant Sanchez is Personally Liable for the Conduct of
### FDS Solutions.

"A corporate officer or director is, in general, personally liable for all torts
which he authorizes or directs or in which he participates, notwithstanding that he
acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v.
Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (internal
quotations omitted); *see also Int'l Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th
Cir. 1964) (finding sole owner and officer personally liable for infringement where
he "was in personal control of [the company] and acted as its guiding spirit and the
active directing hand in full charge of its operations"). "This principle applies
regardless of the piercing of the corporate veil," *Chase Inv. Servs. Corp. v. Law
Offices of Jon Divens & Assocs.*, LLC, 748 F. Supp. 2d 1145, 1182 (C.D. Cal.
2010), aff'd, 491 F. App'x 793 (9th Cir. 2012), and applies "in trademark
infringement and unfair trade practices cases." *Mfg. Automation & Software Sys.,
Inc. v. Hughes*, No. 216CV08962CASKSX, 2017 WL 1960633, at *10 (C.D. Cal.
May 8, 2017) (quoting *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1182
(C.D. Cal. 2011)).

Here, Defendant Sanchez was the sole owner, officer and director of FDS
from June 1, 2016, until present. (Ex. 28, 32-34; P 49-52). And like the sole owner
and president in *Int'l Mfg. Co.*, Defendant Sanchez "was in personal control of [the
company] and acted as its guiding spirit and the active directing hand in full charge
of its operations" because no one else could have been. 336 F.2d at 728.

Accordingly, Defendant Sanchez is personally liable the trademark infringement
and unfair competition described in the previous sections of this memorandum.

### 7.     Defendants' Response to Plaintiff's Section I.B.6.

As set forth in Sections II.C.1.a and II.C.2.a of Defendant's motion, there is
no evidence, and indeed, the evidence is uniform to the contrary, that Sanchez
authorized or directed or participated the sending of the e-mails on which Plaintiff
bases its claim.  Both the cases cited in Defendants' motion, and the cases cited by
Plaintiff here, stand for that same proposition.  *See Transgo, Inc. v. Ajac
Transmission Parts Corp.*, 768 F.2d. 1001, 1021 (9th Cir. 1985) (officer or director
personally liable for torts which "he authorized or directs or in which he
participates").

Plaintiff also cites *International Manufacturing Co. v. Landon, Inc.*, 336 F.2d
723, 728 (9th Cir. 1964), suggesting that it holds that a sole owner and officer is
personally liable for infringement merely because he was in personal control of the
company.  In fact, in *International Manufacturing*, the Court expressly found that
the individual defendant "directed the manufacture and sale" of the infringing
product, was the "moving, active conscious force" behind the infringement, and *for
that reason* was individually liable.  *Id*.  Given that it is undisputed that Sanchez
knew nothing about the alleged phishing e-mails, this case is not apposite and,
indeed, summary judgment should be granted in favor of Sanchez.

### 8.     Plaintiff's Requested Relief.

Under federal law, a plaintiff is entitled to an award of statutory damages
where a defendant engages in trademark infringement using a counterfeit mark. The
Lanham Act explains:

> In a case involving the use of a counterfeit mark . . . the plaintiff may elect, at
> any time before final judgment is rendered by the trial court, to recover,
> instead of actual damages and profits under subsection (a), an award of

statutory damages for any such use in connection with sale, offering for sale, or distribution of goods or services in the amount of—

(1)     not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2)     if the courts finds the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of good or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Here, Reflex respectfully requests that the Court enter judgment in its favor and grant Reflex statutory damages in the amount of $2,000,000. As described above, there is no question that the trademark infringement in this case was willful. This is not a case where a market participant unknowingly infringed on another's trademark. Instead, the Phishing Emails were intentionally designed to infringe Reflex's SEEKING ARRANGEMENT trademark for the purpose of deceiving the recipients thereof and causing them to believe that they had received an urgent call to action from SeekingArrangement.com's founder and Chief Executive Officer, Brandon Wade. It is hard to image a more obvious example of willful trademark infringement. Accordingly, Reflex respectfully requests judgment in its favor for $2,000,000 in statutory damages as allowed by 15 U.S.C. § 1117(c)(2) plus an award of attorney's fees as allowed by 15 U.S.C. § 1117(a) (stating that the "Court in exceptional cases may award reasonable attorney fees to the prevailing party"); *see also Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (explaining that an "exceptional case" is one where the infringing party "acted maliciously, fraudulently, deliberately or willfully).

### 9.     <u>Defendants' Response to Plaintiff's Section I.B.8.</u>

Plaintiff's motion seeks both statutory damages for counterfeit infringement and attorney's fees. It is entitled to neither.

-23-

1    The request for statutory damages fails because, as noted in Section I.B.1.f

2    above, Plaintiff failed to allege a claim for counterfeit infringement and further has

3    failed to show any "counterfeit" use.   In addition, the Complaint does not seek

4    statutory damages as a remedy.  (Compl. at 12-13 [Defs. Ex. 1].)  It would be

5    prejudicial to allow Plaintiff to seek a remedy about which Defendants would have

6    had no way of knowing was being sought until the summary judgment motion was

7    exchanged.  *See Acmet, Inc. v. Wet Seal, Inc.*, 2015 WL 11670161, at *3-*6 (C.D.

8    Cal. 2015) (refusing to allow plaintiff to seek enhanced statutory damages for

9    copyright infringement because they were not included in prayer nor in allegations

10   of complaint and defendants would be prejudiced if required to defend against a

11   theory about which they had no notice).

12   Plaintiff asks for statutory damages of $2,000,000, the maximum amount

13   allowed, relying on a statute that allows damages in that amount for "willful"

14   infringement.  Plaintiff, though, has presented zero evidence that either of the

15   Defendants knew anything about the alleged phishing e-mails.  There is no basis for

16   damages in this amount.

17   Furthermore, "a reasonable statutory damage award must bear a plausible

18   relationship to the Defendant's profits from infringement." *Wine Grp., LLC v. USA*

19   *California Fengshiya Wine Grp., Ltd.*, 2011 WL 3189361, at *3 (C.D. Cal. 2011).

20   Plaintiff has produced no evidence that any person ever subscribed to any of

21   Defendants' websites as a result of this supposed phishing scheme, and there is no

22   reason to believe anybody ever did.  Thus, even if Plaintiff could establish that

23   Defendants engaged in counterfeit infringement through the five e-mails it has been

24   able to produce, it would properly receive the lowest level of statutory damages –

25   that is, $1,000.  15 U.S.C § 1117(c).

26   The same is true for Plaintiff's request for attorney's fees, which are to be

27   awarded only in "exceptional" cases.  The only thing that is exceptional in this case

28   is that Plaintiff is seeking summary judgment without offering a shred of evidence

1  that either of the Defendants have engaged in the acts upon which the claim is

2  based.

3      Plaintiff's requests for statutory damages and attorney's fees should be

4  rejected out of hand.

5      **C.**   **Conclusion**

6      Plaintiff Reflex Media, Inc., respectfully requests that the Court grant

7  summary judgment in its favor on the claims, and for the reasons, set forth above.

8

9  **II.**   **DEFENDANTS FDS SOLUTIONS' AND SANCHEZ'S MOTION FOR**

10     **SUMMARY JUDGMENT.**

11     **A.**   **Introductions**

12         **1.**   **Defendants' Introduction**

13     Defendants FDS Solutions Ltd. ("FDS") and Maria del mar Martinez

14  Sanchez ("Sanchez") move for summary judgment because they have been wrongly

15  accused of carrying out a massive "phishing" scheme against Plaintiff Reflex

16  Media, Inc. ("Reflex").  The evidence is undisputed that they played no role in

17  sending the e-mails that form the basis of the alleged scheme, did not know they

18  were being sent, and did not authorize them to be sent.  Bottom line, Defendants

19  were not involved and Reflex has sued the wrong parties.

20     Reflex alleges that customers of its "sugar daddy" website received e-mails

21  purporting to be from Reflex's CEO, which caused those customers to click on a

22  link, enter their credit card information, and thereby subscribe to other websites not

23  affiliated with Reflex.  The only evidence of this scheme that Reflex has produced

24  is a total of *five* such e-mails, all sent to a single person.  Reflex produced no

25  evidence that any other person received the e-mail or that any of its customers

26  actually clicked on the link in the e-mail and fell for the scheme.  *But that is not*

27  *Reflex's biggest problem on this motion.*

28

The evidence is undisputed that FDS and Sanchez had nothing to do with these e-mails. Specifically, the undisputed evidence shows:

- FDS and Sanchez had no knowledge of these e-mails prior to receiving the complaint in this action;
- Neither FDS nor Sanchez own the e-mail addresses from which the e-mails at issue were sent or know who does own those addresses;
- Neither FDS nor Sanchez participated in creating or disseminating the e-mails or knew that they were being created or disseminated;
- Neither FDS nor Sanchez has any idea who sent the e-mails.
- Defendants have no reason to believe that any person joined their website as a result of these e-mails.

The only connection Reflex can make between FDS and these e-mails is so attenuated as to be absurd. Reflex contends that when one clicks on the link in the e-mails, it brings up a "verification page" where the consumer puts in credit card information and which lists the websites to which the consumer is subscribing and the company which is processing the credit card. According to Reflex, each time the link is clicked a different website and different processing company appears. To that effect, Reflex produced 480 different "screenshots" of verification pages created from the e-mails; these screenshots list 311 different websites and 69 different credit card processors. Of the 480 screenshots Reflex produced, a grand total of *five* refer to FDS and one of its websites. FDS and Sanchez do not own or operate any of the other websites or companies listed on the 475 other screenshots of verification pages.

Neither FDS nor Sanchez has any idea why a few of FDS's websites and the FDS name appears on those five screenshots. What is undisputed is that *they had nothing to do with it and didn't authorize it*. Perhaps the answer might have been found by taking discovery from some of the other companies whose names were on

1  the other 475 verification pages; we'll never know because Reflex chose not to take
2  any of those depositions or seek any documents from them.

3       Bottom line, though, the fact that *1%* of the screenshots mention FDS is not
4  sufficient evidence to create a material dispute of fact as to whether FDS played a
5  role in disseminating the e-mails, when faced with the flat out denial by FDS.  And
6  in any event, it certainly fails to create any dispute of fact as to Sanchez.  Therefore,
7  Reflex has failed to create a material dispute of fact as to liability of either of the
8  two Defendants and Defendants' motion for summary judgment should be granted
9  in its entirety.

10      ## 2.    **Plaintiff's Response to Defendants' Introduction**

11      Defendants' *only* evidence is the self-serving declaration by the sole owner
12 and operator of the websites at issue, Maria Sanchez, who refused to appear for a
13 deposition. It is literally her word—unverifiable, not subject to deposition and
14 contradicting their own discovery responses—against voluminous documentary
15 evidence that shows Sanchez and FDS were involved, benefitted and, even after
16 purportedly learning for the first time of their own involvement, continued to be
17 involved month after month after month. Under these circumstances, Defendants
18 should, of course, not be permitted to use this declaration as evidence in this case.
19 However, even if it is admitted, it does not save Defendants from liability as
20 Defendants cannot ignore and avoid liability for the tortious misconduct of the
21 agents they contracted to have work on their behalf.

22      Defendants have misled Plaintiff and evaded discovery from the beginning of
23 this lawsuit and continue to try to do so even in this instant motion[3][4]. For the first

24 ───────────────
[3]    Defendants falsely claim that "the FDS name appears on [] five screenshots."
25 However, their own Ex. 4 pages 3-9, lines 89, 93, 127, 135, and 278 and Plaintiffs'
   Exs. 7-15 show that FDS appeared in 9 screenshots.
   [4]    Defendants also make the claim that "FDS also owns approximately 25 other
26 online member subscription dating websites" in addition to
   findyourtruesoulmate.com. (*See* Section II.B.1.a, *infra*). However, a material
27 dispute of fact exists as CloudFlare Inc.'s business records show that the user ID
   associated with findyourtruesouldmate.com *et. al.,* is also associated with hundreds
28 of other dating websites which Defendants may own or control. *See* Exs. 37-40; *see*

1   time during this litigation, Defendants now identify unnamed and unidentifiable

2   bad actors—the identities of which, if they even exist, should have been disclosed

3   in discovery responses and Rule 26 disclosures—that are somehow uniquely

4   responsible and beyond their control even though these mystery third-parties

5   supposedly ran Defendants' Websites at Defendants' request. To this end,

6   Defendants claim that "FDS contracts with third party service providers, such as

7   hosting companies, etc., to operate, maintain, and market its websites. [Defendant

8   Sanchez] rel[ies] on those third party service providers to perform these functions

9   and [Defendant Sanchez] personally play[s] no role in operating or marketing the

10  websites." (Sanchez Decl. at ¶ 3). This unsupported statement comes, of course,

11  after Defendants refused to appear for their depositions and stated in discovery

12  responses and to the Court that they owned and operated the websites at issue here.

13  Plaintiff's Special Interrogatory No. 9 (and gave a similar answer to Interrogatory

14  No. 12), asked them to "Identify all other websites owned/operated by

15  DEFENDANTS from 2016 to the present" (DEFENDANTS was a defined term

16  which included FDS and Ms. Sanchez's agents[5]), as follows: "During calendar year

17  2016, Defendant FDS owned **or** operated the following websites: [list of 31

18  websites owned by FDS Solutions Limited] [. . .] During the relevant time period,

19  Defendant Sanchez['s] [. . .] role in operating the above websites was only as

20  director/shareholder of FDS." (Emphasis added) (*see* Plaintiff's Ex. 17, 26, 30). To

21  clarify any confusion, at the hearing on Plaintiff's motion to compel Defendants'

22  responses to Special Interrogatories 9 and 12 (among other things), Defendant's

23  counsel twice indicated that Defendants understood that these interrogatories asked

24  if Defendants "owned **and** operated" the Websites. (*See* Ex. 36 at 10:6-21, 11:18-

25  25, 12:1-3.) Even if they did not operate the Websites, Defendants cannot simply

26  Supplemental Schaeffer Decl. at ¶ ¶ 8-10.

[5]    The term DEFENDANTS was defined as "Defendants MARIA DEL MAR

27  MARTINEZ SANCHEZ and FDS SOLUTIONS, unless expressly stated otherwise,

    and their present and former employees, agents, representatives, attorneys and any

28  other PERSONS acting on its behalf." (*See* Ex. 35 at 2:4-7).

1  hang their liability on agents they have a duty to direct and monitor by turning a

2  blind eye to their infringing conduct.

3       As further discussed below, even if Defendants' late revelation is true,

4  Defendants are still liable for trademark infringement under tort and agency

5  principals, including contributory trademark infringement and vicarious liability.

6  Lastly, Defendants also argue in their Introduction that "the fact that *1%* of the

7  screenshots mention FDS is not sufficient evidence to create a material dispute of

8  fact as to whether FDS played a role in disseminating the e-mails, when faced with

9  the flat out denial by FDS." This argument is illogical and unavailing. The fact that

10  any one particular party involved in this scheme participated or benefitted less than

11  any other participants, or that all participants benefitted a little, does not change the

12  fact that each and every one of them is still liable for their unlawful acts. If the

13  Court were to accept Defendants' argument, then every company that benefits from

14  the phishing scheme, including the other 68 companies identified by Defendants,

15  could rely on the same defense and no one would be liable for the trademark

16  infringement that occurred.

17       **B.**   **Statements of Facts**

18            **1.**   **Defendants' Statement of Undisputed Facts**

19                 **a.**   **The Parties**

20       Plaintiff Reflex Media, Inc. ("Reflex" and "Plaintiff") owns and operates an

21  online dating website called "Seeking Arrangement," located at

22  www.seekingarrangement.com.  (D53; Complaint, ¶ 2 [Ex. 1 hereto].)  The

23  "Seeking Arrangement" website caters to a niche market of the online dating world:

24  pairing "sugar daddies" who are interested in pampering "sugar babies" with

25  shopping sprees, expensive dinners, exotic vacations (and presumably other

26  consideration) in exchange for their "companionship."  (Complaint, ¶ 2 & n.1.)

27  Plaintiff claims to have the exclusive license to the trademark SEEKING

28

ARRANGEMENT and uses it in connection with its website.  (Complaint, ¶¶ 28-30.)

FDS is a United Kingdom company that owns the online member subscription dating website www.findyourtruesoulmate.com.  FDS also owns approximately 25 other online member subscription dating websites.  (D54 & D55; Sanchez Decl., ¶ 2.)

Sanchez, a resident of the United Kingdom, is the shareholder, director, and sole employee of FDS.  (D56 & D57; Sanchez Decl., ¶¶ 1, 3.)  FDS contracts with third party service providers, such as hosting companies, etc., to operate, maintain, and market the websites.  Sanchez relies on those third party service providers to perform these functions and personally plays no role in operating or marketing the websites.  (D58, D59, D60; Sanchez Decl., ¶ 3.)

### b. **Plaintiff Alleges A Massive Phishing Scheme, But Produced Evidence Of Only Five E-mails Sent To A Single E-mail Address.**

In its Complaint, Plaintiff alleges that Defendants, in July 2016, sent a series of e-mails, directed to Reflex's customers, which purported to be sent from the CEO of Seeking Arrangement.  (Complaint, ¶¶ 6, 35.)  Plaintiff refers to these e-mails as "Phishing Emails," contending that these e-mails were intended to obtain personal identifying information and credit card data from Seeking Arrangement's customers under false pretenses.  (Complaint, ¶ 10.)

The actual evidence produced by Plaintiff during this case is quite different than what was alleged.  In its Rule 26 disclosures and in response to discovery requests, Plaintiff produced a total of five separate e-mails that it claims to be part of the phishing scheme.  (D61; Metzidis-Drennan Decl. ¶¶ 11-14; Ex. 10 at 3:14-15 [First Supp. Rule 26 Disclosures]; Ex. 8 at 12:25-13:2 [Resp. to RFP No. 3]; Ex. 11 [five emails in native format]; Ex. 12 [duplicates of five emails with Bates numbers].)  These five e-mails are the *only* e-mails identified by Plaintiff in

response to an interrogatory asking for every e-mail Plaintiff alleges that FDS or Sanchez disseminated or caused to be disseminated.  (D62; Ex. 9 at 5:9-17 & 6:13-18 [Supp. Resps. to Interrogatory Nos. 3 & 5]; Exs. 11 & 12; Metzidis-Drennan Decl. ¶ 11-14.)

Each of these five e-mails was sent from one of two e-mail addresses: ceoseekingarrangement@gmail.com or seekingmanagementceo@gmail.com. (D63; Ex. 11.)

Each of these five e-mails was sent to a single e-mail address: Machac9791@yahoo.com.  (D64; Ex. 11.)  Plaintiff produced no e-mails addressed to any other e-mail address, provided no evidence that any of these e-mails were sent to any other person (let alone to Plaintiff's customers), and identified no customer in its disclosures who had received any of the e-mails.  (D65, D66, D67; Metzidis-Drennan Decl., ¶¶ 15-16; Ex. 10 at 2:1-3:8 [First Supp. Rule 26 Disclosures].)

### c.     Defendants Do Not Own Or Control The E-mail Addresses From Where The Five E-mails Were Sent.

Neither Sanchez nor FDS owns or controls the e-mail addresses ceoseekingarrangement@gmail.com or seekingmanagementceo@gmail.com. Sanchez does not know who owns or controls those e-mail addresses.  Before receiving the Complaint, Sanchez had never heard of those addresses.  (D68, D69, D70; Sanchez Decl., ¶ 5.)

### d.     Defendants Had No Involvement In, or Knowledge Of, The Dissemination Of The E-Mails At Issue.

Before receiving a copy of the complaint in this lawsuit, Sanchez had no knowledge of the e-mails that Plaintiff claims are part of the alleged phishing scheme.  (D71; Sanchez Decl., ¶ 4.)

Sanchez did not draft and was not involved in the drafting of those e-mails. Sanchez did not send or disseminate, and had no involvement in the sending or

-31-

dissemination, of those e-mails.  Sanchez has no knowledge as to who was involved in drafting, sending, or disseminating those e-mails.  (D72, D73, D74; Sanchez Decl., ¶ 4.)

Sanchez has no idea to whom the e-mails were sent or if they were sent at all. (D75; Sanchez Decl., ¶ 6.)

Prior to the filing of the complaint, Sanchez had no knowledge of Reflex Media, Inc., its CEO Brandon Wade, the SEEKING ARRANGEMENT trademark, or the website www.seekingarrangement.com.  She has taken no action to interfere with Reflex Media's relationship with its customers.  (D76, D77; Sanchez Decl., ¶ 12.)

e.   **Defendants Did Not Authorize Anybody To Use FDS's Name Or The Name of Any Of Its Websites In Connection With These E-mails.**

Plaintiff has no direct evidence that either of Defendants participated in the drafting or dissemination of the e-mails or knew anything about them.  The *sole* evidence upon which Plaintiff relies, then, to show any connection between Defendants and these e-mails is as follows:

The five e-mails produced by Plaintiff each provide a link which, when clicked on, opens a website asking for name and credit card information.  (D78; Metzidis-Drennan Decl. ¶ 18.)  In the last prompt before the button is clicked to send off the user's credit card information, there appears a "Verification" page, the fine print of which states (1) the name of the website or websites to which the consumer is subscribing, (2) the domain name of the website that will be processing credit card information, and (3) the name of the company processing the credit card. (D79; Metzidis-Drennan Decl. ¶ 19.)  An example of this fine print is reproduced below:

> By pressing 'Click Here For Access', I certify that I have read and agree to the complete terms of membership and billing and that the card entered above is my credit card. Your access to CamPleasures includes a 2 day free trial promo to Idealistic Relationships. If you choose to remain a member of Idealistic Relationships beyond the trial period, your membership will renew at thirty nine dollars and ninety nine cents. Your membership to CamPleasures will be Free for Lifetime. You will also receive a free membership to Uberhorny.
>
> Your IP Address has been logged for fraud protection.
> Charges made to your credit card will appear under "dstctshp.com (800)837-9031", operated by Columbus Creations Sociedad Limitada, an eCommerce Merchant located in Spain.

(*See* Wilson Decl. ¶ 3.)

Counsel for Plaintiff has represented that each time the link is clicked, different websites, credit card processing websites, and credit card processing companies appear. (D80; Metzidis-Drennan Decl. ¶ 20.) To that effect, Plaintiff produced 480 different screenshots of the Verification Page. Those 480 screenshots display 311 different websites, 309 different credit card processing websites, and 69 different credit card processors. (D81, D82; Metzidis-Drennan Decl. ¶ 21; Wilson Decl. ¶¶ 2-5; Exs. 3, 4, 5.)

Of the 480 screenshots produced by Plaintiff, a total of *five* include reference to one of Defendant FDS's websites, credit card processing sites, or FDS itself. (D83; Sanchez Decl., ¶¶ 9-11.) As a result, Plaintiff argues that FDS (and therefore Sanchez) *must* have been involved in preparing or disseminating these e-mails.

In fact, Sanchez did not direct anybody to include FDS or its websites in the Verification Pages, nor did she have any idea that this was happening. The first she heard of it was during discovery in this case. (D84, D85, D86; Sanchez Decl., ¶ 7.)

Furthermore, neither FDS nor Sanchez owns or operates any of the other websites (including the credit card processing websites) contained in the hundreds of other screenshots produced by Plaintiff. Nor do FDS or Sanchez have any ownership interest in the other credit card processing companies listed on those screenshots. (D87, D88; Sanchez Decl., ¶¶ 9, 10, 11.)

1   In any event, there is no evidence that any person (other Plaintiff's or its law

2   firm's employees) ever clicked on the link contained in the e-mail, ever entered his

3   or her credit card information, or ever subscribed to any of FDS's websites as a

4   result of these e-mails that Plaintiff claims to be part of a phishing scheme.  (<u>D89</u>,

5   <u>D90</u>, <u>D91</u>; Metzidis-Drennan Decl. ¶ 22; Ex. 10 at 2:1-3:8 [First Supp. Rule 26

6   Disclosures].)

7                        **f.      <u>Plaintiff Has No Facts Showing That Sanchez Had</u>**

8                               **<u>Any Involvement In The E-mails It Claims To Be Part</u>**

9                               **<u>of A Phishing Scheme</u>.**

10  In interrogatory requests, Defendants asked Plaintiff to state all facts upon

11  which it bases its contentions that Sanchez (1) ever used its trademark in the

12  distribution of e-mails, (2) disseminated or caused to be disseminated any of the e-

13  mails that identify the sender of the e-mail as Brandon Wade, Plaintiff's CEO,

14  (3) misused the SEEKING ARRANGEMENT trademark, and (4) intentionally

15  interfered with the relationship between Reflex Media and its customers.  (<u>D92</u>;

16  Ex. 6 at 1-3 [Special Interrogatory Nos. 2, 5, 6, 8, 10, and 12].)

17  In response to each of these interrogatories, the <u>only</u> information provided

18  about Ms. Sanchez's role in any of these activities was the hearsay statement that

19  Reflex Media "contacted Tucows, Inc., the registrar for the www.fndrtsmt.com

20  URL and was informed that the URL was registered to" Sanchez and FDS.  (<u>D93</u>;

21  Ex. 8 at 3-10 [Resps. to Special Interrogatory Nos. 2, 5, 6, 8, 10, and 12].)

22  Plaintiff later served supplemental responses to these interrogatories and the

23  only additional information provided in the supplemental responses was the hearsay

24  statement that, "based on conversations with Defendants' counsel, Reflex Media

25  understands that Ms. Sanchez is the sole officer and director of FDS Solution [sic]

26  and that FDS Solutions has no employees."  (<u>D94</u>; Ex. 9 at 4-11 [Supp. Resps. to

27  Special Interrogatory Nos. 2, 5, 6, 8, 10, and 12].)

28

1   In other words, Reflex has no information whatsoever that Sanchez played

2   any role in this supposed phishing scheme.

### 2. Plaintiff's Statement of Undisputed Facts

4   Rather than provide another recitation of facts, Plaintiff respectfully refers

5   the Court to Plaintiff's portion of the Statement of Uncontroverted Facts filed

6   concurrently herewith. Plaintiff disputes many of the factual averments in

7   Defendants' "Statement of Undisputed Facts," and has lodged its objections in the

8   Statement of Uncontroverted Facts, as contemplated by the Court's standing order.

9   Relevant facts are also identified in Plaintiff's motion above and accompanied by

10  an appropriate citation to Plaintiff's Statement of Uncontroverted Facts.

### 3. Plaintiff's Evidentiary Objections to Defendants' Statement of Uncontroverted Facts

#### a. Objection to Declaration of Defendant Sanchez

14  Plaintiff objects to the declaration of Maria Del Mar Martinez Sanchez

15  because it should be excluded pursuant to Fed. R. Civ. P. 37(c)(1). For their failure

16  to accurately respond and their failure to update their discovery responses,

17  Defendants should not be allowed to use their purported evidence. Prior to filing

18  this motion, Defendants Sanchez and FDS failed to mention that third-party agents

19  operate FDS' websites and that Defendant Sanchez "personally play[s] no role in

20  operating or marketing the websites." The law, however, requires that"[a] party [. .

21  .] who has responded to an interrogatory, request for production, or request for

22  admission—must supplement or correct its disclosure or response: [. . .] in a timely

23  manner if the party learns that in some material respect the disclosure or response is

24  incomplete or incorrect, and if the additional or corrective information has not

25  otherwise been made known to the other parties during the discovery process or in

26  writing." Fed. R. Civ. P. 26(e)(1)(A). The automatic, self-executing sanction for

27  failing to provide information as required by Fed. R. Civ. P. 26(e) is that" the party

28  is not allowed to use that information [. . .] to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that sanctions under Fed. R. Civ. P. 37(c)(1) are automatic and self-executing and that "Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded").

Defendants' response to Special Interrogatory No. 9 was incomplete and misleading—especially in light of the representations made by counsel during the hearing on Plaintiff's motion to compel those responses—and as such, Defendants should have supplemented their responses in a timely fashion, well before filing the instant motion. Because Defendants did not supplement their discovery responses and have apparently attempted to ambush Reflex with this late disclosure, the Sanchez Declaration should be excluded by the Court. In the absence of this self-serving declaration, Defendants have presented no evidence to support their claim that they had no knowledge of the Phishing Scam. Moreover, it is worth noting that even now, Defendants continue to refuse to provide the identity of the third parties supposedly responsible for operating Defendants' Websites.

> **b.** **Objections to Characterization of "Hearsay" Evidence**

Plaintiff also objects to the hearsay characterizations of evidence made by Defendants in D93-94 and Section II.B.1.f, *supra*:

- "In response to each of these interrogatories, the <u>only</u> information provided about Ms. Sanchez's role in any of these activities was the hearsay statement that Reflex Media "contacted Tucows, Inc., the registrar for the www.fndrtsmt.com URL and was informed that the URL was registered to" Sanchez and FDS."

- "Plaintiff later served supplemental responses to these interrogatories and the only additional information provided in the supplemental responses was the hearsay statement that, "based on conversations with Defendants' counsel, Reflex Media understands that Ms. Sanchez is the sole officer

-36-

1    and director of FDS Solution [sic] and that FDS Solutions has no

2    employees."""

3        Defendants' characterization of the statements as "hearsay" is an

4    inappropriate legal conclusion that cannot be made until the evidence is offered and

5    the purpose for which it is offered is identified. *See* Fed. R. Evid. 801. Similarly,

6    only once the evidence is offered can the Court determine if one of the exceptions

7    to the hearsay rule may apply. *Id.*

8        C.    **Argument**

9            1.    **Defendant Sanchez is Entitled To Summary Judgment.**

10                a.    **On The Undisputed Facts, Sanchez Is Not Liable for**

11                    **Trademark Infringement.**

12        On its First Claim for Relief, Plaintiff seeks to hold Sanchez personally liable

13    for Trademark Infringement under 15 U.S.C. § 1114 based solely and exclusively

14    on her status as a director and shareholder of co-defendant FDS.  We discuss in

15    Section II.C.2 below why the evidence is insufficient to hold FDS liable for these

16    claims.  But even if Plaintiff could create a dispute of fact about FDS's liability

17    (and it cannot), *Sanchez's* status as director and shareholder of FDS is insufficient

18    as a matter of law to hold *her* personally liable for trademark infringement.

19        To establish trademark infringement, a plaintiff must show (1) that it has a

20    protectable mark, and (2) that the alleged infringer's use of the mark has created a

21    likelihood of consumer confusion.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406

22    F.3d 625, 630 (9th Cir. 2005).

23        The issue here is whether Sanchez ever "used" the mark.  Plaintiff has

24    absolutely no evidence that Sanchez was involved in preparing or disseminating the

25    e-mails in question, or that Sanchez even knew about these e-mails.  To the

26    contrary, Plaintiff's argument seems to be that because FDS's websites are listed on

27    a small fraction of the verification pages, FDS therefore *must have been* involved in

28

1 preparing or disseminating these e-mails, and that, as the sole director and
2 shareholder of FDS, Sanchez is liable too.

3      Case law rejects this argument out of hand.  Under the Lanham Act, "a
4 corporate officer may be held personally liable for trademark infringement and
5 unfair competition if the officer is a *moving, active conscious force* behind [the
6 defendant corporation's] infringement."  *TI Beverage Grp. Ltd. v. S.C. Cramele*
7 *Recas SA*, 2014 WL 12013438, at *8 (C.D. Cal. 2014), *quoting*, *Lee Myles Auto*
8 *Group, LLC v. Fiorillo*, 2010 WL 3466687, *7 (S.D.N.Y. 2010) (emphasis added).

9      Courts have repeatedly granted summary judgment in favor of individual
10 corporate officers or directors on trademark infringement claims where there is no
11 evidence that they were the moving force behind the infringement.  *See, e.g.*, *Minka*
12 *Lighting, Inc. v. Bath Kitchen Décor, LLC*, 2015 WL 12743863 at *8-9 (C.D. Cal.
13 2015) (granting summary judgment on trademark infringement claim in favor of
14 defendant officer because there is no evidence to contradict defendant officer's
15 testimony that "he did not authorize, direct or participate in the trademark
16 infringement");  *Microsoft Corp. v. Suncrest Enter.*, 2006 WL 1329881, at *7 (N.D.
17 Cal. 2006) (granting summary judgment because "[W]hile sole shareholder and
18 officer of [defendant corporation] certainly had authority to give direction to the
19 sales department, she did not personally participate in purchasing decisions outside
20 of instructing the sales department to purchase from established, reputable vendors"
21 and therefore had no individual liability for trademark infringement); *Midas Int'l*
22 *Corp. v. Poulah Inv'rs, LLC*, 2016 WL 4532033, at *9 (D. Md. 2016) (granting
23 summary judgment where Plaintiff "has neither alleged nor provided evidence
24 demonstrating how any of the Individual Defendants personally participated in the
25 continued use of [Plaintiff's] trademarks . . . ."); *see also Sara Lee Corp. v. Am.*
26 *Leather Prod., Inc.*, 1998 WL 433764, at *19 (N.D. Ill. 1998) (on preliminary
27 injunction motion, holding that while Defendant Rappin "is the owner, president,
28 and sole financier of [the corporate defendant]," Plaintiff did not "offer evidence

-38-

that Mr. Rappin oversaw and approved of the infringing activities committed by [the corporation]" and that he is therefore not personally liable).

Sanchez's status as director and shareholder of FDS is insufficient, then, to establish liability for trademark infringement for two reasons. First, as shown in Section II.C.2, below, FDS did not engage in trademark infringement. Second, even if Plaintiff could somehow show FDS's liability, Sanchez was not the "moving force" behind any infringement. Sanchez did not personally participate or oversee the alleged sending of the e-mails that Plaintiff claims to be part of a phishing scheme. (D72, D73, D68, D84, D77.) Indeed, she had no knowledge of their existence until after the Complaint was filed, and still has no idea who sent them or why. (D71, D74, D75, D69, D70, D85, D86.) As such, summary judgment in Sanchez's favor should be granted.

> **b.**    **Plaintiff's Response to Defendants' Section II.C.1.a: The Standards for Infringement Based on Secondary Liability for Defendant Sanchez is the same as Corporate Defendant FDS.**

Individuals are held to the same secondary liability standards as corporate defendants; therefore, this Court should take Defendant Sanchez's actions **and omissions** into account and find her liable as the sole shareholder, director, and employee of FDS. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. 2:14-CV-00085-LRS, 2014 WL 11514767, at *2–3 (E.D. Wash. Aug. 1, 2014) (citing *Coach, Inc. v. Sapatis*, 27 F. Supp. 3d 239 (D. N.H. 2014) (finding that a corporate agent could be held secondarily liable for trademark infringement); *see Coach, Inc. v. Sapatis*, 27 F. Supp. 3d 239, 244-48 and 246 n.10 (D.N.H. 2014) (citing *Inwood*, 456 U.S. at 854 and *Hard Rock*, 955 F.2d at 1149) (finding that personal liability for contributory infringement for an owner, manager, and sole member of a limited liability company "will be judged under the same standard that would apply to any other defendant…" and that the standard for contributory

1  trademark infringement is met when the individual or entity "fails to act once it has
2  actual knowledge, has reason to know, or is willfully blind to the fact that it is
3  supplying a service to one who is engaging in direct trademark infringement."); *see*
4  *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *6–
5  7 (N.D. Cal. Feb. 14, 2011) (citing *Babbit Electronics v. Dynascan Corp.,* 38 F.3d
6  1161, 1184 (11th Cir.1994)) ("A plaintiff may show that a corporate employee is
7  the moving, active, conscious force behind the infringing activity by demonstrating
8  that the corporate officer directs, controls, **ratifies**, or participates in the infringing
9  activity") (emphasis added) (internal quotations omitted).

10       The seminal case regarding infringement also contemplates individual
11  liability for the actions of the owner of a company, like Defendant Sanchez. In
12  *Shapiro, Bernstein & Co. v. H. L. Green Co.* the court concluded that the owner of
13  a company is "strictly liable [if he] is in a position to police the conduct of the
14  'primary' infringer . . ." reasoning that if it "[w]ere to hold otherwise, [the court]
15  might foresee the prospect—not wholly unreal—of large chain and department
16  stores establishing 'dummy' concessions and shielding their own eyes from the
17  possibility of copyright infringement, thus creating a buffer against liability while
18  reaping the proceeds of infringement." 316 F.2d 304, 309 (2d Cir. 1963); *see*
19  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264–65 (9th Cir. 1996) ("a
20  swap meet can not disregard its vendors' blatant trademark infringements with
21  impunity").

22                          **Contributory Liability**
23       Here, in addition to Defendants choosing to stay willfully blind to their
24  supposed third-party agents' actions since the time Defendants supposedly gave
25  them unfettered control of Defendants' websites and marketing, Defendants were
26  also notified that Defendants' Websites were involved in trademark infringement,
27  and this triggered a duty for Defendants to investigate and end such infringement by
28  contacting their agents and subagents to cease infringing on the trademark. *See 1-*

*800 Contacts*, 722 F.3d at 1252; *see Life Alert Emergency Response, Inc. v. LifeWatch, Inc. (*hereinafter, *"Life Alert"*), 601 F. App'x 469, 473 (9th Cir. 2015); *see mophie, Inc. v. Shah*, No. SACV1301321DMGJEMX, 2014 WL 10988347, at *22 (C.D. Cal. Nov. 12, 2014) ("A defendant has some duty to investigate whether or not it is infringing another's trademark if it has reason to suspect that it may be"); *see Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST, 2011 WL 1752091, at *5 (C.D. Cal. May 6, 2011) (citing *Liu*, 489 F.Supp.2d at 1123) (finding that trademark infringement can exist where a defendant willfully blinds himself and such infringement continued eight months after the Plaintiff filed the lawsuit). However, after being on notice for eight months that there was trademark infringement, and after more than a month of being on notice that the email attached to this Joint Brief as Plaintiff's Exhibit 5 existed, a hyperlink from that email directed Plaintiff to multiple FDS "verification pages." (*See* Sanchez Decl. at ¶¶ 3-7; Ex. 5 (copy of Phishing Email), 9-15 (copies of "verification" webpages); Schaeffer Decl. at ¶ ¶ 10-16; P39-45).

Defendants admit that Defendant Sanchez is the sole owner, director, and employee of FDS and that FDS has no other employees; therefore, it was incumbent on her to investigate and end the trademark infringement by her agents and subagents. The inaction on the part of Defendant Sanchez is tantamount to ratification of her agents and subagents actions. Furthermore, Defendants' actions to conceal the identities of these third-party agents throughout this litigation has aided the scheme and allowed it to continue. Indeed, even as of this filing, Defendant Sanchez has failed to provide the identities of the supposed agents responsible for the marketing and operation of Defendants' Websites. In fact, even in their introduction to this motion Defendants throw their hands in the air and claim, "Neither FDS nor Sanchez has any idea why a few of FDS's websites and the FDS name appears on those five screenshots," demonstrating that they have

1  done nothing to investigate and stop future infringement and have instead elected to

2  continue and to reap the benefits of their agents' unlawful acts.

3  **Vicarious Liability**

4  Additionally, Defendants are vicariously liable because Defendants now

5  admit that they had a partnership with third-party service providers who operate and

6  market their website. *See Life Alert*, 601 F. App'x at 473l (citing *Visa*, 494 F.3d at

7  807); (Sanchez Decl. at ¶ 3). Defendants are also vicariously liable because these

8  third-party agents have authority to bind Defendants in transactions with other

9  third-parties: as the Sanchez Declaration states, FDS and Sanchez "[contract] with

10  third party service providers, such as hosting companies, etc., to operate, maintain,

11  and market its websites." (Sanchez Decl. at ¶ 3.) Defendants and Defendants' third-

12  party service providers also exercise joint control over the infringing product

13  which, here, are the websites owned by Defendants that use infringing marketing.

14  As owner of the websites, FDS and Sanchez, could have terminated its contract(s)

15  with the third-party service providers and removed any motivation for its agents

16  and subagents to continue their infringement. *See Life Alert*, 601 F. App'x at 473

17  (Finding that a secondary trademark infringer "could exercise its right under [its]

18  agreements to terminate its relationship with [direct infringers] that fail to comply

19  with trademark law" and that "[w]ithout these contracts, [the direct infringers]

20  would have no reason to make infringing calls).

21  Because Defendants have now admitted that they have an apparent or actual

22  partnership, have authority to bind one another in transactions with third parties or

23  exercise joint ownership or control over the infringing product, Defendants should

24  be held vicariously liable for trademark infringement. If this Court allows

25  Defendant Sanchez to rely on her willful blindness to the actions of her agents and

26  subagents, then this Court would set a precedent to encourage others, like

27  Defendant Sanchez, to set up companies like hers to create "a buffer against

28  liability while reaping the proceeds of infringement." *Shapiro*, 316 F.2d at 309.

-42-

**c.**    **For The Same Reasons She Is Not Liable for Trademark Infringement, Sanchez is Not, On the Undisputed Facts, Liable for False Designation of Origin.**

Plaintiff's second claim for relief is for false designation of origin under the Lanham Act, 15 U.S.C. § 1125.  "A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114."  *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014).  As discussed in the preceding Section, there is not sufficient evidence for Reflex to establish its first claim for trademark infringement.  Therefore, Reflex's second claim for false designation of origin must fail as well.

**d.**    **Plaintiff's Response to Defendants' Section II.C.1.c: Defendants knowingly and willfully allowed Defendants to infringe on Plaintiff's Trademark, Therefore Defendants Are Also Liable for False Designation of Origin.**

For the same reasons that Defendants are liable for trademark infringement, Defendants are also liable for Reflex's claims against Defendants for false designation of origin. Defendants, including Defendant Sanchez, knowingly and willingly (or willfully blinded themselves and) allowed FDS' agents to infringe on Plaintiff's trademark, and therefore used the trademark "to cause confusion, deception or mistake as to 'the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Gryphon Mobile Elecs.*, No. SACV152056DOCJCGX, 2016 WL 7637987, at *4 (C.D. Cal. July 12, 2016) (quoting 15 U.S.C. § 1125(a)(1)(A)). *See* Section I.B.2 for a full discussion of the reasons why Defendants are liable under Section 1125.

1

**e.      On the Undisputed Facts, Sanchez Is Not Liable**

2

**Under California Business & Professions Code**

3

**§ 17200.**

4      Directors and officers cannot be held personally liable for violation of

5 California Business & Professions Code § 17200 merely by reason of their official

6 position, unless they participated in the wrong or authorized or directed that it be

7 done.  *See NTD Architects v. Baker*, 950 F. Supp. 2d 1151 (S.D. Cal. 2013) (in case

8 alleging B&P § 17200 claim against corporate officers and directors, Court holds

9 "[a]lthough directors and officers of a corporation do not incur personal liability for

10 torts of the corporation merely by reason of their official position, they can be held

11 personally liable if they participate in the wrong or authorize or direct that it can be

12 done").

13      As set forth above, Sanchez did not participate in preparing or disseminating

14 the e-mails at issue, and did not authorize or direct that this be done.  (D72, D73,

15 D68, D84, D77.)  As such, Sanchez cannot be held personally liable under Section

16 17200.

17

**f.      Plaintiffs' Response to Defendants' Section II.C.1.e:**

18

**Because Defendants Knowingly and Willfully Allowed**

19

**its Agents to Infringe on Plaintiff's Trademark,**

20

**Defendants are Liable for Unfair Competition.**

21      For the same reasons that Defendants are liable for trademark infringement,

22 Defendants are also liable for Reflex's claims against Defendants for unfair

23 competition under Cal. Bus. & Prof. Code § 17200 *et seq*. Defendants—themselves

24 or through their supposed agents—knowingly and willingly infringed on Plaintiff's

25 trademark; therefore, Defendants have "engaged in [] "unlawful, unfair or

26 fraudulent business act or practice [or] unfair, deceptive, untrue or misleading

27 advertising." Cal. Bus. & Prof. Code § 17200. *See Liu*, 489 F. Supp. 2d at 1123

28 ("Willfulness can be established by evidence of knowing conduct or by evidence

-44-

1    that the defendant acted with an aura of indifference to plaintiff's rights-in other

2    words, that the defendant willfully blinded himself to facts that would put him on

3    notice that he was infringing another's trademarks, having cause to suspect it")

4    (internal quotations omitted); *see Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th

5    Cir.1989); *see Hard Rock*, 955 F.2d at1149. *See* Section I.B.4 for a full discussion

6    of the reasons why Defendants are liable under § 17200.

### g.    On The Undisputed Facts, Sanchez is Not Liable for Negligent Interference with Economic Advantage.

9      Plaintiff's fourth claim for relief is for negligent interference with

10    prospective economic advantage. Plaintiff again seeks to hold Sanchez personally

11    liable on this claim as an owner and officer of FDS, without any evidence that

12    Sanchez participated in the purported scheme.

13      It is well established, however, that "[d]irectors or officers of a corporation

14    do not incur personal liability for torts of the corporation merely by reason of their

15    official position, *unless they participate in the wrong or authorize or direct that it*

16    *be done. . . .*" *U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595

17    (1970) (emphasis added); *see also Francis T. v. Village Green Owners Ass'n*, 42

18    Cal.3d 490, 508-09 (1986) ("To maintain a tort claim against a director in his or her

19    personal capacity, a plaintiff must first show that the director specifically

20    authorized, directed or participated in the allegedly tortious conduct . . . or that

21    although they specifically knew or reasonably should have known that some

22    hazardous condition or activity under their control could injure plaintiff, they

23    negligently failed to take or order appropriate action to avoid the harm . . . .").

24      Therefore, to establish its claim of negligent interference against Sanchez

25    individually, Plaintiff must show that Sanchez participated in the wrongful conduct

26    or authorized or directed that it be done. As set forth above, Plaintiff has *no*

27    *evidence* that Sanchez did so, and, moreover, Sanchez disputes that she had any

28    knowledge of the e-mails or participated in preparing or sending them. (D72, D73,

D68, D84, D77; D71, D74, D75, D69, D70, D85, D86.)  Therefore, summary judgment should be granted in favor of Sanchez on the fourth claim for negligent interference.

> **h.**     **Plaintiff's Response to Defendants' Section II.C.1.g: Plaintiff Will Move for Statutory Damages Rather than Pursue Its Claim for Negligent Interference.**

As explained above in Section I.B.8, the Lanham Act claims (*i.e.* trademark infringement under § 1114 and unfair competition under § 1125) allow a plaintiff to elect statutory damages in lieu of proving their actual damages. Plaintiff does not know how many of its customers received the Phishing Emails or were lost a result thereof. Accordingly, after considering the available evidence, Plaintiff has elected to seek statutory damages in lieu of proving its actual damages. In other words, rather than pursue its claim for negligent interference (and seek to recover its actual damages), Plaintiff has elected to seek statutory damages on its Lanham Act claims, as allowed by 15 U.S.C. § 1117 (discussed below).

> **2.**     **Defendant FDS is Entitled To Summary Judgment.**

> **a.**     **On The Undisputed Facts, FDS Is Not Liable for Trademark Infringement.**

As noted above, to establish trademark infringement, Reflex must show (1) that it has a protectable mark, and (2) that the alleged infringer's use of the mark has created a likelihood of consumer confusion.  *Surfvivor Media*, 406 F.3d at 630. Thus, the second prong of establishing trademark infringement requires that the alleged infringer *use* the mark.

Reflex has no evidence, let alone sufficient evidence to create a material dispute of fact, that FDS ever *used* the mark.  Reflex's claim of "use" is based upon the allegation that FDS disseminated the e-mails at issue.  (Complaint, ¶ 34.)  But FDS has submitted evidence – which Reflex is utterly unable to dispute – that FDS

did not disseminate the e-mails and had nothing to do with them.  (D72, D73, D68, D84, D77; D71, D74, D75, D69, D70, D85, D86.)

Therefore, there is no evidence that FDS ever used Reflex's trademark and, as such, FDS is entitled to summary judgment on the trademark infringement claim.

### b.   Plaintiff's Response to Defendants' Section II.C.2.a

In response to Defendants' arguments regarding Defendant FDS's liability for trademark infringement, Plaintiff Reflex incorporates by reference its arguments set forth in Sections I.B.1 and II.C.1.b, *supra*.

### c.   On the Undisputed Facts, FDS Is Not Liable for False Designation of Origin.

As noted above, "[a] claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114." *Kythera*, 998 F. Supp. 2d at 897.  Because Reflex cannot establish trademark infringement, its second claim for false designation of origin must fail as well.

### d.   Plaintiff's Response to Defendants' Section II.C.2.c

In response to Defendants' arguments regarding Defendant FDS's liability for false designation of origin, Plaintiff Reflex incorporates by reference its arguments set forth in Sections I.B.2 and II.C.1.d, *supra*.

### e.   On the Undisputed Facts, FDS Is Not Liable Under California Business & Professions Code § 17200.

Reflex's Section 17200 claim fails on two grounds.  Reflex has no standing to bring the claim and it has failed to prove any fraudulent, unfair, or unlawful conduct by FDS.

No private party has standing to prosecute claim under Section 17200 unless he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  To satisfy these standing requirements, a party must now establish "a loss or deprivation of money or

-47-

property sufficient to qualify as an injury in fact, i.e., *economic injury* . . . ."  *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 555-56 (2013) (emphasis in original), *quoting Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011).  Reflex has produced no evidence that it lost any customers as a result of the supposed phishing scheme, and therefore has no standing.

Moreover, Reflex has failed to show that FDS engaged in any "unlawful, unfair or fraudulent business act or practice" as required by Business & Professions Code § 17200.  Again, Reflex bases its claim on the belief that FDS was involved in the dissemination of the alleged phishing e-mails.  On the undisputed evidence, *it was not*.  Therefore, FDS is entitled to summary judgment on the Section 17200 claim.

        f.    **Plaintiff's Response to Defendants' Section II.C.2.e: Plaintiff Had to Spend Time and Resources to Investigate Defendants Actions and Therefore Has Standing to Pursue its Unfair Competition Claim Under Section 17200.**

A diversion of resources untethered from litigation by Plaintiff to counteract Defendants misconduct (including misconduct through willful blindness) may be used to satisfy the standing requirements of Cal. Bus. & Prof. Code § 17204. *See Animal Legal Def. Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270, 1283–84, 184 Cal. Rptr. 3d 759, 769 (2015) (June 10, 2015) (citing *Equal Rights Center. v. Post Properties, Inc.*, 633 F.3d 1136, 1140 (D.C.Cir. 2011)); *see also Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 1007666, at *7 (N.D. Cal. Mar. 13, 2013); *see also Philip Morris USA Inc. v. Liu* ("*Liu*"), 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007).

Upon discovery of the Phishing Emails, Plaintiff's employees had to investigate to ensure that customer information was not compromised by the

-48-

Phishing Emails or the alleged acts of Defendants and their agents. (*See* Supplemental Wey Decl. at ¶ 2–5; *see also* Ex. 1-5). Because Defendants have engaged in an "unlawful, unfair or fraudulent business act or practice [or] unfair, deceptive, untrue or misleading advertising," (trademark infringement) Defendants are also liable for Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et. seq.*

> ### g.    On The Undisputed Facts, FDS is Not Liable for Negligent Interference with Prospective Economic Advantage.

To prove negligent interference with prospective economic advantage, Reflex must demonstrate that:

(1)    an economic relationship existed between the Reflex and a third party which contained a reasonably probable future economic benefit;

(2)    FDS knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause Reflex to lose in whole or in part the probable future economic benefit;

(3)    FDS was negligent; and

(4)    such negligence caused damage to Reflex in that the relationship was actually interfered with or disrupted and Reflex lost in whole or in part the economic benefits reasonably expected from the relationship.

*Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007).

Reflex cannot prove three of these elements.  The evidence is undisputed that FDS had no knowledge of Reflex at all.  (D71, D74, D75, D69, D70, D85, D86.) Given that there is no evidence that FDS knew about the e-mails, let alone disseminated them, there is no evidence that FDS was negligent.  And there is no evidence that any of Reflex's customers clicked on the link in the e-mail and

-49-

subscribed to the websites so Reflex cannot prove any damages.  Therefore, summary judgment should be granted on the claim for negligent interference.

**h.      Plaintiff's Response to Defendants' Section II.C.2.g: Plaintiff Will Move for Statutory Damages Rather than Pursue Its Claim for Negligent Interference.**

As described in Section II.C.1.h above, Plaintiff will move for statutory damages under its Lanham Act claims rather than pursue its actual damages under a theory of negligent interference with prospective economic advantage.

Dated:  December 28, 2017          Respectfully submitted,

GRODSKY & OLECKI LLP
Allen B. Grodsky
John Metzidis-Drennan


By:   /s/ John Metzidis-Drennan
          John Metzidis-Drennan

Attorneys for Defendants Maria Del Mar Martinez Sanchez and FDS Solutions Ltd.

Dated:  December 28, 2017          SMITH CORRELL, LLP
Mark L. Smith
Jacob L. Fonnesbeck
Joseph A. Schaeffer


By:   /s/ Jacob L. Fonnesbeck (w/ permission)
          Jacob L. Fonnesbeck

Attorneys for Plaintiff Reflex Media, Inc.

JOINT BRIEF RE: PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## <u>COMPLIANCE WITH LOCAL RULE 5-4.3.4</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

Dated:  December 28, 2017          By:   /s/ John Metzidis-Drennan
                                                     John Metzidis-Drennan

JOINT BRIEF RE: PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT